# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| SPEX TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> KINGSTON TECHNOLOGY CORPORATION, KINGSTON DIGITAL, INC., KINGSTON TECHNOLOGY COMPANY, INC., IMATION CORPORATION, DATALOCKER INC., DATA LOCKER INTERNATIONAL, LLC, <br><br> Defendants. | Case No. 8:16-CV-01790-JVS-AGR <br><br> **JOINT RULE 26(F) REPORT** <br><br> Scheduling Conference: <br> January 30, 2017 at 11:30 a.m. <br><br> Before: The Hon. James V. Selna |
| SPEX TECHNOLOGIES, INC., <br> Plaintiff, <br><br> v. <br><br> WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., HGST, INC., <br><br> Defendants. | Case No. 8:16-CV-01799-JVS-AGR |

**JOINT 26(F) REPORT**

| | |
|---|---|
| SPEX TECHNOLOGIES, INC., <br><br> Plaintiff <br><br> v. <br><br> TOSHIBA AMERICA ELECTRONICS COMPONENTS INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., TOSHIBA AMERICA, INC., AND TOSHIBA CORPORATION, <br><br> Defendants. | Case No. 8:16-CV-01800-JVS-AGR |
| SPEX TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> APRICORN, INC., <br><br> Defendant | Case No. 2:16-CV-07349-JVS-AGR |
| SPEX TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTEGRAL MEMORY PLC, <br><br> Defendant. | Case No. 8:16-CV-01805-JVS-AGR |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1, and the Court's October 27, 2016 Order Setting Rule 26(f) Scheduling Conference (D.I. 24), Plaintiff SPEX Technologies, Inc. ("SPEX" or "Plaintiff") and Defendants Toshiba America Electronic Components Inc., Toshiba America Information Systems, Inc., and Toshiba Corporation (together, "Toshiba Defendants")[1], Western Digital Corporation, Western Digital Technologies, Inc., and HGST, Inc. (together "Western Digital Defendants"), Imation Corporation ("Imation"), Kingston Technology Corporation, Kingston Digital Inc., and Kingston Technology Company, Inc., (together, "Kingston Defendants"), Apricorn ("Apricorn"), Integral Memory, Inc. ("Integral Memory"), Datalocker, Inc. and Data Locker International, LLC (together "Datalocker Defendants") (collectively, "Defendants") ("Plaintiff" and "Defendants" are collectively referred to as the "Parties"), by and through their respective counsel of record, conferred, starting on January 9, 2017, and discussed the various procedural and substantive matters pertinent to the instant litigation and hereby jointly submit this Joint Rule 26(f) Report.

## I. SYNOPSIS

Plaintiff's statement: This is a patent litigation action. On September 28, 2016, SPEX filed complaints against Defendants alleging infringement of U.S. Patent No. 6,088,802 (the "'802 patent") and U.S. Patent No. 6,003,135 (the "'135 patent") (collectively, the "patents-in-suit"). The patents-in-suit were originally assigned to Spyrus, Inc. ("Spyrus"), which has designed, developed, and sold hardware cryptographic products since 1992. SPEX was formed to facilitate licensing of the technology developed and practiced by Spyrus in both domestic and foreign markets.

The patents-in-suit claim computer devices that enable hardware encryption functionality in peripheral and modular devices. The '802 patent claims variations

---

[1] Plaintiff originally named Toshiba America, Inc. as a defendant, but all claims against Toshiba America, Inc. have been dismissed. Case No. 8:16-cv-01800-JVS-AGR (Dkt. No. 34).

of a cryptographic peripheral device. In one variation, the device has (1) a hardware cryptographic processor; (2) a desired functionality (such as mass storage); (3) an interface between the cryptographic processor and desired functionality; (4) an interface to a host computer (such as a USB or SATA interface); and (5) a mediating interface to ensure data passes through the cryptographic processor. The '135 patent claims variations of a cryptographic modular device that include a security module and a module for performing a desired functionality (such as mass storage).

SPEX has asserted that Defendants' hardware cryptography computer storage products, such as Defendants' encrypting USB flash drives and storage drives, infringe the patents-in-suit. SPEX attached claim charts providing an example of how Defendants' products infringe the patents-in-suit. SPEX has asserted that Defendants infringe the patents-in-suit both directly and by inducing others to infringe the patents.

<u>Defendants' statement</u>: These are actions for patent infringement brought by SPEX against at least five different groups of defendants with respect to more than 130 different products, many of which have been available on the open market for years. The patents-in-suit issued over sixteen years ago, and according to United States and Patent and Trademark records, they were assigned to SPEX in 2015. According to the Complaint, "SPEX was formed to facilitate licensing of the technology" it now owns.

Defendants deny that they have committed any acts of patent infringement relating to the patents-in-suit, whether directly, by inducement, or by contributory infringement, and deny that Plaintiff is entitled to any damages or relief. Furthermore, Defendants do not believe that Plaintiff's description of the patents-in-suit in Section I completely or accurately describes the subject matter of the claims or the technology allegedly described therein, or that Plaintiff's description supports a proposed construction of any claim or claim term of the patents-in-suit. Moreover, Defendants believe that the asserted claims are invalid on multiple grounds,

including but not limited to prior art, and note that a third party with no relationship to the Defendants has already filed an *Inter Partes* Review challenging the patentability of all 39 claims of the '802 patent.[2]

## II. LEGAL ISSUES

This is an action for patent infringement. The principal issues are likely to be as follows:

1. Whether Defendants have infringed the patents-in-suit in violation of 35 U.S.C. §§ 271(a), (b);
2. Whether the patents-in-suit meet the conditions for patentability and satisfy all of the requirements set forth in the provisions of 35 U.S.C. §§ 101, 102, 103, and 112;
3. The proper construction of the asserted claims of the patents-in-suit;
4. The scope of the asserted claims of the patents-in-suit;
5. If the patent is infringed and valid, the amount, if any, of SPEX's damages under 35 U.S.C. § 284;
6. Whether attorneys' fees, costs, or expenses are recoverable under 35 U.S.C. §§ 284 and/or 285; and
7. Whether an issuance of a permanent injunction is appropriate under 35 U.S.C. § 283, especially given the lack of request for injunctive relief as to certain defendants.

## III. DAMAGES

<u>Plaintiff's statement</u>: Defendants do not publicly disclose their revenue or sales for the products accused of infringement by SPEX. SPEX cannot therefore provide a realistic range of provable damages. At this time, SPEX intends to seek damages in the form of both a reasonable royalty and lost profits.

---

[2] Imation has filed counterclaims seeking a declaratory judgment of non-infringement and invalidity of the patents-in-suit. Imation also intends to file petitions for *Inter Partes* review of both patents-in-suit by the end of February 2017, and to thereafter seek a stay of this action.

1     Defendants' statement: Defendants deny that SPEX is entitled to any damages in this case, and will respond to any theories asserted by SPEX regarding damages at an appropriate time. Defendants also reserve their right to recover reasonable attorney's fees, costs, and expenses in this case. At this time, Defendants cannot provide the anticipated range of such fees and costs.

## IV. INSURANCE

The Parties are unaware of any insurance coverage relating to the subject matter of this litigation.

## V. MOTIONS TO ADD PARTIES, AMEND PLEADINGS OR TRANSFER VENUE

Plaintiff's statement: SPEX does not currently believe it is likely that it will file a motion to (i) add other parties or claims or (ii) file amended pleadings or (iii) transfer venue. SPEX, however, reserves the right to file a motion to add other parties or claims, or amend its pleadings if the need become apparent through discovery or other proceedings.

Defendants' statement: Defendants do not currently intend to file a motion to (i) add other parties or claims, (ii) file amended pleadings, or (iii) transfer venue. However, Defendants reserve their right to file amended answers to the extent they discover facts that may give cause to add other parties or support additional defenses to Plaintiff's claims.

## VI. DISCOVERY PLAN

### A. Changes to Disclosures under Rule 26(a)

The Parties do not believe that any changes to the disclosures under Rule 26(a) are necessary.

### B. Subjects on Which Discovery May Be Needed and Whether Discovery Should Be Phased

The Parties do not propose phasing discovery.

The Parties expect that discovery may be needed on at least the following subjects:

- The patents-in-suit;
- The file histories of the patents-in-suit;
- The prosecution of the patents-in-suit;
- Ownership of the patents-in-suit;
- Conception and reduction to practice of the alleged inventions claimed in the patents-in-suit;
- Plaintiff's earliest knowledge of the allegedly infringing products;
- Defendants' knowledge of the patents-in-suit;
- Licensing of the patents-in-suit;
- Validity or invalidity of the patents-in-suit;
- Prior art references relating to the patents-in-suit;
- The accused products;
- Defendants' development, production, and sales of the accused products;
- Defendants' patent licensing practices/activities;
- Any affirmative defenses ultimately raised by Defendants;
- Any counterclaims ultimately raised by Defendants;
- The basis for Plaintiff's infringement allegations against the Defendants;
- The state of the prior art in the field to which the patents-in-suit relate;
- The enforceability of the patents-in-suit;
- The valuation and purchase of the patents-in-suit;
- Compliance or non-compliance with the requirements of 35 U.S.C. § 287, whether by Plaintiff or any predecessors-in-interest of the patents-in-suit;
- Plaintiff's request for an award of damages;

- Plaintiff's licensing practices;
- Plaintiff's licensing, attempts to license, and/or to otherwise profit from the patents-in-suit;
- Royalties and/or licensing fees relating to the patents-in-suit;
- Commercial embodiments of the patents-in-suit and sales of such commercial embodiments;
- Plaintiff's attempts to enforce the patents-in-suit;
- Challenges to the validity of the patents-in-suit;
- The discussions and/or background alleged in Plaintiff's complaint.

### C. Discovery Conducted So Far

The Parties agreed to exchange initial disclosures on January 23, 2017.

### D. Orders

Plaintiff's position: SPEX requests that the Court enter an order consolidating the above-captioned cases for pretrial purposes.[3]

Defendants' position: For pre-trial purposes only, Defendants do not oppose consolidation. Defendants oppose consolidation for anything other than pre-trial purposes.

### E. Changes to Limitations On Discovery

1. *Interrogatories:* The Parties agree that Plaintiff may serve up to 15 common interrogatories on all Defendants, and up to 15 additional individual interrogatories on each Related Defendant Group.[4] Defendants may serve up to 15 common interrogatories on Plaintiff, and each Related Defendant Group may serve up to 15 additional individual interrogatories on Plaintiff. The Parties further agree that an interrogatory seeking information about each accused product relating to a particular Related Defendant Group should not be counted as having distinct

---

[3] CMS has not answered or otherwise responded to SPEX's complaint. SPEX is currently in the process of seeking a default judgment against CMS.

[4] A "Related Defendant Group" means a group of related defendants, such as the Toshiba Defendants, that have been sued by Plaintiff.

subparts merely because it seeks information relating to multiple products.

2. *Requests for Production*: The Parties agree that there shall be no limit on the number of Requests for Production.

3. *Requests for Admission*: The Parties agree that (i) Plaintiff may serve up to 20 common requests for admission on all Defendants, and up to 30 additional individual requests for admission on each Related Defendant Group, and (ii) Defendants may serve up to 20 common requests for admission on Plaintiff, and each Related Defendant Group may serve up to 30 additional individual requests for admission on Plaintiff. The Parties further agree that there shall be no limit on the number of requests for admission for purposes of document authentication.

4. *Fact Deposition Time*:

Plaintiff's Proposal: Plaintiff proposes that each side be entitled to 150 total hours of fact deposition time, with that limit decreasing to 70 hours if only one Related Defendant Group remains. Plaintiff further proposes that it be entitled to a maximum of 70 hours of deposition time per Related Defendant Group, which would be part of, not in addition to, its 150 total hours of fact deposition time. In light of the overlap of facts and issues among the cases, Plaintiff believes the Parties can work cooperatively to make discovery as efficient as possible. Plaintiff believes that its proposal, which provides for over 21 full days of depositions, allows Defendants more than enough time to take the necessary discovery. Defendants' proposal, on the other hand, creates a big disparity between the deposition hours available to the Parties. Because most of Plaintiff's deposition will be of Defendants, Plaintiff will likely be effectively limited to the one hundred (100) hours of party deposition time proposed by Defendants. Split across the 7 Related Defendant Groups, Plaintiff will only be entitled to about 2 days of depositions per party. Defendants, on the other hand, will get one hundred (100) hours of deposition time with Plaintiff's witnesses (over fourteen (14) full days) plus an additional 130 hours with third parties (over eighteen (18) full days).

Defendants' proposal is excessive and well-beyond the ten (10) deposition limit allowed by the Federal Rules of Civil Procedure.

<u>Defendants' Proposal</u>:  Plaintiff has asserted two patents against the Defendants, which collectively contain nearly 100 claims.  Plaintiff has also identified more than 130 products, across at least five different Related Defendant Groups, as allegedly infringing the patents-in-suit.  Given the extensive number of accused products identified by Plaintiff, as well as the potential number of patent claims that may be at issue, Plaintiff's proposal does not provide sufficient time for the Defendants to adequately address all of the issues that will likely be relevant in the case, nor does it afford an adequate opportunity for each individual Related Defendant Group to address issues that are unique to each individual defendant (such as Plaintiff's infringement allegations for each individual Related Defendant Group).  Furthermore, Plaintiff's proposal to decrease its proposed limit "to 70 hours if only one Related Defendant Group remains" after other defendants settle their cases would be logistically unworkable and manifestly unfair.  Under Plaintiff's proposal, the remaining Defendant Group could retroactively have its hours eliminated if the defendants who settled their cases used 70 or more hours for discovery on issues that were not relevant to the remaining Defendant Group.

Moreover, Plaintiff's proposal does not account for numerous third party depositions that will be necessary.  For example, the patents-in-suit name six individual inventors, each of which will need to be deposed by Defendants.  Defendants also expect to take depositions of multiple third parties relating to published prior art and prior art systems relevant to the patents-in-suit, as well as numerous third parties who may be knowledgeable about the many background factual allegations in the Complaints, including former employees or executives of Spyrus, Inc., to which the patents-in-suit

were allegedly originally assigned; and third parties who may be knowledgeable about the subsequent alleged assignment of the patents-in-suit to SPEX.

Accordingly, the Defendants propose separate time limits for third party depositions and party depositions as set forth below:

    a) <u>Third Party Depositions</u>

        (1) Inventor depositions: 60 hours, divided into 10 hours for each of the six named inventors

        (2) Other third party depositions: 70 hours

    b) <u>Party Depositions:</u>

        (1) Plaintiff may take 100 total hours of depositions of the Defendants' witnesses, and Defendants may take 100 total hours of deposition of Plaintiff's witnesses.

        (2) To the extent that Plaintiff proffers a single 30(b)(6) witness to address issues that are not identical across all Related Defendant Groups (for example, Plaintiff's infringement allegations, alleged damages), the Defendants would be entitled to take 2 common hours of deposition testimony and 5 hours of deposition testimony per Related Defendant Group. If Plaintiff proffers a 30(b)(6) witness for issues solely related to a single Related Defendant Group, or for issues identical to all Defendants, the witness would be deposed for 7 hours.

Absent consolidation, the defendants in each individual action would be entitled to 70 hours of deposition time per case, resulting in at least 350 hours of deposition across all five consolidated cases. Accordingly, Defendants' proposal outlined above would result in a significant reduction in the amount of deposition time allowed under the Federal Rules of Civil Procedure if the cases were not consolidated.

    5. *Expert Deposition Time*

9
**JOINT 26(F) REPORT**

Plaintiff's Proposal: Plaintiff proposes that, if an expert submits a report on damages or infringement addressing more than one Related Defendant Group, the expert may be deposed for up to 14 hours. Otherwise, they may be deposed for 7 hours. An expert that submits a report on validity or invalidity may be deposed for a maximum of 7 hours.

Defendants' Proposal: Plaintiffs' expert deposition proposal would leave each Related Defendant Group about two hours of individual deposition time to explore Plaintiffs' infringement theories, if Plaintiff were to submit a single infringement expert report for all Defendants, thus substantially harming the Defendants. To allow sufficient opportunity for each Related Defendant Group to address issues that are not identical across all Defendants, Defendants propose the following:

a) An expert that submits a report on alleged infringement and damages may be deposed for 2 common hours plus 5 hours per Related Defendant Group addressed in the report. To the extent that an expert submits a report on alleged infringement for a single Related Defendant Group, the expert may be deposed for 7 hours.

b) An expert who submits a report on invalidity or validity may be deposed by the opposing side regarding that report for a total of 14 hours.

**F.     Proposed Time of Expert Witness Disclosures**

Please see Exhibit A to this Report.

**VII.   DISPOSITIVE MOTIONS**

Plaintiff's Position: SPEX anticipates it may file one or more motions for summary judgment or adjudication at the appropriate time and reserves the right to file additional motions as the case develops and the need arises. SPEX anticipates that it will file motions *in limine* but does not yet know what the topics will be.

Defendants' Position: Defendants anticipate filing one or more dispositive motions for summary judgment or adjudication and reserve the right to file

additional motions as the case develops and the need arises. Defendants further anticipate that they will file motions *in limine* at the appropriate time.

## VIII. STATEMENT REGARDING SETTLEMENT DISCUSSIONS

The Parties have had a limited preliminary discussion regarding possible settlement.

The Parties agree to mediations before a private mediator in line with Local Rule 16-15.4, ADR Procedure No. 3. Unless agreed by the Parties otherwise, the Parties propose that the mediations be between each Related Defendant Group and SPEX.

## IX. TRIAL

The Parties request a jury trial on issues to which a party is entitled to a jury.

Plaintiff's statement: SPEX expects to call between 4 and 8 witnesses at each trial and expects each trial will last five to seven days.

Toshiba's Defendants' statement: The Toshiba Defendants estimate that trial will be seven days and expect to call between 8 and 12 witnesses in their individual trial.

Western Digital Defendants' statement: The Western Digital Defendants estimate that trial will be seven days and expect to call between 8 and 12 witnesses in their individual trial.

Imation's statement: Imation estimates that trial will be at least five days and expects to call between 7 and 9 witnesses in its trial.

Kingston's Defendants' statement: The Kingston Defendants expect to call between 4 and 8 witnesses in their individual trial.

Apricorn's statement: Defendant Apricorn estimates that trial will be six to seven days and expects to call between 6 and 9 witnesses in its individual trial.

Integral Memory's statement: Defendant Integral Memory expects to call between 4 and 6 witnesses in its trial.

<u>DataLocker Defendants' statement</u>: The DataLocker Defendants expect to call between 4 and 6 witnesses in its trial.

## X. **TIMETABLE**

Please see Exhibit A for the Parties' respective proposals regarding the Schedule of Pretrial Dates. In addition, please see Exhibit B for the Parties' respective proposals for other dates in the case.

## XI. **OTHER ISSUES**

<u>Plaintiff's Position</u>: SPEX does not anticipate that discovery of its information will require foreign discovery or witnesses that do not speak English. SPEX understands that discovery from some of the Related Defendant Groups will require foreign discovery and involve witness that may not speak English. SPEX has proposed a form of a confidential protective order and the Parties are currently in negotiation regarding the proposed order.

As proposed above, to streamline discovery and pretrial rulings in the Related Cases, SPEX proposes consolidating the Related Cases for pre-trial purposes.

<u>Defendants' Position</u>: As noted above, the Defendants do not oppose consolidation of the Related Cases for pre-trial purposes only.

The Toshiba Defendants anticipate that this case may involve foreign discovery and witnesses that do not speak English.

The Western Digital Defendants do not anticipate that this case will involve foreign discovery or witnesses that do not speak English, but there is a possibility that such discovery may become necessary.

The Kingston Defendants anticipate that this case may involve witnesses that do not speak English.

Imation does not anticipate that this case will involve foreign discovery or witnesses that do not speak English, but there is a possibility that such discovery may become necessary.

Defendant Apricorn does not anticipate that this case will involve foreign discovery or witnesses that do not speak English, but there is a possibility that such discovery may become necessary.

## XII. CONFLICTS

Plaintiff: SPEX does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.

Toshiba Defendants: The Toshiba defendants identify the following parties:

- Toshiba Corporation: A named defendant and a publicly held company incorporated under the provisions of the Commercial Code of Japan. No other publicly held corporation or other person owns 10% or more of its stock.
- Toshiba America Inc.: A wholly owned subsidiary of Toshiba Corporation and parent corporation of defendants Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc.
- Toshiba America Electronic Components, Inc.: A named defendant and wholly owned subsidiary of Toshiba America, Inc.
- Toshiba America Information Systems, Inc.: A named defendant and wholly owned subsidiary of Toshiba America, Inc.

Western Digital Defendants: The Western Digital Defendants identify the following parties:

- Western Digital Corporation: A named defendant and publicly held company having no parent corporation or other publicly held corporation owning more than 10% of its stock.
- Western Digital Technologies, Inc.: A named defendant and wholly owned subsidiary of Western Digital Corporation.
- HGST, Inc.: A named defendant and wholly owned subsidiary of Western Digital Technologies, Inc.

1  <u>Kingston Defendants</u>: Kingston Digital, Inc., and Kingston Technology
2  Company, Inc. are wholly owned subsidiaries of Kingston Technology
3  Corporation, which is a privately held corporation. No public corporation owns
4  10% or more of Kingston Technology Corporation.

5  <u>Imation</u>: Imation does not have a parent corporation and no publicly held
6  corporation owns 10% or more of its stock.

7  <u>Apricorn</u>: Apricorn has no parent corporation, and no publicly held
8  corporation owns 10% or more of its stock.

9  <u>Integral Memory</u>: Integral Memory, PLC is held by private corporations
10 Linden Investments LTD (85%) and Jayan Holdings LTD (15%), and no publicly-
11 held corporation owns ten percent (10%) or more of its stock.

12 <u>DataLocker Defendants</u>: DataLocker Inc. is a privately held corporation and
13 DataLocker International LLC is a wholly owned subsidiaries of DataLocker Inc.
14 No public corporation owns 10% or more of DataLocker Inc.

## XIII. PATENT CASES

The Parties propose that the Court conduct a claim construction hearing on a term-by-term basis in accordance with the schedule provided in Exhibits A and B.

## XIV. MAGISTRATES

The Parties do not consent to proceeding in front of a magistrate.

Dated: January 23, 2017

Respectfully submitted,

**RUSS AUGUST & KABAT**

By:   /s/ Andrew D. Weiss
          Andrew D. Weiss

Marc A. Fenster, State Bar No. 181067
Ben Wang, SBN 228712
Andrew D. Weiss, State Bar No. 232974
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Tel: (310) 826-7474
Fax: (310) 826-6991

Email: mfenster@raklaw.com
Email: bwang@raklaw.com
Email: aweiss@raklaw.com

*Attorneys for Plaintiff*
SPEX Technologies, Inc.

**HOVEY WILLIAMS LLP**

By: /s/ Scott R. Brown (*by permission*)
      Scott R. Brown

Scott R. Brown, CA Bar No. 151635
10801 Mastin Blvd., Suite 1000
84 Corporate Woods
Overland Park, KS 66210
Tel: (913) 647-9050
Fax: (913) 647-9057
Email: srb@hoveywilliams.com

*Attorneys for Defendants*
DATALOCKER INC. and DATA LOCKER INTERNATIONAL, LLC

**GIBSON DUNN & CRUTCHER**

By: /s/ Frank P. Coté (*by permission*)
      Frank P. Coté

WILLIAM C. ROOKLIDGE, SBN 134483
wrooklidge@gibsondunn.com
FRANK P. COTE, SBN 204529
fcote@gibsondunn.com
RUSTIN K. MANGUM, SBN 280109
rmangum@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Defendants WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., and HGST, INC

15
**JOINT 26(F) REPORT**

**BRACEWELL LLP**

By: /s/ *Douglas F. Stewart (by permission)*
      Douglas F. Stewart

Douglas F. Stewart (*pro hac vice*)
doug.stewart@bracewelllaw.com
Jared Schuettenhelm (SBN 267885)
jared.schuettenhelm@bracewelllaw.com
Bracewell LLP
701 Fifth Avenue, Suite 6200
Seattle, Washington 98104-7018
(206) 204-6200 (t)
(800) 404-3970 (f)

David J. Ball (*pro hac vice*)
david.ball@bracewelllaw.com
Bracewell LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 508-6100 (t)
(800) 404-3970 (f)

Martin Pitha (SBN 192447)
mpitha@lp-lawyers.com
Lillis Pitha LLP
2 Park Plaza, Suite 480
Irvine, CA 92614
(949) 209-9020 (t)
(949) 759-1845 (f)

Attorneys for Defendants TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., and TOSHIBA CORPORATION

**WINTHROP & WEINSTINE, P.A.**

By: /s/ Erin O. Dungan (*by permission*)

Devan V. Padmanabhan (Pro Hac Vice)
dpadmanabhan@winthrop.com
Michelle E. Dawson (Pro Hac Vice)
mdawson@winthrop.com
Erin O. Dungan (CA Bar No. 227090)
edungan@winthrop.com
Nadeem W. Schwen (Pro Hac Vice)
nschwen@winthrop.com
225 S 6th Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 604-6716
Facsimile: (612) 604-6816

RUSS, AUGUST & KABAT

Vivian I. Orlando (SBN 213833)
vorlando@mail.hinshawlaw.com
HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
Telephone: (213) 680-2800
Facsimile: (213) 614-7399

Attorneys for Defendant
IMATION CORPORATION

**COVINGTON & BURLING LLP**

By: /s/ Winslow Taub (*by permission*)

Winslow Taub (SBN: 233456)
wtaub@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000

Attorneys for Defendants INTEGRAL MEMORY, PLC

**FISH & RICHARDSON P.C.**

By: /s/ David Hoffman (*by permission*)

David Hoffman (*pro hac vice*)
hoffman@fr.com
FISH & RICHARDSON P.C.
One Congress Plaza
111 Congress Ave., Suite 810
Austin, TX 78701
Tel: (512) 472-5070
Fax: (512) 320-8935

Garrett K. Sakimae (SBN 288453)
sakimae@fr.com
FISH & RICHARDSON P.C.
555 West Fifth Street 31st Floor
Los Angeles, CA 90013
Tel: (213) 533-4240
Fax: (858) 678-5099

Christine Yang (SBN 102048)
cyang@sjclawpc.com
Law Office of S.J. Christine Yang
17220 Newhope Street, Suite 101-102
Fountain Valley, CA 92708
Tel.: (714) 641-4022

17
**JOINT 26(F) REPORT**

Fax: (714) 641-2082

Attorneys for Defendants KINGSTON TECHNOLOGY CORPORATION, KINGSTON DIGITAL, INC., AND KINGSTON TECHNOLOGY COMPANY, INC.

**MCDERMOTT WILL & EMERY LLP**

By: /s/ *Christopher D. Bright (by permission)*
Christopher D. Bright
cbright@mwe.com
Soyeon Pak Laub
klaub@mwe.com
Mandy H. Kim
mhkim@mwe.com
MCDERMOTT WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, California 92614
Tel: 949.757.7103
Fax: 949.851.9348

Attorneys for Defendant/Counterclaimant APRICORN