*[SEE SIGNATURE BLOCK FOR COUNSEL INFORMATION]*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| SPEX TECHNOLOGIES, INC., | Case No. 8:16-CV-01790-JVS-AGR |
| Plaintiff, | Hon. James V. Selna |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT** |
| KINGSTON TECHNOLOGY CORPORATION, KINGSTON DIGITAL, INC., KINGSTON TECHNOLOGY COMPANY, INC., IMATION CORPORATION, DATALOCKER INC., DATA LOCKER INTERNATIONAL, LLC, | |
| Defendants. | Honorable Judge James V. Selna |
| | Date: September 23, 2019 |
| | Time: 1:30 p.m. |
| | Courtroom: Santa Ana, 10C |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................2

LEGAL STANDARD..................................................................................................4

ARGUMENT ..............................................................................................................6

I.      THIS COURT SHOULD GRANT KINGSTON LEAVE TO
        AMEND ITS ANSWER ........................................................................6

        A.      Kingston Has Timely Brought Its Amendment At The
                Earliest Opportunity And In Accordance With The
                Schedule Adopted By This Court ...............................................6

        B.      Kingston's Amendments Are Made in Good Faith .....................7

        C.      Kingston's Amendments Are Far From Futile ............................8

                1.      Kingston's Amended Answer And
                        Counterclaims Successfully Pleads A Violation
                        Of The Sherman Act.........................................................9

                2.      Kingston's Counterclaim Complaint
                        Successfully Pleads A Violation Of The
                        Cartwright Act ................................................................13

                3.      Kingston's Amended Answer AND
                        Counterclaims Successfully Pleads Patent
                        Misuse.............................................................................13

                4.      Kingston's Amended Answer And
                        Counterclaims Successfully Pleads A Violation
                        Of California's Anti-Trust Laws. ...................................15

        D.      SPEX Will Not Be Prejudiced By the Amendments..................16

CONCLUSION..........................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
   781 F.2d 1393 (9th Cir.1986) ........................................................................ 7

*Analytichem Int'l, Inc. v. Har–Len Assocs., Inc.*,
   490 F.Supp. 271 (W.D.Pa.1980) ................................................................ 14

*Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*,
   812 F.2d 1381 (Fed. Cir. 1987) ................................................................ 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................... 9

*Berlenbach v. Anderson & Thompson Ski Co.*,
   329 F.2d 782 (9th Cir. 1964) .................................................................... 14

*Buehler AG v. Ocrim, S.p.A.*,
   836 F. Supp. 1291 (N.D. Tex. 1992) ....................................................... 11

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
   157 F.3d 1340 (Fed. Cir. 1998) ........................................................ 11, 14

*Catch Curve, Inc. v. Integrated Glob. Concepts, Inc.*,
   No. 1:06-CV-2199-AT, 2011 WL 13146740 (N.D. Ga. Sept. 1,
   2011) ........................................................................................................ 11

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015)............................................................................... 15

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) .................................................................... 16

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................ 5, 16

*F.T.C. v. Actavis, Inc.*,
   570 U.S. 136 (2013)............................................................................ 11, 12

*Foman v. Davis*,
371 U.S. 178 (1962)......................................................................5, 7

*Handgards, Inc. v. Ethicon, Inc.*,
601 F.2d 986 (9th Cir. 1979).......................................10, 11, 13, 15

*Handgards, Inc. v. Ethicon, Inc.*,
743 F.2d 1282 (9th Cir. 1984)...........................................................11

*Johnson v. Serenity Transportation, Inc.*,
No. 15-CV-02004-JSC, 2015 WL 4913266 (N.D. Cal. Aug. 17, 2015)..................................................................................................6

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008)............................................................9

*Mallinckrodt, Inc. v. Medipart, Inc.*,
976 F.2d 700 (Fed. Cir. 1992)...........................................................14

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*,
200 Cal. App. 4th 480 (2011)............................................................13

*Mendia v. Garcia*,
165 F. Supp. 3d 861 (N.D. Cal. 2016)................................................8

*Miller v. Rykoff–Sexton, Inc.*,
845 F.2d 209 (9th Cir.1988)................................................................8

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990).......................................................5, 6

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001)..............................................................5

*Sorosky v. Burroughs Corp.*,
826 F.2d 794 (9th Cir.1987)................................................................7

*Technicon Instruments Corp. v. Alpkem Corp.*,
866 F.2d 417 (Fed. Cir. 1989)..........................................................11

*Tyco Thermal Controls LLC v. Redwood Indus.*,
2009 WL 4907512 (N.D.Cal. Dec. 14, 2009)...................................16

*United States v. Pend Oreille Pub. Util. Dist. No. l,*
   926 F.2d 1502 (9th Cir. 1991) ...................................................................5, 6, 7, 8

*United States v. Webb,*
   655 F.2d 977 (9th Cir. 1981) .............................................................................5, 6

*USM Corp. v. Standard Pressed Steel Co.,*
   453 F.Supp. 743 (N.D.Ill.1978), *aff'd in part, vacated in part on
   other grounds sub nom. USM Corp. v. SPS Tech., Inc.,* 694 F.2d 505
   (7th Cir.1982) .................................................................................................14

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,*
   178 F. Supp. 2d 1099 (C.D. Cal. 2001) ..............................................................15

**Statutes**

California Business & Professions Code § 17200 et seq...........................................15

California Cartwright Act ..................................................................................13, 15

Sherman Anti-Trust Act § 1 ..................................................................9, 10, 13, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................8

Fed. R. Civ. P. 15...........................................................................................4, 5, 16

Fed. R. Civ. P. 26(f)..............................................................................................7

# INTRODUCTION

Kingston moves this Court for leave to amend its answer to add an affirmative defense of patent misuse and to add counterclaims alleging violations of Federal and California anti-trust laws that arose during the recently lifted stay of this case.  These claims SPEX's actions in relation to IPR proceedings challenging the validity of the two patents it has asserted in this case.  Claims 38 and 39 of the '802 patent are nearly identical to claims 55 and 57 of the '135 patent.  The Board invalidated claims 38 and 39 of the '802 patent, and was on the brink of invalidating claims 55 and 57 of the '135 patent.  SPEX's own actions show that it knows (or at least should know) that claims 55 and 57 of the '135 patent are invalid yet SPEX circumvented adjudication of the validity by entering into a "reverse settlement," allowing it to continue assertion of these known-invalid claims against Kingston and others..

This Court's determination on the present motion, though, need not involve a determination on the merits as to the claims Kingston seeks to add.  Rather, consistent with the direction of the Federal Rules and the 9th Circuit to allow amendments with "extreme liberality," this Court's determination as to whether Kingston should be given leave to amend turns on whether amendment will constitute undue delay, whether the claims are raised in bad faith, whether the claims will prejudice the opposing party, and whether the claims are futile.  Each of these factors weighs in favor of amendment.  As to undue delay, Kingston has not delayed in bringing its claims—these claims arose out of SPEX's actions during the stay, and Kingston has brought this motion shortly after the stay was lifted.  As to undue prejudice—trial is not scheduled in this case until April of next year, and this Court's schedule has already allowed for the additional discovery necessary to facilitate Kingston's newly-added claims.  And as to futility and bad faith, Kingston's addition of these claims is directly justified SPEX's improper actions in

continuing to assert patent claims that are invalid, and the legal theories are based soundly in established law.  Accordingly, leave should be granted.

## BACKGROUND

As noted above, the claims Kingston seeks to add through amendment arose out of SPEX's actions during *inter partes* review proceedings brought against the two asserted patents.  The bases for Kingston's added claims are laid out in detail in the proposed amended answer and counterclaims, attached hereto as Exhibits A (clean version) and B (redline showing changes).  However, we provide a brief recitation of the events underlying Kingston's new claims here so as to explain why Kingston now seeks to amend its answer and why Kingston could not have done so earlier.

This case began when SPEX brought its complaint alleging that Kingston infringes two U.S. Patents that it claims to own: U.S. Patent Nos. 6,088,802 ("the '802 patent") and 6,003,135 ("the '135 patent").  (*See* D.I. 157.)  These two patents share a very similar specification.  The two patents generally disclose a portable device used to "communicate with a host computing device to enable one or more security operations to be performed by the modular device on data" either stored on the host computer or on the security device.  (*See generally, e.g.,* D.I. 1-2, at Abstract.)  Both specifications describe the primary embodiment of the claimed portable device to be a PCMCIA-compliant PC-card, as shown below, which was an industry-standard type of computer peripheral device (much like USB is a standard type of peripheral device today):

(*See id.* at Fig. 4B; *see also id.* at 8:17–24 (explaining that the primary embodiment conforms to the specification for PCMCIA cards).  According to how SPEX has alleged infringement of the patents, these patents purportedly cover a peripheral device that connects and receives data from a host computer, encrypts that data using

a security means/security module, and stores the encrypted data in a target means/target module.

This Court stayed this case after inter partes review proceedings were initiated against the two patents SPEX has asserted in this case.  As a result of *inter partes* review proceedings, claims 38 and 39 of the '802 patent were found to be unpatentable by the Patent Trial and Appeal Board.  *See* Exhibit C (PTAB FWD in IPR2018-00082.  In particular, the Board found that both of these claims were unpatentable as obvious over two prior art references— U.S. Patent No. 5,887,145 to Harari ("Harari") and a book describing the architecture for PCMCIA in various combination with Don Anderson, PCMCIA System Architecture 16-Bit PC Cards, Second Edition, 1995 ("Anderson").  *See Final Written Decision, Paper 40, Western Digital Corp. et al. v. SPEX Technologies, Inc.*, IPR2018-00082 (Patent Trial and Appeal Board, April 18, 2019).  SPEX has not appealed this determination, and the time to do so has now expired, meaning that it can no longer be contested that limitations of the claims.

Why this matters in this case is because—though SPEX is not (and cannot) assert claims 38 and 39 of the '802 patent, it does continue to assert claims that share substantively identical limitations to the previously adjudicated unpatentable claims that SPEX knows or should know are invalid.  In particular, claims 38 and 39 of the '802 patent are substantively identical to claims 55 and 57 of the '135 patent, save for one limitation in claims 55 and 57 which recites the step of "operably connecting" the device claimed by the two patents to a host computer.  See Exhibit A, at Counterclaim Complaint ¶¶ 17–26.

SPEX knows, though, or at least should know, that the only limitation present in claims 55 and 57 of the '135 patent is also taught by Harari and Anderson.  *See* Exhibit A, Counterclaims, ¶¶ 27–34.  For one, the Board already preliminary found this limitation taught.  In another IPR brought by Western Digital against the '135

patent, the Board determined at the institution phase of the IPR that claims 55 and 57 (including the "operatively connecting" limitation) were likely unpatentable over the same two references—Harari and Anderson.  Decision, Institution of Inter Partes Review, Paper 14, *Western Digital Corp. v. SPEX Technologies, Inc.*, IPR2017-00084 (Patent Trial and Appeal Board, Apr. 25, 2018).  The only reason this did not become the Board's final determination is that SPEX dropped its allegation that Western Digital (and the other petitioners who were allowed to join the IPR) infringed the '135 patent in exchange for these parties dropping their IPR against the '135 patent.  *See generally* Joint Motion to Terminate, Paper 36, *Western Digital Corp. v. SPEX Technologies, Inc.*, IPR2018-00084 (PTAB Jan. 11, 2019).  Notably, SPEX is not believed to have received any monetary compensation for this settlement—and instead appears to have essentially purchased a dismissal of their IPR by granting Western Digital and the other petitioners a *de facto* license to the '135 patent.  In doing so, SPEX is now able to continue asserting the '135 patent against Kingston (and potentially others) even though it should be invalid.

Despite this knowledge that claims 55 and 57 are unpatentable, SPEX continues to assert these claims and improperly used a reverse settlement to attain dismissal of the IPRs.  This is the basis for Kingston's patent misuses and anti-trust counterclaims.  Kingston moves for this amendment immediately after the lifting of the stay in this case and in accordance with the Court's post-stay schedule. Therefore, Kingston now brings this timely motion to amend its answer to add an additional defense and counterclaims which only arose as a result of actions taken during the IPR and since the stay has been lifted.

## **LEGAL STANDARD**

Pursuant to Federal Civil Rule 15(a)(2), a party seeking to amend a pleading more than 21 days after that pleading has been served must either obtain consent from the opposing party or bring a motion seeking leave to do so.  *See* Fed. R. Civ.

P. 15(a)(2).  Rule 15 instructs courts that "leave shall be freely given when so justice requires" and the Ninth Circuit has explained that "this policy is to be applied with extreme liberality" towards allowing amendments.  *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (leave granted with "extreme liberality" (internal quotation marks omitted); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (same); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (same).  This liberality is motivated by the "underlying purpose of Rule 15" which is "to facilitate decision on the merits, rather than on the pleadings or technicalities."  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

The decision whether to grant leave to amend a pleading falls squarely within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  That discretion is guided by factors that include "(1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party."  *United States v. Pend Oreille Pub. Util. Dist. No. l*, 926 F.2d 1502, 1511 (9th Cir. 1991) (explaining that "[t]he propriety of a motion for leave to amend is generally determined by reference to several factors: (internal quotation marks omitted)).  Thus, as the Supreme Court has explained,"[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Foman*, 371 U.S. at 182.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ARGUMENT

## I. THIS COURT SHOULD GRANT KINGSTON LEAVE TO AMEND ITS ANSWER

This Court should grant Kingston leave to amend its answer to add a patent misuse defense and anti-trust counterclaims.  As the 9th Circuit has explained, this Court's exercise of discretion as to whether to allow the amendment is governed by four factors: (1) whether Kingston has unduly delayed in seeking to amend; (2) whether Kingston's attempt to amend is made in bad faith, (3) whether the amendment will prove futile; and (4) whether SPEX will be unreasonably prejudiced by the amendment.  *Pend Oreille Pub. Util. Dist.*, 926 F.2d at 1511.  As described below, each of these factors weighs in favor of amendment.

### A. Kingston Has Timely Brought Its Amendment At The Earliest Opportunity And In Accordance With The Schedule Adopted By This Court

The first factor governing this Court's discretion whether to allow an amendment is whether the party seeking to amend has unduly delayed in doing so.  *Pend Oreille Pub. Util. Dist.*, 926 F.2d at 1511.  As the 9th Circuit has explained, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir.1981); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990).  Indeed, "the passage of time is not, in and of itself, undue delay"; this "inquiry focuses on whether the plaintiff knew of the facts or legal bases for the amendments at the time the operative pleading was filed and nevertheless failed to act promptly to add them to the pleadings." *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2015 WL 4913266, at *5 (N.D. Cal. Aug. 17, 2015).

Here, Kingston did not delay in bringing this motion to amend its answer. The facts underlying the claims arose during the stay.  It was only during the stay that the Patent Office found claims 38 and 39 of the '802 patent invalid.  It was only

KINGSTON'S MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

8:16-CV-01790-JVS-AGR

during the stay that the SPEX circumvented PTO review of claims 55 and 57 of the '135 patent by entering into a non-monetary settlement with Western Digital and the other parties that brought that IPR. Indeed, the claims Kingston seeks to add only arose when SPEX indicated that it would continue to assert claims 55 and 57 against Kingston after the stay was lifted following the events that occurred during the stay.

Kingston acted immediately upon the stay being lifted. In the joint Rule 26(f) report, Kingston indicated that it would seek to amend its answer to add additional defenses and counterclaims. (*See* D.I. 167.) Kingston proposed a schedule to allow it to make this motion, setting August 1, 2019 as the deadline for doing so—a deadline which was adopted by the Court at the Rule 26(f) conference. (*See id.*) And Kingston has now filed this motion by that deadline. Accordingly, there has been no undue delay.

## B.   Kingston's Amendments Are Made in Good Faith

The second factor guiding this Court's exercise of discretion is whether the proposed amendments are made in "bad faith." *Pend Oreille Pub. Util. Dist.*, 926 F.2d at 1511. This factor examines whether amendments are brought to cause a delay in proceedings or for some other improper purpose. *See Foman*, 371 U.S. at 182. For example, courts have denied leave to amend due to bad faith where the plaintiff's motion was brought "to avoid the possibility of an adverse summary judgment ruling" and would prejudice defendant by requiring re-opening of discovery, *see Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir.1986), or where the plaintiff's motive was to destroy diversity and, therefore, the court's jurisdiction, *see Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir.1987).

Here, Kingston proposes these amendments in good faith. Unlike cases where bad faith has been found, the amendments Kingston proposes will not delay trial or any other aspect of this case. Kingston proposed a schedule for a very limited re-

KINGSTON'S MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

8:16-CV-01790-JVS-AGR

opening of discovery solely on the additional defense and counterclaims.  Thus, these amendments are not made for an improper purpose.  To the contrary, Kingston is bringing well-founded claims based on what Kingston believes to be a bad-faith continuing assertion of invalid claims against it, forcing Kingston to exert significant resources in defending spurious claims that should not be part of this case.

## C.   Kingston's Amendments Are Far From Futile

The third factor this Court should consider when deciding this motion is whether the proposed amendments are futile.  *Pend Oreille Pub. Util. Dist.*, 926 F.2d at 1511.This factor generally comes into play where a Court has already determined that claims  pled in the un-amended pleading are insufficient, and a party seeks to amend to cure the deficiencies in the original pleading.  *See, e.g., Mendia v. Garcia*, 165 F. Supp. 3d 861, 875 (N.D. Cal. 2016) (considering whether an amendment would be futile in light of a pending motion to dismiss).  That is certainly not the case here.  Here, Kingston seeks to amend its answer not to correct any alleged deficiencies in its original pleading, but rather to add additional defenses and claims resulting from additional events that have occurred since this case was originally filed.  If SPEX believes the claims stated in the amended complaint are legally insufficient, it should bring a motion to dismiss them so that this Court may consider the argument in light of full briefing from both parties.

In any event, Kingston's amendments are neither futile nor legally insufficient.  "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]"  *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988) (citations omitted).  This is the same standard that is to be applied when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Id.*  To satisfy the 12(b)(6) pleading standard, a party must plead his or her claim with sufficient specificity to "give the [opposing party] fair notice of what the claim is and the grounds upon

KINGSTON'S MOTION TO AMEND ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

8:16-CV-01790-JVS-AGR

1  which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A]

2  complaint must contain sufficient factual matter, accepted as true, to state a claim to

3  relief that is plausible on its face. A claim has facial plausibility when the plaintiff

4  pleads factual content that allows the court to draw the reasonable inference that the

5  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663

6  (2009) (citation and internal quotation marks omitted).Here, Kingston's amended

7  answer and counterclaim complaint satisfies this standard.

### 1.  Kingston's Amended Answer And Counterclaims Successfully Pleads A Violation Of The Sherman Act

Kingston's amended answer pleads a legally-viable theory for a violation of

section 1 of the Sherman Anti-Trust Act.  The elements for alleging a violation of

section 1 of the Sherman Act are: "(1) a contract, combination or conspiracy

amongst two or more persons or distinct business entities; (2) by which the persons

intended to harm or restrain trade or commerce among the several states, or with

foreign nations; and (3) which actually injures competition." *Kendall v. Visa U.S.A.,

Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

First, Kingston's counterclaim complaint adequately pleads a contract,

combination or conspiracy amongst two or more persons or distinct business entities.

As discussed above, and as detailed in Kingston's complaint, SPEX entered into

"reverse settlements" with parties who had challenged the validity of the '135 patent

before the patent office.  *See* Ex. A, Counterclaims, at ¶ 30.  SPEX received no

remuneration for this settlement other than assuring that the challenge to the validity

of its patent—which it believed would be successful, was terminated without

decision.  Kingston attached a copy of that agreement as Appendix B to the amended

answer and counterclaims.

Second, Kingston's counterclaim complaint also adequately pleads that SPEX

intended to harm or restrain trade in the market for secure, portable USB memory

9

devices by entering into that contract.  In particular, Kingston's counterclaim complaint alleges, inter alia, that SPEX entered into this settlement to allow it to continue to assert claims that SPEX knows are invalid.  *See* Ex. A, Counterclaims, at ¶¶ 22–28 (SPEX knows claims are invalid).  Indeed, the settlement agreement itself specifically provides that SPEX will continue to assert the '135 patent against Kingston, also evidencing that the purpose of the agreement was to allow SPEX to assert these known-invalid claims.  *See* Ex. A, Appendix B, at 1.  As the 9th Circuit has recognized, such bad faith assertion of known-invalid claims can constitute an anti-trust injury, and thus agreements made in furtherance and with the intent to do so violate section 1 of the Sherman Act. *See Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 987 (9th Cir. 1979).

In particular, in *Handgards*, a party brought an anti-trust claim against a patent owner predicated on its contention that the patent owner "prosecuted infringement actions in bad faith, that is, with knowledge that the patents, though lawfully-obtained, were invalid."  *Id.* at 994.  Following a jury verdict against the patent owner, the patent owner appealed, asserting that the party asserting the anti-trust violation had not plead a legally-viable anti-trust action.  *See id.* at 992. Although the 9th Circuit did vacate the judgment because the district court had erred in instructing the jury regarding the appropriate evidentiary burden to prove such a theory, the 9th Circuit did determine bad-faith enforcement of patent claims can constitute an unreasonable restraint of trade because "infringement actions initiated and conducted in bad faith contribute nothing to the furtherance of the policies of either the patent law or the antitrust law."  *Id.* at 993 (holding that "[t]he district court was correct in holding, in effect, that such actions may constitute an attempt to monopolize violative of Section 2 of the antitrust law").  Indeed, after a remand to provide the correct burden of proof, a jury again found the patent owner liable for a violation of the anti-trust laws—a judgment that was affirmed in all respects in a

KINGSTON'S MOTION TO AMEND ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

8:16-CV-01790-JVS-AGR

second appeal.  *See Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1288 (9th Cir. 1984).

Following *Handguards*, numerous courts, including the Federal Circuit, have recognized that bad-faith assertion of patent claims that the patent owner knows to be invalid can constitute actionable conduct under the anti-trust laws.  *See, e.g., C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998) (citing *Handgaurds* with approval and noting that "sham litigation as a tactic to destroy competition can lead to antitrust violation"); *Technicon Instruments Corp. v. Alpkem Corp.*, 866 F.2d 417, 421 (Fed. Cir. 1989) (citing *Handgaurds* with approval and explaining that "there could be a violation of section 2 if a firm prosecuted infringement actions in bad faith, that is, with knowledge that the patents, though lawfully obtained, were invalid" (internal quotation marks omitted); *Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*, 812 F.2d 1381, 1386 (Fed. Cir. 1987) (explaining that "[t]he *Handgards* decisions explicitly state that to prevail in an antitrust claim based upon enforcement of an invalid or unenforceable patent, the litigant must establish that the patentee acted in bad faith in enforcing the patent because he knew that the patent was invalid"); *see also, e.g., Catch Curve, Inc. v. Integrated Glob. Concepts, Inc.*, No. 1:06-CV-2199-AT, 2011 WL 13146740, at *8 (N.D. Ga. Sept. 1, 2011) (denying a motion to dismiss a claim based on a *Handguards* anti-trust violation); *Buehler AG v. Ocrim, S.p.A.*, 836 F. Supp. 1291, 1302 (N.D. Tex. 1992) (denying a patent owner's motion for summary judgment on a *Handguards* anti-trust claim).

Kingston's complaint also properly alleges that the settlements constitute illegal "reverse payment" settlements, as addressed by the Supreme Court in *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013).  In *Actavis*, the Supreme Court held that so-called "reverse settlement" – settlements whereby the patent owner gives something of value to an alleged infringer—can constitute illegal agreements in restraint of trade.  *See id.* at 141.  As the Supreme Court explained, patent owners are not

immune from liability for such settlements simply by virtue of the fact that a patent grants the owner a monopoly because "[t]he patent here may or may not be valid, and may or may not be infringed" and a patent owner's monopoly only extends properly to valid patents and only to products that fall within the scope of the claims. *Id.* at 147.  To the contrary, the Court explained that "patent-related settlement agreements can sometimes violate the antitrust laws."  Where such agreements have a "potential for genuine adverse effects on competition," and where there is a "lack of any other convincing justification" for the agreement, they fall properly within the scope of anti-trust actions.  *See id.* at 149, 159.

As plead in Kingston's counterclaims, the settlement between SPEX and the PTAB Petitioners involved substantial consideration given by SPEX, namely free licenses that SPEX had previously valued at $10 million.  *See* Ex. A, Counterclaims, at ¶ 3.  SPEX entered into this agreement without any "convincing justification" apart from SPEX's desire to assert a known-invalid patent against other competitors in the market.  *See* Ex. A, Counterclaims, at ¶¶ 26, 30.  As such the complaint also states a claim under *Actavis*.

Third, Kingston's counterclaim complaint also properly alleges harm to the market.  As identified in the complaint, the relevant market is the market for secure, portable USB memory devices in the United States.  *See* Ex. A, Counterclaims, at ¶ 14.  As explained in Kingston's counterclaim complaint, SPEX's "reverse settlements" with the PTAB Petitioners and its continued assertion of known invalid claims harms the market because it will force higher prices on consumers.  *See, e.g., id.* at ¶¶ 18, 39–40.  As such, this element too is satisfied.

Lastly, Kingston's complaint also states a proper claim for damages.  As explained by the Ninth Circuit in *Handguards*, "In a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the

KINGSTON'S MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

8:16-CV-01790-JVS-AGR

antitrust wrong." *Handgards*, 601 F.2d at 997.  The costs and fees in defending against allegations of infringement of claims 55 and 57 of the '135 patent—which flow directly from SPEX's continued wrongful assertion of them—are exactly what Kingston seeks as damages.  *See* Exhibit A, Counterclaims, at ¶ 32.  Kingston additionally seeks as damages compensation for harm to Kingston's reputation, it's right to control its products, its financial structure, and for the cloud SPEX's unfounded allegations place on its products and itself.  *See id.* at ¶¶ 33.

### 2.  Kingston's Counterclaim Complaint Successfully Pleads A Violation Of The Cartwright Act

Kingston's Counterclaim complaint also successfully pleads a violation of the California Cartwright Act.  The Cartwright Act is the California equivalent to section 1 of the federal Sherman Act, and (like the Sherman Act) "prohibits combinations in unreasonable restraint of trade." *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 493 (2011).

The counterclaim complaint successfully pleads a combination, namely the settlements between SPEX and the PTAB Petitioners.  *See* Ex. A, Counterclaims, at ¶ 30.  As discussed above, the counterclaim complaint successfully pleads that these agreements were made by SPEX with the intent to harm the market and restrain trade.  *See* pp. 10–11, *supra*.  This market includes a market in California, where Kingston's business is based.  *See* Ex. A, Counterclaims, at ¶¶ 44, 46.  And Kingston's complaint successfully pleads damages that stem from harm to competition.  *See, e.g., id.* at ¶¶ 18, 32–33, 39–40.  As such, the complaint properly states a violation of the Cartwright Act.

### 3.  Kingston's Amended Answer AND Counterclaims Successfully Pleads Patent Misuse

Third, Kingston's amended answer and counterclaim complaint properly states a claim for patent misuses.  The doctrine of patent misuse is an equitable one, providing an equitable defense to an infringement action. Since, under patent law, a

patentee is granted a monopoly of a particular invention, the doctrine of patent misuse prevents that patentee from using the patent as a means of restraining trade in areas beyond the scope of the patent. "[T]he essence of patent misuse consists of an attempt by the patent holder to gain for himself rights not inherent in the patent itself, or to extend his monopoly beyond that legally granted to him." *USM Corp. v. Standard Pressed Steel Co.*, 453 F.Supp. 743, 748–49 (N.D.Ill.1978), *aff'd in part, vacated in part on other grounds sub nom. USM Corp. v. SPS Tech., Inc.*, 694 F.2d 505 (7th Cir.1982); *Analytichem Int'l, Inc. v. Har–Len Assocs., Inc.*, 490 F.Supp. 271, 274 (W.D.Pa.1980) (stating that "[t]he basic vice is the attempt to extend the granted monopoly beyond the terms of the grant"). "The concept of patent misuse arose to restrain practices that did not in themselves violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to public policy. The policy purpose was to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992).

In this context, patent misuse is closely related to the principles of antitrust law.  As the Federal Circuit has found, though, "[p]atent misuse is viewed as a broader wrong than antitrust violation because of the economic power that may be derived from the patentee's right to exclude. Thus misuse may arise when the conditions of antitrust violation are not met." *C.R. Bard*, 157 F.3d at 1372.  Thus, though an anti-trust violation relating to enforcement of a patent does support a finding of misuse, the converse is not true.  In particular, though proving an anti-trust claim may involve proving market power, in the patent misuse context there is "no merit in [the] contention[] that the proof of substantial lessening of competition is a prerequisite to finding patent misuse." *Berlenbach v. Anderson & Thompson Ski Co.*, 329 F.2d 782, 784 (9th Cir. 1964).

It is a bedrock principle of patent law that "an invalid patent cannot be infringed."  *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929, 191 L. Ed. 2d 883 (2015) (explaining that "[t]o say that an invalid patent cannot be infringed, or that someone cannot be induced to infringe an invalid patent, is in one sense a simple truth, both as a matter of logic and semantics").  Yet, despite knowledge that claims 55 and 57 of the '135 are invalid, SPEX continues to assert them.  As the Ninth Circuit explained in *Handgaurds*, "infringement actions initiated and conducted in bad faith contribute nothing to the furtherance of the policies of either the patent law or the antitrust law."  *Handgards*, 601 F.2d at 993.  Accordingly, Kingston properly states a claim for patent misuse by pleading that SPEX has engaged in bad faith litigation in contravention of the monopoly right granted by Congress by attempting to enforce and seek licensing fees of claims it knows to be invalid.

### 4. Kingston's Amended Answer And Counterclaims Successfully Pleads A Violation Of California's Anti-Trust Laws.

Lastly, Kingston's amended answer and counterclaim complaint also successfully pleads a violation of California's anti-trust laws.  In particular, California Business & Professions Code, section 17200 et seq. make it unlawful for any person to engage in unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice."  "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.  It is not necessary that the predicate law provide for private civil enforcement."  *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1120 (C.D. Cal. 2001).  Here, as described above, Kingston's complaint properly states a violation of section 1 of the Sherman Anti-Trust Act, a violation of the Cartwright Act, and a violation of the federal Patent Laws.  Each of these constitute an "unlawful" practice under California law.

15

### D.   SPEX Will Not Be Prejudiced By the Amendments

The last factor guiding this Court's exercise of discretion as to whether to allow the amendments is whether the party opposing amendment will be prejudiced by the amendment.  This factor carries "the greatest weight" in whether to grant leave to amend, as "[p]rejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Capital*, 316 F.3d at 1052 (quotation omitted).  For this factor, "[t]he party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987).  Notably, "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Tyco Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D.Cal. Dec. 14, 2009).

Here, SPEX has not, and cannot, articulate any reason as to why it will be unreasonably prejudiced by allowing the amended answer and counterclaims.  Kingston proposed, and this Court adopted, a schedule that would allow for discovery necessary to litigate these claims.  SPEX has months to explore and gather evidence to defend itself against the counterclaims and to combat Kingston's patent misuses defense.

## <u>CONCLUSION</u>

For the reasons above, Kingston should be granted leave to amend its answer and counterclaims.

1

2    Dated: August 1, 2019

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

FISH & RICHARDSON P.C.

By:  */s/ David M. Hoffman*
     David M. Hoffman (*pro hac vice*)
     hoffman@fr.com
     David Morris (*pro hac vice*)
     dmorris@fr.com
     One Congress Plaza
     111 Congress Ave., Suite 810
     Austin, TX 78701
     Tel: (512) 472-5070
     Fax: (512) 320-8935

     Joanna M. Fuller (SBN 266406)
     jfuller@fr.com
     Garrett K. Sakimae (SBN 288453)
     sakimae@fr.com
     555 West Fifth Street 31st Floor
     Los Angeles, CA 90013
     Tel: (213) 533-4240
     Fax: (858) 678-5099

     Oliver J. Richards (SBN 310972)
     orichards@fr.com
     12390 El Camino Real
     San Diego, CA 92130
     Tel: 858-678-4715
     Fax: 858-678-5099

Kingston's Motion to Amend Answer,
Affirmative Defenses and Counterclaims

LAW OFFICE OF S.J. CHRISTINE YANG

Christine Yang (SBN 102048)
chrisyang@sjclawpc.com
Victoria Hao (*pro hac vice*)
vhao@sjclawpc.com
17220 Newhope Street, Suite 101-102
Fountain Valley, CA 92708
Tel.: (714) 641-4022
Fax: (714) 641-2082

***Attorneys for Defendants***
Kingston Technology Corporation, Kingston Digital, Inc., and Kingston Technology Company, Inc.

Kingston's Motion to Amend Answer,
Affirmative Defenses and Counterclaims
8:16-cv-01790-JVS-AGR

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 1, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail and regular mail.

*/s/ David M. Hoffman*
David M. Hoffman
hoffman@fr.com

**Attorneys for Defendants**
Kingston Technology Corporation,
Kingston Digital, Inc., and
Kingston Technology Company, Inc.

Kingston's Motion to Amend Answer,
Affirmative Defenses and Counterclaims
8:16-cv-01790-JVS-AGR