RUSS, AUGUST & KABAT
Marc A. Fenster (SBN 181067)
*mfenster@raklaw.com*
Benjamin T. Wang (SBN 228712)
*bwang@raklaw.com*
Andrew D. Weiss (SBN 232974)
*aweiss@raklaw.com*
Paul A. Kroeger (SBN 229074)
*pkroeger@raklaw.com*
Jacob R. Buczko (SBN 269408)
*jbuczko@raklaw.com*
Justin E. Maio (SBN 304428)
*jmaio@raklaw.com*
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
SPEX TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| SPEX TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> KINGSTON TECHNOLOGY CORPORATION, KINGSTON DIGITAL, INC., KINGSTON TECHNOLOGY COMPANY, INC., IMATION CORPORATION, DATALOCKER INC., DATA LOCKER INTERNATIONAL, LLC, <br><br> Defendants. | Case No. 8:16-CV-01790-JVS-AGR <br><br> **PLAINTIFF SPEX TECHNOLOGIES, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **Hearing:** <br> Date: September 23, 2019 <br> Time: 1:30 p.m. <br> Place: Courtroom 10C <br> Judge: Hon. James V. Selna |

*RUSS, AUGUST & KABAT*

TABLE OF CONTENTS                                    PAGE

I.    INTRODUCTION ........................................................................................1

II.   FACTUAL BACKGROUND ....................................................................3
      A.   Kingston Files Three Separate IPRs To Invalidate Claims 55 And 57 Of The '135 Patent: All Three Fail ..............................................3
      B.   The Federal Circuit Confirms That Kingston Is Estopped From Further Attempts To Invalidate Claims 55 And 57 ..............................4
      C.   SPEX Seeks To Dismiss The Western Digital IPR To Simplify Issues For Trial Against Western Digital, Apricorn, And Toshiba ...........5

III.  KINGSTON'S MOTION TO AMEND SHOULD BE DENIED.............6
      A.   Kingston's Proposed Amendments Are Futile ............................6
           1.   The Amendments Are Futile Because Kingston Is Estopped From Arguing A Required Fact:  That The Combination Of Harari, Anderson, And Jones Invalidate Claims 55 And 57 Of The '135 Patent ...............................................7
           2.   Kingston's Cannot Plead A Violation Of Section 1 Of The Sherman Antitrust Act ..................................................................11
           3.   Kingston Fails To Plead A Violation Of The Cartwright Act ...................14
           4.   Kingston Fails To Plead Either A Counterclaim Or Affirmative Defense Of Patent Misuse ..........................................15
           5.   Kingston Fails To Plead A Counterclaim Under § 17200 ...................20
      B.   Kingston's Proposed Amendments Would Unfairly Prejudice SPEX...21
      C.   Kingston's Proposed Amendments Are An Improper Collateral Attack On The PTAB's Decision And Federal Circuit's Order ...............24

IV.   CONCLUSION ........................................................................................24

**SPEX'S OPPOSITION TO KINGSTON'S MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

TABLE OF AUTHORITIES                                                    PAGE

**Cases**

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
  204 Cal. App. 4th 1 (2012) ................................................................................. 15

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)............................................................................................. 16

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
  No. CV 16-3714 GW (AGRX), 2018 WL 7456042 (C.D. Cal. Dec. 28, 2018).......... 9, 10

*Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*,
  611 F.3d 495 (9th Cir. 2010) .............................................................................. 12

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
  No. 2:15-cv-21, 2017 WL 2605977 (E.D. Va. June 5, 2017) ............................. 9

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984)............................................................................................. 12

*Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*,
  No. SACV 12-2146 JGB, 2013 WL 3337676 (C.D. Cal. June 28, 2013) ....................... 12

*Cuozzo Speed Techs, LLC v. Lee*, —U.S. —,
  136 S. Ct. 2131 (2106)......................................................................................... 17

*Douglas Dynamics, LLC v. Meyer Prods. LLC*,
  No. 14-CV-886-JDP, 2017 WL 1382556 (W.D. Wis. Apr. 18, 2017) ....................... 9, 21

*Douglas Dynamics, LLC v. Meyer Prods. LLC*,
  No. 14-CV-886-JDP, 2017 WL 2116714 (W.D. Wis. May 15, 2017) ............................. 9

*F.T.C. v. Actavis, Inc.*,
  570 U.S. 136 (2013)........................................................................................ 13, 14

*Forman v. Davis*,
  371 U.S. 178 (1962)............................................................................................. 24

*Handgards Inc. v. Ethicon, Inc.*,
  601 F.2d 986 (9th Cir. 1979) .............................................................................. 13

*In re Magnum Oil Tools, Int'l Ltd.*,
  829 F.3d 1364 (Fed. Cir. 2016)...................................................................... 17, 18

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ............................................................................ 12

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017) ........................................................... 6, 10, 11, 15

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ............................................................................ 23

*Novartis Pharm. Corp. v. Par Pharm. Inc.*,
  No. 14-1289, 2019 U.S. Dist. LEXIS 62489 (D. Del. Apr. 11, 2019)................... 9

RUSS, AUGUST & KABAT

---

**SPEX'S OPPOSITION TO KINGSTON'S MOTION TO AMEND ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

TABLE OF AUTHORITIES                      PAGE

*Rubio v. Capital One Back*,
  572 F. Supp. 2d 1157 (C.D. Cal. 2008) .......................................... 21

*SAS Institute, Inc. v. Iancu*, ––– U.S. –––,
  138 S. Ct. 1348 (2018) ............................................................. 3

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
  330 F. Supp. 3d 574 (D. Mass. 2018) ........................................ 10

*Springs Window Fashions LP v. Novo Indus., L.P.*,
  323 F.3d 989 (Fed. Cir. 2003) .................................................. 19

*Star Envirotech, Inc. v. Redline Detection*, LLC,
  No. SACV 12-01861 JGB (DFMx), 2015 WL 4744394 (C.D. Cal. Jan. 29, 2015) ........ 11

*Stiller v. Colangelo*,
  221 F.R.D. 316 (D. Conn. 2004) ............................................... 23

*TriVascular, Inc. v. Samuals*,
  812 F.3d 1056 (2016) ....................................................... 17, 18

*United States v. Pend Oreille Pub. Util. Dist. No. 1*,
  926 F.2d 1502 (9th Cir. 1991) ................................................. 6

**Statutes**

35 U.S.C. § 141(c) ................................................................. 5

35 U.S.C. § 282(a) ............................................................... 16

35 U.S.C. § 315(e)(1) ...................................................... 3, 4, 8, 10

35 U.S.C. § 315(e)(2) ........................................................... 2, 8

Cal. Bus. & Prof. Code § 16720 ................................................. 15

**Other Authorities**

6 Wright, Miller & Kane,
  *Federal Practice and Procedure* § 1487 (3d ed.) ....................... 6, 23

America Invents Act:
  *Hearing on H.R. 1249 Before the House Comm. on the Judiciary*, 112th Cong. 52-53
  (2011) ......................................................................... 9

Joe Matal, *A Guide to the Legislative History of the America Invents Act:*
  *Part II of II*, 21 Fed. Cir. B.J. 539 (2012) ........................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

i

## I.     INTRODUCTION

Kingston's motion to amend is nothing more than its latest attempt to challenge the validity of claims 55 and 57 of the '135 patent, even after receiving a Final Written Decision from the PTAB affirming their validity. Kingston fails to even mention that it has filed *three inter partes* review proceedings with the PTAB challenging the validity of claims 55 and 57, *all of which were unsuccessful*.

Nor does Kingston mention that, because of its multiple failures to invalidate the claims before the PTAB, it is now estopped from challenging their validity. Indeed, in attempting to escape the estoppel effects of its unsuccessful IPRs, Kingston filed no less than *three appeals* to the Federal Circuit. In one of the appeals, Kingston took the unusual tack of filing a motion for leave to intervene in its own appeal—something which the Federal Circuit referred to as a "strange scenario indeed." Ex. 1 at 3.[1] The Federal Circuit went on to dismiss two of the appeals, including the motion to intervene, following the uncommon issuance of orders to show cause. In its dismissal Order, the Federal Circuit specifically noted that Kingston's attempt to continue challenging the validity of the '135 patent was supported by "*no non-frivolous argument*." Ex. 1 at 5

Undaunted by the Federal Circuit's rebukes, Kingston now attempts to re-litigate the validity of claims 55 and 57 of the '135 patent in this Court. Kingston seeks to collaterally attack the Federal Circuit's Order and the PTAB's Final Written Decision by requesting leave to assert antitrust and patent misuse counterclaims and defenses. All of the proposed new claims are based on the notion that, even though SPEX successfully defeated Kingston's IPR as to the '135 patent, SPEX should nonetheless acknowledge the patent is invalid based on prior art Kingston was aware of (but did not raise) in its IPR, and based on a prior art combination that has never been asserted in any IPR or expert report served in this case.

---

[1]   All exhibits are attached to the declaration of Paul A. Kroeger, filed contemporaneously hereto.

1

Russ, August & Kabat

1    Kingston's motion, however, fails at the threshold because it is futile.

2    Kingston is estopped from proving the facts alleged in its amendments. One of the

3    predicate facts of all of Kingston's new claims is that claims 55 and 57 of the '135

4    patent are invalid. As a result of losing its *inter partes* review of the '135 patent,

5    Kingston is estopped by statute from introducing evidence at trial that claims 55 and

6    57 are invalid "on any ground that the [Kingston] raised or reasonably could have

7    raised during that inter partes review." 35 U.S.C. § 315(e)(2). Because it is

8    indisputable that Kingston reasonably could have raised the prior art references at

9    issue (Harari, Anderson, and Jones) in its IPRs, Kingston is now estopped from

10   asserting that these references prove invalidity of the '135 patent.[2] Kingston

11   therefore has no means to prove a predicate fact (that the claims are invalid) for each

12   of its new counterclaims and defenses at trial. Whether dressed up as an antitrust

13   claim or patent misuse, Kingston may no longer assert that the claims of the '135

14   patent are invalid over Harari, Anderson and Jones. Accordingly, its proposed

15   amendments are futile and its motion should be denied.

16   Kingston's motion also fails because it has not, and cannot, plead facts

17   supporting its proposed counterclaims and defenses. For example, each of its

18   antitrust counterclaims require a conspiracy among **multiple parties** to restrain trade

19   that actually injures competition. There are no facts, pled or otherwise, showing that

20   SPEX worked in concert with any other parties (including Western Digital,

21   Apricorn, and Toshiba) to injure competition. Furthermore, Kingston's patent

22   misuse counterclaim and defense are premised only on the conclusory statement that

23   SPEX "knows" claims 55 and 57 "are invalid" yet continues to assert them. Proposed

24

25   [2] Kingston's second IPR, which resulted in a Final Written Decision affirming the
     validity of claims 55 and 57, was based on the Jones reference. Ex. 2 at 8. In denying
26   institution of the Kingston's third IPR, in which Kingston sought to invalidate the
     claims of the '135 Patent based on Harari and Anderson, the PTAB noted Kingston
27   "does not dispute having knowledge of [Harari and Anderson] at the time of its
     earlier petition." Ex. 3 at 8-9.
28

RUSS, AUGUST & KABAT

Am. Ans. at 17, 35. This statement is based on pure speculation unsupportable by actual facts and should be rejected.

Kingston's motion to amend should be denied on all grounds.

## II.   FACTUAL BACKGROUND

### A.   Kingston Files Three Separate IPRs To Invalidate Claims 55 And 57 Of The '135 Patent; The PTAB Issues A Final Written Decision Finding The Claims Not Unpatentable And An Order Finding That Estoppel Attached To Kingston's Arguments As To Harari And Anderson

Before bringing this motion, Kingston filed ***three separate IPR petitions*** challenging claims 55 and 57 of the '135 patent. All were unsuccessful. The PTAB denied institution as to Kingston's ***first*** IPR petition, upholding the patentability of claims 55 and 57. Ex. 4.

In Kingston's ***second*** IPR, the Board initially denied institution as to claims 55 and 57 but, following the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, ––– U.S. –––, 138 S. Ct. 1348 (2018), issued a modified order instituting review of all claims. Ex. 2 at 2. After full consideration of Kingston's arguments, the Board issued a Final Written Decision again upholding the patentability of claims 55 and 57. *Id.* at 59.

Kingston's ***third*** IPR petition was Kingston's attempt to join a proceeding started by Western Digital (IPR2018-00084, the "Western Digital IPR"). The petition was "substantively identical" to Western Digital's prior petition, which based its invalidity arguments on Harari, Anderson, and other prior art references. Ex. 3 at 2. Kingston requested that it be joined to the Western Digital IPR, which was later joined by Apricorn and Toshiba. *Id.* The Board dismissed Kingston's petition as estopped under 35 U.S.C. § 315(e)(1), in light of the prior Final Written Decision on Kingston's second petition in the IPR2017-01021 proceeding. *Id.* at 9. Noting that Kingston did not dispute having knowledge of the Harari and Anderson references when it filed its second IPR petition, the Board explained:

Regardless of the reasons Kingston chose not to file a petition asserting grounds based on Harari, Anderson, and Dumas at the time of filing its petition in IPR2017-01021, we cannot ignore the plain meaning of 35 U.S.C. § 315(e)(1). ***Thus, we determine Petitioner is estopped from requesting or maintaining this Petition based on Harari, Anderson, and Dumas—references that reasonably could have been raised in its earlier petition in Case IPR2017-01021 or contemporaneously in a sibling petition.***

*Id.* at 8-9 (emphasis added); *see also* Kroeger Decl. Ex. 5 at 2-3 (the Board again noting that it "dismissed the [third] Kingston Petition because Kingston was estopped from requesting or maintaining the Kingston Petition under 35 U.S.C. § 315(e)(1)" and, further, "Kingston admitted that it was aware of the references applied in the instant case at the time of filing its earlier petition in IPR2017-01021").

### B. The Federal Circuit Confirms That Kingston Is Estopped From Further Attempts To Invalidate Claims 55 And 57

After its three unsuccessful attempts at the PTAB, Kingston filed three separate appeals to the Federal Circuit related to the IPRs. Kingston first appealed the PTAB's Final Written Decision finding that it had failed to show claims 55 and 57 were unpatentable (Appeal No. 2019-1256). This appeal remains pending.

Kingston separately appealed the PTAB's decision finding its third IPR petition barred by the estoppel provisions of 35 U.S.C. § 315(e)(1) (Appeal No. 2019-1342). Finally, Kingston appealed the PTAB's decision to terminate the Western Digital IPR even though Kingston was never a party to the proceeding (Appeal No. 2019-1599). The Federal Circuit responded to Kingston's second and third appeals by issuing Orders to Show Cause as to why the appeals should not be dismissed for lack of subject matter jurisdiction. Exs. 6-7.[3]

---

[3] After the issuance of the Orders to Show Cause, Kingston filed a motion for leave to intervene in its own appeal in Appeal No. 2019-1599. The Federal Circuit referred to this as "a strange scenario indeed" in its Order dismissing Kingston's second and third appeals. Kroeger Decl., Ex. 1 at 3.

4

RUSS, AUGUST & KABAT

After full briefing on the Orders to Show Cause, the Federal Circuit dismissed both of Kingston's second and third appeals for lack of jurisdiction. With regard to Kingston's appeal of the PTAB's finding of estoppel, the Federal Circuit noted:

> ***Kingston can make no non-frivolous argument that it should have been permitted to join the Western Digital IPR*** (IPR2018-00084) after the Board dismissed Kingston's own petition. The provision on which Kingston requested joinder, 35 U.S.C. § 315(c), states that the Director may "join as a party to that inter partes review any person who properly files a petition under section 311 that the Director ... determines warrants the institution of an inter partes review under section 314." Because the Board determined that Kingston's petition did not warrant institution under § 314 and we must take that determination to be final and conclusive, it follows from the plain terms of § 315(c) that joinder also had to be denied.

Ex.1 at 5-6 (emphasis added).

In Kingston's third appeal, the Federal Circuit noted that "Kingston's right to appeal, if any, comes from 35 U.S.C. § 141(c), which states that "[a] *party* to an inter partes review ... may appeal." *Id.* It then dismissed the appeal "[b]ecause Kingston is absolutely not a party under section 141, [and] ... has no right to appeal." *Id.* at 6.

## C.    SPEX Seeks To Dismiss The Western Digital IPR To Simplify Issues For Trial Against Western Digital, Apricorn, And Toshiba

As SPEX was preparing for trial (before the case was stayed pending the Western Digital IPR), SPEX made the strategic decision to only pursue its claims as to the '802 patent against Western Digital, Apricorn, and Toshiba. SPEX informed both the Court and the Defendants of this decision during the stay hearing in May 2018. *See* Case 8:16-CV-01799, Dkt. No. 87, at 1 ("SPEX is willing to withdraw its claims against Western Digital on the Method Claims and the '135 Claims and proceed to trial against Western Digital only on the '802 Device Claims."). Subsequently, in furtherance of its strategy to simplify its claims against Western Digital, Apricorn, and Toshiba, SPEX negotiated a settlement as to all claims related

Russ, August & Kabat

to the '135 patent, including the pending IPR proceeding. *See* Appx. B to Proposed Counterclaims (settlement agreement). On January 30, 2019, the Board terminated the Western Digital IPR. Ex. 5 at 4. Although Kingston's Motion attempts to draw some nefarious intent from this settlement, this was simply an implementation of SPEX's existing plan to narrow the case for trial, as it had previously informed the Court and the Defendants.

## III.   KINGSTON'S MOTION TO AMEND SHOULD BE DENIED

"The propriety of a motion for leave to amend is generally determined by reference to several factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991). "An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). An amendment is prejudicial "if the court determines that the proposed amendment would result in [the non-movant] being put to added expense and the burden of a more complicated and lengthy trial or that the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury ...." 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1487 (3d ed.) (footnote numbers omitted)).

The factors of (1) futility; (2) unfair prejudice; and (3) Kingston's motive for requesting amendment weigh in favor of denying the Kingston's motion.

### A.   Kingston's Proposed Amendments Are Futile

Kingston's motion should be denied as futile for two separate and independent reasons. *First,* as a result of its unsuccessful IPR challenges to the '135 patent, Kingston is estopped by statute from asserting that claims 55 and 57 of the '135 patent are invalid over the combination of the Harari, Anderson and Jones prior art references. Kingston's proposed affirmative defense and counterclaims, however, all depend on establishing that the '135 patent claims are invalid over these

6

RUSS, AUGUST & KABAT

references. Because Kingston is estopped from asserting this necessary predicate, its requested amendments are futile.

**Second,** Kingston's requested amendments are futile because it has failed to, and cannot, plead the necessary facts to support the causes of action and defense it seeks to add.

**1.    The Amendments Are Futile Because Kingston Is Estopped From Arguing A Required Fact: That The Combination Of Harari, Anderson, And Jones Invalidate Claims 55 And 57 Of The '135 Patent**

At the center of Kingston's new arguments is the predicate fact that claims 55 and 57 are invalid and known by SPEX to be invalid:

- Affirmative Defense of Patent Misuse: "Plaintiff is barred from asserting claims 55 and 57 of the '135 patent against Kingston because ... Plaintiff ***knows that these claims are invalid***." Proposed Am. Ans. at 17 (emphasis added).

- Counterclaim 1 (Sherman Act § 1): "[W]hile it was knowing [sic] or it should have known that the [sic] claims 55 and 57 of the '135 patent are invalid, SPEX entered into contracts with the PTAB Petitioners ... so that it may [sic] continue to assert these ***known-invalid claims*** against Kingston and other companies in the industry." Proposed Counterclaims ¶36 (emphasis added).

- Counterclaim 2 (Cartwright Act): "These agreements allow SPEX to continue to assert, and to attempt to extract royalties from, ***known-invalid claims***. As such, the agreements fall within the scope of agreements made illegal under the Cartwright Act." *Id.* ¶45 (emphasis added).

- Counterclaim 3 (Patent Misuse): "SPEX has engaged in patent misuses [sic] by, inter alia, maintaining its allegations of infringement of claims 55

7

RUSS, AUGUST & KABAT

and 57 of the '135 patent, *knowing these claims to be invalid*." *Id.* ¶49 (emphasis added).

- Counterclaim 4 (California Business & Professions Code): "SPEX has engaged in actions made unlawful ... by entering into settlement agreements designed to further an antitrust harm (i.e. assertion of *known-invalid claims*) and by bringing sham litigation asserting infringement of claims 55 and 57 of the '135 patent, *knowing these claims to be invalid*." *Id.* ¶52 (emphasis added).

Of course, if claims 55 and 57 are not in fact valid, SPEX could not have known that the claims are invalid. Kingston argues that SPEX "knows" claims 55 and 57 are invalid based on a combination of the Harari, Anderson, and Jones prior art references. *See, e.g.*, Mot. at 3-4; Proposed Counterclaims ¶¶20-29. Therefore, if Kingston cannot prove that the claims are invalid, all of Kingston's proposed new claims (and affirmative defense) cannot be proven at trial.

Kingston cannot prove the predicate fact of invalidity based on any combination of Harari, Anderson and Jones because Kingston is statutorily estopped from making such arguments. Section 315 of Title 35 of the United States Code provides:

> The petitioner in an *inter partes* review of a claim in a patent under this chapter that results in a final written decision under section 318(a) ... *may not assert either in a civil action arising in whole or in part under section 1338 of title 28 ... that the claim is invalid on any ground that the petitioner raised or reasonably could have raised* during that *inter partes* review.

35 U.S.C. § 315(e)(2) (emphasis added).[4] Estoppel is intended to broadly apply to *all* validity challenges to the same patent. For example, as Judge Wu explained in

---

[4] Section 315(e)(2) expressly applies to civil actions in district court. As discussed above, the PTAB dismissed Kingston's third IPR petition as estopped under Section 315(e)(1), which applies the same "raised or reasonably could have raised" standard to subsequent IPR proceedings. 35 U.S.C. § 315(e)(1).

8

RUSS, AUGUST & KABAT

*Cal. Inst. of Tech. v. Broadcom Ltd*., No. CV 16-3714 GW (AGRX), 2018 WL 7456042, at *8 (C.D. Cal. Dec. 28, 2018) (hereinafter "*Caltech*"), the legislative history of Section 315 "supports the view that § 315(e)(2) was intended to provide ***broad estoppel coverage***." *Caltech*, 2018 WL 7456042, at *8 n.8 (emphasis added). Judge Wu further noted that the following statement by then-Director of the USPTO David Kappos during the enactment of the America Invents Act likewise supports broad IPR estoppel: "If I can say that in my own words also, that I believe there are significant advantages for patentees who successfully go through the post-grant system … because of those estoppel provisions. Those estoppel provisions mean that your patent is ***largely unchallengeable by the same party***." *Id.* (emphasis added) (quoting America Invents Act: *Hearing on H.R. 1249 Before the House Comm. on the Judiciary*, 112th Cong. 52-53 (2011) (statement of Director David Kappos)); *see also Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-CV-886-JDP, 2017 WL 1382556, at *4 (W.D. Wis. Apr. 18, 2017) ("[T]he legislative history … clearly suggests that Congress intended IPR to serve as a ***complete substitute for litigating validity in the district court***." (emphasis added)), *clarified by* 2017 WL 2116714 (W.D. Wis. May 15, 2017); 157 Cong. Rec. S1360-94 (daily ed. Mar. 8, 2011) (statement of Sen. Grassley) (describing purpose of IPR estoppel provision as "ensur[ing] that if an *inter partes* review is instituted while litigation is pending, that review will ***completely substitute*** for at least the patents-and-printed-publications portion of the civil litigation" (emphasis added)); *Novartis Pharm. Corp. v. Par Pharm. Inc.,* No. 14-1289, 2019 U.S. Dist. LEXIS 62489, at *6 (D. Del. Apr. 11, 2019) ("Allowing an IPR petitioner to have two bites at the apple by holding back certain obviousness combinations runs counter to both the clear language and purpose behind § 315." (citation omitted)); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21, 2017 WL 2605977, at *3 (E.D. Va. June 5, 2017) (stating that it would "eviscerat[e] the advantages of staying litigation for an IPR petition" and "waste this Court's time to allow a stay for a year during IPR proceedings and then

9

1  review invalidity arguments that Defendants could (and perhaps should) have raised
2  in their IPR petition").

3      Section 315 applies to Kingston here because it knew about Harari, Anderson,
4  and Jones prior to filing its second IPR petition, which resulted in a Final Written
5  Decision finding claims 55 and 57 not unpatentable. Jones was expressly raised in
6  Kingston's first and second IPR petitions. Ex. 4 at 4, 8. Kingston likewise knew
7  about and could have raised[5] Harari and Anderson, which prompted the PTAB to
8  find that Kingston was estopped under 35 U.S.C. § 315(e)(1). This section includes
9  the same "raised or reasonably could have raised" trigger language.[6] Ex. 3 at 8-9;
10 *see also* Ex. 5 at 2-3 (noting that Kingston "admitted that it was aware of" these
11 references when it filed its second IPR petition and was therefore estopped from
12 raising them in its third petition). Section 315 therefore applies, and Kingston is
13 estopped from making any arguments that Harari, Anderson, and Jones (among other
14 references) invalidate claims 55 and 57 of the '135 patent.

15     Kingston's complete inability to prove the predicate fact for its proposed
16 amendments makes them futile.[7] "An amendment is futile when no set of facts can
17 be proved under the amendment to the pleadings that would constitute a valid and
18 sufficient claim or defense." *Koster*, 847 F.3d at 656. As detailed above, Kingston's

---

[5] The scope of "raised or reasonably could have raised" includes "any patent or printed publication that a petitioner actually knew about or that 'a skilled searcher conducting a diligent search reasonably could have been expected to discover.'" *Caltech*, 2018 WL 7456042, at *8 (C.D. Cal. Dec. 28, 2018) (quoting *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 602 (D. Mass. 2018)).

[6] 35 U.S.C. § 315(e)(1) applies to PTAB proceedings. 35 U.S.C. § 315(e)(2) applies to civil litigations.

[7] To the extent Kingston argues that estoppel applies only to its invalidity defense, this argument is belied by the clear terms of the statute. It provides the scope of the estoppel applies not just to claims for patent infringement, but to the entire "civil action." 35 U.S.C. § 315(e)(2) ("may not assert either *in a civil action arising in whole or in part* under section 1338 of title 28 ... that the claim is invalid").

10

RUSS, AUGUST & KABAT

proposed amendments each require proof that claims 55 and 57 are invalid over the combination of Harari, Anderson, and Jones prior art references. *See, e.g.*, Mot. at 3-4; Proposed Am. Ans. at 17; Proposed Counterclaims ¶¶21, 26-27, 31, 36, 45, 49, 52. But claims 55 and 57 have never been held invalid, and Section 315 estoppel bars Kingston from ever arguing invalidity based on Harari, Anderson, or Jones.

Accordingly, as Kingston is estopped from proving invalidity based on Harari, Anderson, or Jones, it will be unable to prove that SPEX "knew" these references invalidate the claims.[8] Without any ability to prove its foundational premise that SPEX knows claims 55 and 57 to be invalid, Kingston's proposed amendments are futile under Ninth Circuit law. *See Koster*,847 F.3d at 656. For this reason alone, its motion should be denied.

### 2.    Kingston's Cannot Plead A Violation Of Section 1 Of The Sherman Antitrust Act

Kingston's first counterclaim alleges that SPEX has violated Section 1 of the Sherman Antitrust Act. Proposed Counterclaims ¶¶34-41. To state a claim under this statute, the claimant must plead evidentiary facts that, if true, would prove: "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually

---

[8] Section 315 estoppel applies to Kingston regardless of the fact that its appeal of the Final Written Decision is still pending. *See, e.g*., 35 U.S.C. § 315(e)(2) (setting Final Written Decision as the estoppel trigger and providing no exception or delay for appeals); *Star Envirotech, Inc. v. Redline Detection*, LLC, No. SACV 12-01861 JGB (DFMx), 2015 WL 4744394, at *3 n.3 (C.D. Cal. Jan. 29, 2015) (Bernal, J.) ("IPR estoppel attaches once the PTAB issues a final written decision."); Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539, 616 (2012) (explaining that Section 315(e)(2) estoppel will "apply as soon as the PTAB enters a final written decision" and that its "effect is not delayed pending completion of an appeal to the Federal Circuit").

RUSS, AUGUST & KABAT

1   injures competition." *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047 (9th Cir.

2   2008). Kingston's counterclaim fails to plead facts to support any of these elements.

3     Kingston ignores that this standard requires an allegation that SPEX, Western

4   Digital, Apricorn, and Toshiba "engaged in ***concerted*** activity to restrain trade." *See*

5   *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc*., No. SACV 12-2146 JGB,

6   2013 WL 3337676, at *6 (C.D. Cal. June 28, 2013) (emphasis added) (granting

7   motion to dismiss Sherman Act Section 1 claim and criticizing the claim for

8   "contain[ing] almost no factual allegations related to actions taken or statements

9   made by" one party to the alleged unlawful agreement and instead including mostly

10   "allegations pertain[ing] to unilateral conduct by" the other party to the agreement).

11     Kingston alleges that SPEX entered into a settlement agreement intending to

12   restrain trade but nowhere contends that any other party to the agreement—Western

13   Digital, Apricorn, or Toshiba—had any such intent. Proposed Counterclaims ¶¶34-

14   41. *Kendall's* requirement of a conspiracy among multiple parties to restrain trade is

15   not met where only one person or entity to the alleged unlawful agreement intended

16   to harm or restrain trade. By design, Section 1 of the Sherman Antitrust Act is limited

17   to multiple parties working in concert to restrain trade, which is not what Kingston

18   alleges. *See, e.g.*, *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc*., 611 F.3d

19   495, 504 (9th Cir. 2010) ("While concerted conduct is subject to sanction [under

20   Section 1] if it merely restrains trade, unilateral conduct is subject to sanction [under

21   Sherman Act Section 2] only if it either actually monopolizes or threatens

22   monopolization."); *Copperweld Corp. v. Indep. Tube Corp*., 467 U.S. 752, 768-69

23   (1984) ("Congress treated concerted behavior more strictly than unilateral behavior

24   ... [because] [c]oncerted activity inherently is fraught with anticompetitive risk."). 

25   Kingston has not, and cannot, plead such a conspiracy.

26     Moreover, Kingston's contention that the "bad faith assertion of known-

27   invalid claims can constitute an antitrust injury," Mot. at 10, is unsupported. All of

28   the cases it cites address claims brought under Section 2 of the Sherman Antitrust

RUSS, AUGUST & KABAT

Act—a cause of action which Kingston has not pled and which has different requirements.[9] Proposed Counterclaims ¶35. The primary case it relies on, *Handgards*, exclusively discusses liability under Section 2 of the Sherman Act, something which Kingston acknowledges in its brief. Mot. at 10 (quoting *Handgards*, 601 F.2d at 993: "'the district court was correct in holding, in effect, that such actions may constitute an attempt to monopolize violative of **Section 2** of the antitrust law'") (emphasis added). Indeed, all of the authority Kingston relies on either cites to *Handgards* or Section 2 and, thus, is inapplicable to this case.

Finally, Kingston has failed to, and cannot, plead injury to competition as required for a Section 1 Sherman Act claim. Kingston's invocation of SPEX's settlement of the '135 IPR with Western Digital, Apricon, and Toshiba, as the source of that injury rings hollow. Mot. at 12. For instance, Kingston does not properly allege that the settlement agreement is an actionable "reverse settlement" of the sort recognized in *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013). A "reverse settlement" is a particular, unusual agreement that requires a "payment [by the patentee to the infringer] in return for **staying out of the market**." *Id.* at 154 (emphasis added). Kingston's allegations are actually the opposite of a reverse settlement; under Kingston's purported facts, SPEX has "paid" Western Digital, Apricorn and Toshiba **to stay in the market**. Proposed Counterclaims ¶¶38-40. In other words, Kingston's allegations show that, if anything, the settlement agreement resulted in ***increased competition*** in the market, not decreased competition as outlined in *Actavis*. Even if

---

[9] Unilateral action, of the sort plead by Kingston, is actionable, if at all, only under Section 2 of the Sherman Act. Section 2 makes actionable "[e]very person who shall monopolize, or attempt to monopolize ... any part of the trade or commerce among the several states." 15 U.S.C. § 2. A claim brought under this section must allege "the patentee's possession of exclusionary power within the relevant market." *Handgards Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993 n.13 (9th Cir. 1979). Kingston does not allege (because it cannot) that SPEX, which does not make or sell products, has an exclusionary power in the relevant market.

13

RUSS, AUGUST & KABAT

Kingston's facts as pled are taken as true, the settlement agreement is not a "reverse settlement" as a matter of law.

Kingston also does not allege the exchange of any payment by SPEX to Western Digital, Apricorn, and Toshiba, other than the grant of a "de facto license" to the patent under which SPEX agreed to drop its claims of infringement. Proposed Counterclaims ¶36. As the Supreme Court noted, however, "traditional settlement considerations, such as avoided litigation costs" do not rise to the level of an antitrust violation. *Actavis*, 570 U.S. at 156. Kingston alleges nothing more than such traditional settlement considerations—dropping claims of infringement that SPEX had already announced it would no longer be pursuing in order to streamline its case for trial. Indeed, far from any nefarious intent by SPEX, the agreement with these defendants simply narrowed SPEX's case, the possibility of which SPEX informed the Court of in May 2018. SPEX should have the right to settle its claims of patent infringement, without the risk that such traditional settlements will amount to an antitrust violation.

Although Kingston has alleged harm *to Kingston* (*see* Proposed Counterclaims ¶41), that is not sufficient for a claim brought under Section 1 of the Sherman Antitrust Act. Instead, such a claim requires allegations showing harm *to the market*. *Kendall*, 518 F.3d at 1047. Kingston cannot make such allegations because, as shown above, if any, the settlement agreement actually increases competition. Accordingly, Kingston's request to amend its answer to include a Section 1 claim is futile, and its motion should be denied on this ground.

### 3. Kingston Fails To Plead A Violation Of The Cartwright Act

Kingston's second counterclaim alleges that SPEX has violated the California Cartwright Act and suffers the same fatal flaw as Kingston's first counterclaim. Proposed Counterclaims ¶¶42-46. The Cartwright Act prohibits trusts, which the statute defines as "combination[s] of capital, skill or acts by two or more persons"

RUSS, AUGUST & KABAT

for any of several enumerated purposes, which include "[t]o create or carry out restrictions in trade or commerce." Cal. Bus. & Prof. Code § 16720. "To maintain an action for a combination in restraint of trade under the Cartwright Act, the following elements must be established: (1) the formation and operation of the conspiracy; (2) illegal acts done pursuant thereto; and (3) damage proximately caused by such acts." *Asahi Kasei Pharma Corp. v. CoTherix, Inc*., 204 Cal. App. 4th 1, 8 (2012) (internal quotation marks omitted).

Kingston's allegations fall far short of this standard. Like Kingston's Sherman Act claim, this claim requires a showing of a conspiracy between SPEX, Western Digital, Apricorn and Toshiba. *Asahi*, 204 Cal. App. 4th at 8. Even if the facts pled are taken as true, Kingston does not allege a conspiracy. Instead, Kingston alleges purported actions taken by SPEX alone. Proposed Counterclaims ¶¶42-46. Thus, even if Kingston's allegations were accepted as true, its focus on unilateral action by SPEX falls outside the scope of the Cartwright Act. *Asahi*, 204 Cal. App. 4th at 6. Furthermore, Kingston cannot plead facts showing a conspiracy because no such facts exist.

Because of its inability to plead concerted activity by multiple parties (rather than unilateral action by SPEX), Kingston's first and second counterclaims cannot be proven even if their underlying allegations are accepted as true. As a result, Kingston's proposed amendments to add these counterclaims are futile. *Koster*, 847 F.3d at 656 ("An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.").

### 4.    Kingston Fails To Plead Either A Counterclaim Or Affirmative Defense Of Patent Misuse

Kingston's proposed counterclaim and affirmative defense of patent misuse claim misuse because SPEX is "maintaining its allegations of infringement of claims 55 and 57 of the '135 patent knowing these claims to be invalid." Proposed

15

RUSS, AUGUST & KABAT

Counterclaims ¶49; Proposed Am. Ans. at 17. Kingston has utterly failed to, and cannot, plead facts plausibly showing this conclusion. Instead, it relies on pure speculation and legally erroneous conclusions that are an insufficient basis for such claims. For this reason, its proposed amendments are futile.

"[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. In other words, the allegations of a complaint must include "plausible grounds to infer" the basis for claim alleged. *Id.* at 556.

Kingston cannot allege any facts plausibly showing that SPEX "knows" claims 55 and 57 of the '135 patent are invalid. As an initial matter, claims 55 and 57 are presumed valid by statute, and have never been held invalid by any court or the Patent Office. *See* 35 U.S.C. § 282(a). As described above, Kingston is estopped from making the argue that the claims are estopped here as well. Despite these facts—and despite Kingston's own three failed IPR petitions challenging these claims—Kingston maintains not only that claims 55 and 57 are invalid, but also that SPEX knows them to be invalid. Kingston arrives at its conclusion of SPEX's knowledge only through conjecture that ignores the facts and law.

For instance, Kington first speculates that SPEX knows claims 55 and 57 are invalid, and that its "belief that these claims are invalid is objectively reasonable [sic]" based on the combination of the Harari, Anderson, and Jones references. Proposed Counterclaims ¶¶21-29. Kingston makes these allegations in spite of the fact that no party has ever asserted that this combination of prior art invalidates claims 55 and 57—not in any of the expert reports issued in this action or in any of the defendants' numerous IPR proceedings. Kroeger Decl. ¶ 10. Indeed, no expert has ever opined that a person of skill in the art would have been motivated to combine these references, or even that these references are combinable. Kroeger

16

Decl. ¶ 10. Moreover, Kingston does not even plead allegations that one of skill in the art could or would have combined Harari, Anderson, and Jones. Yet Kingston speculates that SPEX knew, for a fact, that this undisclosed combination invalidates claims 55 and 57. This speculation is simply not plausible and cannot support a claim for patent misuse.

Kingston further alleges that "SPEX knows" that the Harari and Anderson references teach the "operably connecting" limitation because of the PTAB's institution decision in the Western Digital IPR. *Id.* at ¶26. This decision, as a matter of law, is inherently preliminary and non-binding. *Cuozzo Speed Techs, LLC v. Lee*, —U.S. —, 136 S. Ct. 2131, 2140 (2106) ("The Patent Office's decision to initiate *inter partes* review is 'preliminary,' not 'final.'"); *TriVascular, Inc. v. Samuals*, 812 F.3d 1056, 1068 (2016) ("[T]he Board is not bound by any findings made in its Institution Decision. At that point, the Board is considering the matter preliminarily without the benefit of a full record.").

Kingston's attempt to elevate a preliminary institution decision to a binding Final Written Decision, and thus assert that SPEX must know its claims are invalid, is improper and cannot support a claim for patent misuse. The Federal Circuit has repeatedly warned against exactly the inferential leap that Kingston asks this Court to make, stating that "the decision to institute and the final written decision are 'two very different analyses,' and each applies a 'qualitatively different standard.'" *In re Magnum Oil Tools, Int'l Ltd.*, 829 F.3d 1364, 1376 (Fed. Cir. 2016) (quoting *TriVascular*, 812 F.3d at 1068). Rejecting such an argument, the Federal Circuit further explained:

> The Board is free to change its view of the merits after further development of the record, and *should do so* if convinced its initial inclinations were wrong. To conclude otherwise would collapse these two very different analyses into one, which we decline to do. If those determinations were somehow binding with respect to the Board's final decision, as TriVascular urges, the patentee's appeal rights as to that second determination would be close to illusory. TriVascular's

17

RUSS, AUGUST & KABAT

> argument also fails to appreciate that there is a significant difference between a petitioner's burden to establish a "reasonable likelihood of success" at institution, and actually proving invalidity by a preponderance of the evidence at trial.

*TriVascular*, 812 F.3d at 1068 (emphasis in original).

The PTAB's preliminary decision to institute an IPR proceeding for the '135 patent did not render any claim of the patent invalid. After full development of the record and a trial on the merits, the Board may have decided—as was the case in *TriVascular*—that the petitioners failed to prove invalidity by a preponderance of the evidence. But because SPEX settled its infringement claims as to the '135 patent with Western Digital, Apricorn, and Toshiba before the PTAB issued a Final Written Decision, there is no way to know what the PTAB would have decided. Kingston simply assumes that claims 55 and 57 ultimately would have been held invalid after a full trial on the merits, and that SPEX would should somehow have the foresight to know this. Mot. at 4 (arguing that "[t]he only reason [the institution decision] did not become the Board's final determination" is that SPEX settled with the petitioners). This assumption has no basis in fact and directly contradicts Federal Circuit precedent making clear that PTAB patentability determinations are based on merits trials, not preliminary reviews of IPR petitions. *See Magnum Oil*, 829 F.3d at 1377 ("[T]he Board has an obligation to assess the question [of patentability] anew after trial based on the totality of the record.").

In any event, SPEX filed a Patent Owner Preliminary Response in this IPR, in which SPEX contended that Harari and Anderson did not invalidate these claims. Ex. 8. This is a far better indicator of SPEX's belief as to the validity of its claims, as opposed to a non-binding, non-precedential, institution decision.

Kingston further contends that "SPEX's conduct in this litigation also shows it knows claims 55 and 57 are invalid." Proposed Counterclaims ¶ 27. This argument should be rejected. According to Kingston, SPEX's litigation expert did not contest certain arguments that Kingston made about the Jones prior art reference that

18

RUSS, AUGUST & KABAT

1  Kingston used in its first two IPR petitions. *Id.* Whether SPEX's expert responded

2  directly to every invalidity argument made by Kingston is immaterial. The fact is

3  that Kingston's multiple IPR challenges based on Jones failed to invalidate claims

4  55 and 57, so it can hardly be assumed from the absence of certain testimony by

5  SPEX's expert that Jones invalidates claims 55 and 57. In any event, Kingston has

6  the sole burden of proving invalidity by clear and convincing evidence regardless of

7  the admissions of SPEX's expert.

8        Moreover, Kingston's characterization of SPEX's settlement with Western

9  Digital, Apricorn, and Toshiba as a nefarious "reverse settlement" is legally

10  erroneous. *Id.* ¶29. The settlement is not a "reverse settlement" as shown above.

11  Further, this argument ignores the multitude of considerations that factored into

12  SPEX's settlement decision and have nothing to do with Kingston, such as cost

13  control, the scope of potential damages, and the availability of infringement

14  evidence. Like any patentee, SPEX was free to consider these and other factors in

15  determining whether to settle its infringement claims with these other defendants,

16  and Kingston's unfounded speculation cannot overcome the presumption that

17  SPEX's infringement claims against Kingston are made in good faith. *See Springs*

18  *Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 999 (Fed. Cir. 2003) ("The

19  law recognizes a presumption that the assertion of a duly granted patent is made in

20  good faith ... ; this presumption is overcome only by affirmative evidence of bad

21  faith." (internal quotation marks omitted)).

22        Finally, Kingston's proposed amended answer argues that an IPR decision

23  involving an unrelated different patent proves that claims 55 and 57 of the '135

24  patent are invalid. Proposed Counterclaims ¶¶20-27. In particular, Kingston points

25  to the PTAB's determination in IPR2018-00082 that claims 38 and 39 of the '802

26  patent are unpatentable over the Harari and Anderson prior art references. *Id.* ¶21.

27  According to Kingston, these claims are "substantively very similar" to claims 55

28

**SPEX'S OPPOSITION TO KINGSTON'S MOTION TO AMEND ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

RUSS, AUGUST & KABAT

and 57 of the '135 patent because they include some common claim limitations. *Id.* ¶22.

In actuality, there are differences between these claims. For example, claim 38 of the '802 patent recites two method steps that require "receiving" a request and "providing" something in response to the request. In contrast, claim 55 of the '135 patent recites three method steps that require "receiving" a request, "providing" something in response to the request, and "operably connecting the security module and/or the target module to the host computing device in response to an instruction from the host computing device." The "providing" steps of each patent also differ. Claim 38 recites providing "information regarding the type of the defined interaction" to the host computing device, whereas claim 55 recites providing the "type of the target module." Claim 39 of the '802 patent likewise differs from claim 57 of the '135 patent. For example, claim 57 recites the same "operably connecting" step of claim 55, whereas claim 39 (like claim 38) includes no "operably connecting" step.

Simply put, Kingston has not alleged, and cannot allege, any facts rending plausible its allegation that SPEX must "know" claims 55 and 57 of the '135 patent are invalid. Its mere speculation concerning SPEX's knowledge, based on a non-precedential institution decision and a never-before-asserted prior art combination, is insufficient to support a claim or defense of patent misuse. For this additional reason, Kingston's motion should be denied.

### 5.   Kingston Fails To Plead A Counterclaim Under § 17200

Kingston admits that its proposed counterclaim under Section 17200 of the California Business and Professions Code rises and falls with its other counterclaims. Mot. at 15 ("Here, as described above, Kingston's complaint properly states a violation of section 1 of the Sherman Antitrust Act, a violation of the Cartwright Act, and violation of the federal Patent Laws."). Accordingly, as it has

20

RUSS, AUGUST & KABAT

failed to properly state a cause of action for any of its other counterclaims for the reasons described above, allowing this counterclaim would likewise be futile, and Kingston's motion should be denied. *See, e.g.*, *Rubio v. Capital One Back*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) ("To state a claim for an 'unlawful' business practice under the UCL [Section 17200], a plaintiff must assert a violation of any other law…. Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either.").

**B.     Kingston's Proposed Amendments Would Unfairly Prejudice SPEX**

In addition to being futile, Kingston's proposed amendments would unfairly prejudice SPEX in a multitude of ways. As an initial matter, the amendments would force SPEX to relitigate the validity of claims 55 and 57 over the Harari, Anderson, and Jones prior art references, in direct contravention of the Section 315 estoppel statute and the underlying purpose of IPR proceedings. As detailed above, Kingston's new affirmative defense and all of its counterclaims are premised on claims 55 and 57 being invalid based on these references. But Kingston already took its shot—in fact, multiple shots—at challenging the validity of claims 55 and 57 through the IPR system. SPEX expended significant resources in contesting these validity challenges and should not be forced to do so again. *See Douglas Dynamics, LLC*, 2017 WL 1382556, at *4 ("[T]he legislative history [of Section 315] ... clearly suggests that Congress intended IPR to serve as a ***complete substitute*** for litigating validity in the district court." (emphasis added)).

Moreover, to support its request for a stay of this litigation, Kingston gave this Court "strong assurance that the estoppel results will have their ***full force*** with respect to all parties." Dkt. No. 157 at 4 (emphasis added). The Court acknowledged Kingston's assurance when it noted that although there could be a dispute as to the scope of estoppel, "there ***will*** be preclusion effects in ***all events***." *Id.* at 4 n.7

21

RUSS, AUGUST & KABAT

1    (emphasis added). Allowing Kingston to relitigate its estopped invalidity arguments

2    now would rob SPEX of the estoppel benefit provided by Section 315.

3         Kingston's proposed amendments would also unfairly prejudice SPEX by

4    imposing costly, burdensome, and time consuming discovery. If permitted into this

5    litigation, Kingston's new affirmative defense and counterclaims would require

6    discovery into, among other areas, complex areas such as market power, the effect

7    of SPEX's settlement on the market, and Kingston's competitors. The new claims

8    would also necessitate discovery into SPEX's rationale for agreeing to settle its '135

9    patent infringement claims with Western Digital, Apricorn, and Toshiba. Such

10   questions necessarily implicate attorney-client communications and work product

11   that are privileged from discovery. Accordingly, this discovery will likely

12   necessitate additional briefing and argument before this Court. Because concerted

13   activity is required for violations of Sherman Act Section 1 and the Cartwright Act,

14   Kingston would presumably also need discovery from third parties Western Digital,

15   Apricorn, and Toshiba into any anti-competitive motivations they had in settling

16   with SPEX. Of course, if Kingston were to seek discovery from these parties, SPEX

17   would be prompted to do so as well. Further, as SPEX is actively involved in

18   litigation with each of these entities, they are unlikely to willingly produce

19   information, as the parties may feel the production could prejudice their ability to

20   effectively litigate against SPEX. This discovery will therefore likely lead to

21   substantial motion practice.

22        The discovery for these proposed amendments will not be minimal. Indeed,

23   Kingston has represented to this Court that it intends to seek discovery into at least

24   seven discrete areas, including, for example, "[t]he validity of the remaining asserted

25   claims" apart from claims 55 and 57 of the '135 patent. Dkt. No. 166 at 6-7. Kingston

26   seeks this additional discovery despite its estoppel obligations, and despite the fact

27   that the parties have already completed expert discovery as to invalidity. Further,

28   Kingston acknowledges that these new claims will result in additional "expert

RUSS, AUGUST & KABAT

22

reports and expert depositions" all of which will substantially increase the costs of this litigation. *Id.*

Kingston's proposed amendments would also unfairly prejudice SPEX at trial. Kingston's new affirmative defense and counterclaims—even if properly pled—are tenuous (at best) but will greatly expand the length, cost, and complexity of trial with entirely new bodies of Federal and California law. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of leave to amend where new proposed claims posed a "radical shift in direction" and were "tenuous [in] nature"). Kingston has requested a trial by jury on these issues, *see* Proposed Am. Ans. at 19, making clear that it intends to use these claims as a vehicle for casting SPEX in a negative light before the jury and for avoiding the unfavorable optics of offering no invalidity defense (or at least a severely limited one) for the '135 patent. As discussed above, Kingston's new affirmative defense and counterclaims not only have fatal pleading deficiencies; they are inherently unprovable because Kingston is estopped from proving claims 55 and 57 are invalid. Thus, Kingston cannot be granted the relief it seeks under these new claims. The most it can hope for is to confuse the jury and use these unprovable allegations to paint SPEX as a bad actor. This is unfair prejudice and warrants denial of Kingston's motion. *See, e.g.*, 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1487 (3d ed.) ("[I]f the court determines that the proposed amendment would result in [non-movant] being put to added expense and the burden of a more complicated and lengthy trial or that the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury, leave to amend may be denied." (footnote numbers omitted)); *Stiller v. Colangelo*, 221 F.R.D. 316, 317 (D. Conn. 2004) (denying leave to amend where proposed new claims were "based on [non-movant's] behavior during this litigation, and [we]re thus sufficiently remote from the initial complaint to justify denying the motion to amend" and noting

23

additional prejudice concerns of juror confusion and "exposing the jury to allegations of [non-movant's] wrongful conduct").

### C.   Kingston's Proposed Amendments Are An Improper Collateral Attack On The PTAB's Decision And Federal Circuit's Order

Finally, the Court must consider whether Kingston's motion is brought for an improper purpose. *Forman v. Davis*, 371 U.S. 178, 182 (1962) (motion to amend may be denied where motion is brought for "undue delay, bad faith, or dilatory motive"). Here, Kingston's motion is brought as a collateral attack on the decisions of the Federal Circuit and PTAB finding that it is estopped from challenging the validity of claims 55 and 57 of the '135 patent based on the combination of Harari, Anderson, and Jones. Kingston has attempted to appeal the PTAB's refusal to allow Kingston to bring this argument, and the Federal Circuit has already rejected its arguments. It should not be permitted to make an end-run around these decisions in this Court under the guise of antitrust and patent misuse. Accordingly, Kingston's improper motive in bringing suit should also lead to a denial of the motion.

## IV.   CONCLUSION

Because the proposed amendments are futile, would unfairly prejudice SPEX, and are brought for an improper purpose, this Court should deny Kingston's motion for leave to amend.

Respectfully submitted,

DATED:  August 30, 2019          RUSS, AUGUST & KABAT

*/s/ Benjamin T. Wang*

24

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT
Marc A. Fenster (SBN 181067)
*mfenster@raklaw.com*
Benjamin T. Wang (SBN 228712)
*bwang@raklaw.com*
Andrew D. Weiss (SBN 232974)
*aweiss@raklaw.com*
Paul A. Kroeger (SBN 229074)
*pkroeger@raklaw.com*
Jacob R. Buczko (SBN 269408)
*jbuczko@raklaw.com*
Justin E. Maio (SBN 304428)
*jmaio@raklaw.com*
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

**Attorneys for Plaintiff**
**SPEX TECHNOLOGIES, INC.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

**SPEX'S OPPOSITION TO KINGSTON'S MOTION TO AMEND ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on August 30, 2019.  As such, this document was served on all counsel who have consented to electronic service.

_/s/ Benjamin T. Wang_

26