RUSS, AUGUST & KABAT

RUSS AUGUST & KABAT
Marc A. Fenster (SBN 181067)
*mfenster@raklaw.com*
Benjamin T. Wang (SBN 228712)
*bwang@raklaw.com*
Andrew D. Weiss (SBN 232974)
*aweiss@raklaw.com*
Paul A. Kroeger (SBN 229074)
*pkroeger@raklaw.com*
Jacob R. Buczko (SBN 269408)
*jbuczko@raklaw.com*
Justin E. Maio (SBN 304428)
*jmaio@raklaw.com*
12424 Wilshire Boulevard, 12FL
Los Angeles, California 90025
310/826-7474 – Telephone
310/826-6991 – Facsimile
*Attorneys for Plaintiff*
SPEX TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPEX TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> KINGSTON TECHNOLOGY CORPORATION, KINGSTON DIGITAL, INC., KINGSTON TECHNOLOGY COMPANY, INC., IMATION CORPORATION, DATALOCKER INC., DATA LOCKER INTERNATIONAL, LLC, <br><br> Defendants. | Case No. 8:16-CV-01790-JVS-AGR <br><br> **PLAINTIFF SPEX TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE PURSUANT TO RULE 12(B)(6)** <br><br> HONORABLE JUDGE JAMES SELNA <br><br> DATE: November 18, 2019 <br> TIME: 1:30 P.M. <br> COURTROOM: Santa Ana, 10C |

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on November 18, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable James V. Selna of the United Stated District Court for the Central District of California, at 411 West 4th Street, Courtroom 10C, Santa Ana, CA 92701, Plaintiff SPEX Technologies, Inc. ("SPEX" or "Plaintiff") will and hereby does move to dismiss with prejudice the Counterclaims and Affirmative Defense of Patent Misuse brought by Defendants Kingston Technology Corporation, Kingston Digital, Inc. and Kingston Technology Company, Inc. (collectively "Kingston") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The motion is made on the grounds that Kingston's Counterclaims for (1) Violation of § 1 of the Sherman Act; (2) Violation of the Cartwright Act; (3) Declaratory Judgment of Patent Misuse; and (4) Violation of Section 17200 of the California Business and Professions Code, as well as its Affirmative Defense of Patent Misuse, fail to state a claim upon which relief can be granted. Kingston fails to plead, and cannot plead, sufficient facts to sustain these claims and defense. Kingston's Counterclaims and Affirmative Defense therefore must be dismissed.

This Motion is based on this Notice and supporting Memorandum of Points and Authorities, including the declaration and exhibits, the argument of counsel, and any other evidence that may be presented at the hearing on this matter.

This Motion is made following the conference of counsel between counsel for SPEX and Kingston pursuant to Rule 7-3 that began on September 30, 2019.

Dated:   October 16, 2019            Respectfully submitted,

                                     **RUSS AUGUST & KABAT**

                                     By:    /s/ Paul A. Kroeger

                                     Marc A. Fenster, SBN 181067
                                     Benjamin T. Wang, SBN 228712

1

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND
AFFIRMATIVE DEFENSE OF PATENT MISUSE**

Andrew D. Weiss, SBN 232974
Paul A. Kroeger, SBN 229074
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California  90025
Tel:   (310) 826-7474
Fax:  (310) 826-6991
Email:  mfenster@raklaw.com
Email:  bwang@raklaw.com
Email:  aweiss@raklaw.com
Email:  pkroeger@raklaw.com

*Attorneys for Plaintiff*
SPEX Technologies, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

# TABLE OF CONTENTS

I.   **INTRODUCTION** .......................................................................................... 1

II.  **BACKGROUND** ............................................................................................ 2

   A.   Summary Of The IPR Proceedings At Issue In the Counterclaims............................................................................. 2

   B.   Kingston's Amendments Depend Solely On SPEX's Purported Subjective Knowledge That The Asserted Claims Of The '135 Patent Are Invalid, And Kingston Expressly Abandoned Any Assertion Of Objective Invalidity Of The Claims............................ 4

   C.   The PTAB Determines Kingston Is Estopped From Joining The Western Digital '135 IPR Because Of The Prior Final Written Decision Issued Against Kingston In The Kingston '135 IPR........... 5

   D.   Kingston's Allegations Concerning SPEX's Settlement Of The Western Digital '135 IPR Do Not Allege Any Payment To Defendants Or Any Agreement To Stay Out Of The Market .............. 7

III. **LEGAL STANDARD** ..................................................................................... 8

IV.  **KINGSTON FAILS TO STATE A CLAIM FOR VIOLATION OF §1 OF THE SHERMAN ACT** ....................................................... 9

   A.   Lawsuits Are Protected Against Sherman Act Violations Under *Noerr* Immunity Unless The Litigation Is Objectively Meritless ........ 9

   B.   Kingston Admits That It Has Not Pled Objective Invalidity, And That It Bases Its Sherman Act Claim Solely On SPEX's Purported Subjective Belief............................................................ 11

   C.   Even If Kingston Had Pled Objective Invalidity, Kingston Is Estopped Under Section 315 (Separate And Apart From Judicial Estoppel) From Proving It..................................................... 14

   D.   Kingston's Sherman Act Counterclaim Also Fails Because It Cannot Allege An Actionable "Reverse-Payment" Settlement........... 16

      1.   *Actavis* "Reverse-Payment" Settlements Are Limited To Inapplicable Watch-Haxman Pharmaceutical Actions............. 17

      2.   Kingston Fails To Plead A Reverse-Payment Settlement ............ 19

V.   **KINGSTON FAILS TO STATE A CLAIM FOR VIOLATION OF THE CARTWRIGHT ACT** .................................................. 21

VI.  **KINGSTON FAILS TO STATE A CLAIM FOR PATENT MISUSE** ........................................................................................ 22

VII. **KINGSTON FAILS TO PLEAD A COUNTERCLAIM UNDER §17200** ........................................................................................ 24

VIII. **CONCLUSION** ........................................................................................ 24

i

1

## TABLE OF AUTHORITIES

2 **Cases**

3  *Adams v. Johnson*,
        355 F.3d 1179 (9th Cir. 2004) ........................................................ 9

4
5  *Advanced Magnetic Closures, Inc. v. Romag Fastener, Inc.*,
        Case No. 98 Civ. 7766 (PAC), 2006 WL 3342655 (S.D.N.Y. Jun. 6, 2016)23

6  *Asahi Glass Co. v. Pentech Pharmaceutical Inc.*,
        89 F. Supp. 2d 986 (2003) ...................................................... 12, 21

7
8  *Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ......................................................................... 8

9  *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007) ................................................................. 8, 19

10
11 *C.R. Bard, Inc. v. M3 Systems, Inc.*,
        157 F.3d 1340 (Fed. Cir. 1998) .............................................. 11, 22

12 *Cal. Inst. of Tech. v. Broadcom Ltd.*,
        No. CV 16-3714 GW (AGRX), 2018 WL 7456042 (C.D. Cal. Dec. 28,
13      2018) ............................................................................................ 14

14 *California Motor Transport Co. v. Trucking Unlimited*,
        404 U.S. 508 (1993) ......................................................................... 9

15
16 *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
        No. 2:15-cv-21, 2017 WL 2605977 (E.D. Va. June 5, 2017) ...................... 15

17 *Douglas Dynamics, LLC v. Meyer Prods. LLC*,
        No. 14-CV-886-JDP, 2017 WL 1382556 (W.D. Wis. Apr. 18, 2017) ......... 15

18
19 *Duke Univ. v. Akorn, Inc.*,
        Case No. 3:18-cv-14035-BRM-TJB, *slip. op.* (D.N.J. Sept. 16, 2019) ........ 12

20 *E.digital Corporation v. PNY Electronics, Inc.*,
        Case No. 13-cv-2930-H-BGS, 2014 WL 12516022 (S.D. Cal. July 24, 2014)
21      ....................................................................................................... 8

22 Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,
        365 U.S. 127 (1961) .............................................................. 9, 10, 22

23
24 F.T.C. v. Actavis, Inc.,
        570 U.S. 136 (2013) .............................................................. passim

25 *Fayer v. Vaughn*,
        649 F.3d 1061 (9th Cir. 2011) ........................................................ 8

26
27 *Handgards Inc. v. Ethicon, Inc.*,
        601 F.2d 986 (9th Cir. 1979) ....................................................... 11

28 *Handgards Inc. v. Ethicon, Inc.*,

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND
AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

743 F.2d 1282 (9th Cir. 1984) ...................................................... 11

*In re Independent Service Organizations Antitrust Litigation*,
203 F.3d 1322 (Fed. Cir. 2007) .................................................... 12

*In re Wellbutrin XL Antitrust Litig.*,
No. CIV.A. 08-2431, 2012 WL 1657734 (E.D. Pa. May 11, 2012) ............. 11

*Industrial Models, Inc. v. SNF, Inc.*,
716 Fed. Appx. 949 (Fed. Cir. 2017) ...................................... 17, 18

*Junker v. Medical Components, Inc.*,
Civil Action No. 13-4606, 2019 WL 109385 (E.D. Penn. Jan. 4, 2019) ...... 23

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ...................................................... 16

*Kingston Technology Company, Inc. v. SPEX Technologies, Inc.*,
IPR2018-01002, Paper No. 12 ......................................................... 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........................................................ 8

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
568 F. Supp. 2d 1152 (C.D. Cal. 2008) ........................................ 13

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
692 F.3d 983 (9th Cir. 2012) ........................................................ 13

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998) .............................................. 10, 12

*Novartis Pharm. Corp. v. Par Pharm. Inc.*,
No. 14-1289, 2019 U.S. Dist. LEXIS 62489 (D. Del. Apr. 11, 2019) ......... 15

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
806 F.2d 1565 (Fed. Cir. 1986) .............................................. 22, 23

*Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993) ................................................................. 9, 10

*Rubio v. Capital One Back*,
572 F. Supp. 2d 1157 (C.D. Cal. 2008) ......................................... 24

*Russell v. Rolfs*,
893 F.2d 1033 (9th Cir.1990) ....................................................... 13

*Shaw v. Hahn*,
56 F.3d 1128 (9th Cir. 1995) ........................................................ 8

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*,
782 F. Supp. 2d 1059 (E.D. Cal. 2011) ......................................... 21

*W. Min. Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) ........................................................ 8

RUSS, AUGUST & KABAT

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND
AFFIRMATIVE DEFENSE OF PATENT MISUSE**

*Wagner v. Professional Engineers in California Government*,
354 F.3d 1036 (9th Cir.2004) .......................................................................... 13

*Western Digital Corporation v. SPEX Technologies, Inc.*,
IPR2018-00084, Paper No. 40 ........................................................................... 6

**Statutes**

35 U.S.C. § 315(e)(1) ........................................................................................ 6, 15

35 U.S.C. § 315(e)(2) ...................................................................................... 14, 15

**Other Authorities**

America Invents Act: *Hearing on H.R. 1249 Before the House Comm. on the
Judiciary*,
112th Cong. 52-53 (2011) ................................................................................. 15

Russ, August & Kabat

RUSS, AUGUST & KABAT

# I.     INTRODUCTION

Kingston's Counterclaims for (1) Violation of §1 of the Sherman Act, (2) Violation of the Cartwright Act, (3) Patent Misuse, and (4) Unfair Competition, as well as its Affirmative Defense of Patent Misuse (Dkt. No. 178) fail to state a claim upon which relief could be granted and should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

First, as was made clear from Kingston's briefing on its motion for leave to amend to file these Counterclaims and Affirmative Defense, Kingston is seeking to prove its Sherman Act and Cartwright Act claims based solely on SPEX's supposed subjective belief that claims 55 and 57 of the asserted '135 patent are invalid and without actually proving that these claims are invalid. Kingston represented to the Court that it does not seek to prove objective invalidity: "[T]his case does not turn on whether the claims are actually invalid. Rather, the case turns on SPEX's knowledge and actions." Dkt. No. 175, at 9. This admission is fatal to its claims however, as an antitrust violation based on sham litigation requires proof that the patent is objectively invalid before subjective motivation is even considered. In other words, Kingston's admissions during the motion to amend briefing confirm that it has not (and cannot) sufficiently pled its antitrust claims.

While the Court's Order granting leave to amend stated that "a fair reading of paragraphs 29 and 49 of the Counterclaims would cause one to draw the conclusion that Kingston is asserting invalidity in fact," Dkt. No. 177 at 5, Kingston's admissions in its briefing and during the hearing on its motion to amend judicially estop it from making such a showing.

Moreover, even if Kingston were not *judicially* estopped from asserting objective invalidity, it is estopped from establishing its claim on the separate and independent basis of 35 U.S.C. § 315(e). Section 315(e) estops Kingston from proving objective invalidity as a result of its failed IPR petition.

1

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

1  Kingston's Sherman Act and Cartwright Act claims are also untenable
2  because Kingston has not, and cannot, plausibly plead "a contract, combination or
3  conspiracy among two or more persons or distinct business entities" as required for
4  these claims. Kingston's attempt to characterize SPEX's settlement of a separate IPR
5  proceeding with other defendants as an impermissible "reverse-payment" settlement
6  is unsupported by *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013). According to *Actavis*,
7  and Federal Circuit precedent, "reverse-payment" settlements can only occur in the
8  unique context of Hatch-Waxman litigation. This case, however, is not a Hatch-
9  Waxman case. Further, even if the context is ignored, a "reverse-payment"
10  settlement requires that the patent owner ***pay*** the potential infringer an ***unjustifiably***
11  large sum of money to stay ***out*** of the market. Kingston has not, and cannot, plead
12  any such facts. Indeed, Kingston actually pled that SPEX gave Kingston's
13  competitors a free (*i.e.*, no payment, let alone an unjustifiably large payment) license
14  to continue (*i.e.*, not stay out) selling their products. There was nothing improper
15  about the settlement agreement, and it was not a "reverse payment" agreement.

16  Second, Kingston's Patent Misuse Affirmative Defense and Counterclaim fail
17  as matter of law. A patent misuse claim may not be predicated solely on the assertion
18  of a patent that is purportedly known to be invalid. Yet, this is the only action that
19  Kingston alleges is misuse of SPEX's patents.

20  Finally, Kingston's Unfair Competition claim under Section 17200 of the
21  California Business and Professions Code rises and falls with its other
22  Counterclaims. Accordingly, as Kingston has failed to properly state a cause of
23  action for any of its other Counterclaims, this claim should likewise be dismissed.

## II.  BACKGROUND

### A.  Summary Of The IPR Proceedings At Issue In the Counterclaims

27  Kingston's Counterclaims arise out of multiple, different, IPR proceedings
28  brought by Kingston and defendants in related actions. These are summarized below.

RUSS, AUGUST & KABAT

2

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

- *Kingston Technology Company, Inc. v. SPEX Technologies, Inc.*, Case IPR2017-01021 (the "Kingston '135 IPR") (filed March 14, 2017). In this IPR, Kingston alleged that the asserted claims of the '135 patent were invalid over a prior art reference named Jones. The PTAB issued a Final Written Decision against Kingston, affirming the patentability of claims 55 and 57 of the '135 patent. IPR2017-01021, Paper No. 39 at 58.

- *Western Digital Corporation v. SPEX Technologies, Inc.*, Case IPR2018-00086 (the "Western Digital '135 IPR") (filed October 16, 2017). In this IPR, brought by the Western Digital defendants, and joined by Toshiba and Apricorn, the claims of the '135 patent were challenged over the Harari and Anderson prior art references relied upon in Kingston's Counterclaims. In its institution decision, the PTAB made a preliminary finding that the Petition established a reasonable likelihood that claims 55 and 57 were invalid over Harari and Anderson. Case IPR2018-00086, Paper No. 14. This IPR was dismissed prior to a final hearing based on a joint request of the parties after they entered into a settlement agreement on the '135 patent (the "Western Digital Settlement"). *Id.*, Paper 40.

- *Western Digital Corporation v. SPEX Technologies, Inc.*, Case IPR2018-0082 (the "Western Digital '802 IPR") (filed October 16, 2017). In this IPR, brought by the Western Digital defendants (and joined by Toshiba and Apricorn), the claims of the '802 patent were likewise challenged over the Harari and Anderson references. In the institution decision, the PTAB found that Western Digital had only shown a reasonable likelihood of success on claims 38 and 39, and found no likelihood of success on any of the other asserted claims. IPR2018-0082, Paper 11.  As part of its litigation strategy, SPEX chose

3

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

1   not to respond to the institution decision and asked the PTAB to issue
2   a Final Written Decision as soon as possible. IPR2018-0082, Paper 23.
3   The PTAB issued a Final Written Decision finding claims 38 and 39
4   invalid over Harari and Anderson (using the preponderance of the
5   evidence standard), but otherwise affirmed the validity of the claims.
6   Case IPR2018-0082, Paper 40.

7       **B.    Kingston's Amendments Depend Solely On SPEX's**
8       **Purported Subjective Knowledge That The Asserted Claims**
        **Of The '135 Patent Are Invalid, And Kingston Expressly**
9       **Abandoned Any Assertion Of Objective Invalidity Of The**
        **Claims**
10

11      Each of Kingston's Counterclaims for Violation of Section 1 of the Sherman
12   Act, Violation of the Cartwright Act, Patent Misuse, and Unfair Competition, as well
13   as its new Affirmative Defense of Patent Misuse are based solely on SPEX's
14   purported subjective knowledge that claims 55 and 57 of the '135 patent are invalid.
15   *See* Dkt. No. 178 at 17; 32 ¶38, 33 ¶45, 34-35 ¶49, 35 ¶52.

16      In the briefing on its motion for leave to amend, Kingston repeatedly
17   confirmed that it was alleging only that SPEX subjectively believes that the asserted
18   '135 patent claims were invalid, and not that the claims are actually invalid. *See* Dkt.
19   No. 175 at 9 ("Kingston ***will not*** be seeking to prove that claims 55 and 57 are invalid
20   based on the [sic] Harari and Anderson.") (emphasis added); *id.* ("[T]his case does
21   not turn on whether the claims are actually invalid. Rather, the case turns on SPEX's
22   knowledge and actions.").

23      Kingston's allegation of SPEX's subjective knowledge is based on a
24   combination of events occurring in the Western Digital '802 IPR and Western
25   Digital '135 IPR. First, Kingston relies on the Western Digital '802 IPR for the
26   invalidation of claims 38 and 39 of the '802 patent in light of the Harari and
27   Anderson references. Dkt. No. 178 at 25, ¶21. Kingston then alleges that the
28   invalidation of claims 38 and 39 of the '802 patent supposedly made SPEX aware

4

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND**
**AFFIRMATIVE DEFENSE OF PATENT MISUSE**

of the invalidity of claims 55 and 57 of the '135 patent because the '135 and '802 claims "are substantively very similar ...." *Id.* ¶22. The only difference, according to Kingston, is that claims 55 and 57 of the '135 patent have an additional limitation, not found in the claims of the '802 patent, that requires "operably connecting the security module and/or the target module to the host computing device in response to [an/the] instruction from the host computing device." *Id.* ¶¶ 23-25.

Kingston then alleges that the Board found that the missing "operably connecting" limitation was disclosed by Harari and Anderson in the Western Digital '135 IPR. *Id.* ¶25. Specifically, Kingston relies on the **institution decision** (*i.e.*, an interim order addressing only whether the petition made a *prima facia* showing under a lower standard of proof) in the Western Digital '135 IPR, where the Board held that "Harari and Anderson[] teach the operably connecting limitation." *Id.* ¶25.

Thus, as plead, all of Kingston's Counterclaims and Affirmative Defense depend on the result from (1) findings in a different IPR, concerning a different patent, involving different parties, combined with (2) an interim, non-final decision also involving different parties. However, none of these allegations asserts that claims 55 and 57 of the '135 patent are objectively invalid.

## C.   The PTAB Determines Kingston Is Estopped From Joining The Western Digital '135 IPR Because Of The Prior Final Written Decision Issued Against Kingston In The Kingston '135 IPR

Before seeking to leave to amend to file these Counterclaims and Affirmative Defense, Kingston filed the Kingston '135 IPR. After full consideration of Kingston's arguments, the Board issued a Final Written Decision upholding the patentability of claims 55 and 57 of the '135 patent. *Id.* at 59. IPR2017-01021, Paper No. 39 at 58.

Thereafter, Western Digital filed the Western Digital '135 IPR, which, as noted above, was based on invalidity arguments using Harari, Anderson, and other

5

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

prior art references. See Case IPR2018-00086, Paper No. 14.  Although Kingston had already sought and failed in its own IPR addressing the '135 patent, it sought to again challenge the '135 patent by joining the Western Digital '135 IPR. *Kingston Technology Company, Inc. v. SPEX Technologies, Inc.*, IPR2018-01002, Paper No. 12 at 2.

The Board, however, dismissed Kingston's petition to join as estopped under 35 U.S.C. § 315, in light of the prior Final Written Decision against Kingston in the Kingston '135 IPR. *Id.* at 9. Noting that Kingston did not dispute having knowledge of both the Harari and Anderson references when it filed its earlier IPR petition, the Board explained:

> Regardless of the reasons Kingston chose not to file a petition asserting grounds based on Harari, Anderson, and Dumas at the time of filing its petition in IPR2017-01021, we cannot ignore the plain meaning of 35 U.S.C. § 315(e) (1). ***Thus, we determine Petitioner is estopped from requesting or maintaining this Petition based on Harari, Anderson, and Dumas—references that reasonably could have been raised in its earlier petition in Case IPR2017-01021 or contemporaneously in a sibling petition.***

*Id.* at 8-9 (emphasis added); *see also Western Digital Corporation v. SPEX Technologies, Inc.*, IPR2018-00084, Paper No. 40 at 2-3 (the Board again noting that it "dismissed the [third] Kingston Petition because Kingston was estopped from requesting or maintaining the Kingston Petition under 35 U.S.C. § 315(e)(1)," and, further, "Kingston admitted that it was aware of the references applied in the instant case at the time of filing its earlier petition in IPR2017-01021").

The PTAB, in other words, held Kingston to its admissions that it was aware of the Harari and Anderson references and could have included arguments based on those references in its original '135 IPR petition, and as a result, ruled that Kingston was estopped under §315 from further challenges to the '135 patent based on Harari and Anderson.

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

1

**D.      Kingston's Allegations Concerning SPEX's Settlement Of The Western Digital '135 IPR Do Not Allege Any Payment To Defendants Or Any Agreement To Stay Out Of The Market**

As SPEX was preparing for trial (before the case was stayed pending the various instituted IPRs), SPEX made the litigation strategy decision to no longer assert the '135 patent against the Western Digital, Toshiba and Apricorn defendants. SPEX informed all of the parties, including Kingston, of its decision after the Western Digital '135 IPR was filed. *See, e.g.*, Case 8:16-CV-01799, Dkt. No. 87, at 1 ("SPEX is willing to withdraw its claims against Western Digital on the Method Claims and the '135 Claims and proceed to trial against Western Digital only on the '802 Device Claims."). To simplify matters, and save resources, SPEX entered into a settlement agreement dismissing the claims as to the '135 patent from the related litigations, and also dismissing the pending IPR proceeding as to the '135 patent.

SPEX's settlement agreement with the Western Digital, Toshiba and Apricorn defendants, by which the Western Digital '135 IPR was dismissed, is placed at issue by Kingston's Counterclaims and Affirmative Defense. Dkt. No. 176, at 29 ¶ 30. In this regard, Kingston alleges that "SPEX reached an agreement with the PTAB Petitioners whereby SPEX would drop its allegations of infringement against the petitioners in exchange for them requesting that the IPR be terminated without a final decision." *Id.* Kingston also alleges "SPEX received no monetary compensation in this settlement. The only benefit SPEX received was that the challenge to the patentability of the '135 patent would end without the Board finally finding these claims unpatentable." *Id.*

Other than alleging that the Western Digital, Toshiba and Apricorn defendants received "free licenses" to the '135 Patent (*id.* at 20-21, ¶¶ 3-6), the Counterclaims are devoid of any allegations that: (1) any of the settling defendants received monetary compensation from SPEX as result of this settlement (because they did

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

1   not); or (2) the defendants agreed to refrain from selling products in the market as a

2   result of the settlement (because they did not). Kroeger Decl., Ex. A.[1]

3   ## III.   LEGAL STANDARD

4           Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move

5   to dismiss an action for failure to allege "enough facts to state a claim to relief that

6   is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule

7   12(b)(6) applies equally to counterclaims and affirmative defenses. *E.digital*

8   *Corporation v. PNY Electronics, Inc*., Case No. 13-cv-2930-H-BGS, 2014 WL

9   12516022, at *2-*3 (S.D. Cal. July 24, 2014) "A claim has facial plausibility when

10  the plaintiff pleads factual content that allows the court to draw the reasonable

11  inference that the defendant is liable for the misconduct alleged. The plausibility

12  standard is not akin to a 'probability requirement,' but it asks for more than a sheer

13  possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,

14  678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6)

15  motion, the Court "accept[s] factual allegations in the complaint as true and

16  construe[s] the pleadings in the light most favorable to the non-moving party."

17  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

18          However, a "court may look beyond the plaintiff's complaint to matters of

19  public record" without converting the Rule 12(b)(6) motion into a motion for

20  summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). A court

21  is also not required to "'assume the truth of legal conclusions merely because they

22  are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064

23  (9th Cir. 2011) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

24

25

26  [1] Although Kingston's Counterclaims state that "[a] copy of the settlement

27  agreement filed publicly with the PTAB is attached as Appendix B," Dkt. No. 178
    at 29, ¶30, no such Appendix B was filed by Kingston. SPEX attaches the agreement

28  here to ensure the Court has a complete record to consider.

RUSS, AUGUST & KABAT

8

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND
AFFIRMATIVE DEFENSE OF PATENT MISUSE**

1  Mere "conclusory allegations of law and unwarranted inferences are insufficient to

2  defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

3  **IV.   KINGSTON FAILS TO STATE A CLAIM FOR VIOLATION OF §1 OF THE SHERMAN ACT**

4

5        Kingston's Sherman Act Counterclaim fails to state a claim for relief on two

6  separate grounds: (1) Kingston cannot show that SPEX's assertion of the '135 patent

7  is objectively meritless, which is a requirement for Kingston's sham litigation based

8  counterclaim; and (2) Kingston has failed to show the required anticompetitive

9  contract because it has failed to show the existence of a "reverse-payment"

10 settlement agreement (which only exists in the Hatch-Waxman context), and has

11 also failed to allege that the settlement agreement will harm competition.

12       **A.   Lawsuits Are Protected Against Sherman Act Violations Under *Noerr* Immunity Unless The Litigation Is Objectively Meritless**

13

14       "Those who petition government for redress are generally immune from

15 antitrust liability." *Professional Real Estate Investors v. Columbia Pictures Indus.,*

16 *Inc.*, 508 U.S. 49, 55 (1993). This is often referred to as *Noerr* immunity, or the

17 *Noerr-Pennington* doctrine, which is derived from the Supreme Court's decisions in

18 *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127

19 (1961) and *Mine Workers v. Pennington*, 381 U.S. 657 (1965). *Noerr* immunity has

20 been extended by the Court to the filing and maintenance of lawsuits. *Professional*

21 *Real Estate Investors*, 508 U.S. at 57 ("'the approach of citizens . . . to administrative

22 entities . . . and to courts'" is typically immunized from antitrust liability) (quoting

23 *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1993)).

24 Excepted from this immunity are "'sham' activities." *Id.* at 56 (quoting *Noerr Motor*

25 *Freight, Inc.*, 365 U.S. at 137). Accordingly, only "sham" litigation can give rise to

26 an antitrust claim. *Id.* at 60.

27

28

RUSS, AUGUST & KABAT

9

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

Determining whether litigation is a sham is a two-part test: "First, the lawsuit must be ***objectively baseless*** in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail." *Id.* at 60 (emphasis added).

"Only if the challenged litigation is objectively meritless may a court [proceed to the second part of the test and] examine the litigant's subjective motivation." *Id.* at 60. "[T]he court should focus on whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.'" *Id.* at 60-61 (quoting *Noerr*, 365 U.S. at 144). However, "[t]his two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of" the subjective motivation for bringing suit. *Id.* at 61 (emphasis in original).

In other words, sham litigation must be objectively illegitimate: "[T]he sham exception contains an ***indispensable objective component*** . . . evidence of anticompetitive purpose or intent alone cannot transform otherwise legitimate activity into a sham." *Id.* at 58-59 (emphasis added). "[N]either *Noerr* immunity nor its sham exception turns on subjective intent alone." *Id.* at 59.

Applying *Professional Real Estate Investors* in the patent context, the Federal Circuit has found that "a sham suit ***must be*** both subjectively brought in bad faith and ***based on a theory of either infringement or invalidity that is objectively baseless***." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1072 (Fed. Cir. 1998) (emphasis added). "[I]f a suit is not objectively baseless, ***an antitrust defendant's subjective motivation is immaterial***. . . . It is the bringing of the lawsuit that is subjectively and objectively baseless that must be proved." *Id.* (emphasis added). For instance, in a case where no facts supported a finding that the patent suit was "objectively meritless," the Federal Circuit reversed the district court's

10

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

1   judgment of antitrust liability. *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340,

2   1368-69 (Fed. Cir. 1998). As recognized in that case, "[n]either the bringing of an

3   unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls

4   to invalidity, subject the suitor to antitrust liability." *Id.*

**B.      Kingston Admits That It Has Not Pled Objective Invalidity, And That It Bases Its Sherman Act Claim Solely On SPEX's Purported Subjective Belief**

In its briefing on its Motion For Leave to Amend, which allowed Kingston to assert this Counterclaim, Kingston unequivocally represented to the Court that it would ***not*** argue that claims 55 and 57 of the '135 patent were objectively invalid:

- "Kingston ***will not*** be seeking to prove that claims 55 and 57 are invalid based on the [sic] Harari and Anderson."

- "To be clear, Kingston is ***not*** affirmatively seeking to prove that claims 55 and 57 are invalid over Harari and Anderson."

Dkt. No. 175, at 9, 8 (emphasis added); *see also id.* at 3, 4, 7, 8 and 9.[2]

The Court recognized that Kingston's amendments did not seek to challenge the validity of claims 55 and 57.  Dkt. No. 177 at 4-5 ("Kingston argues . . . [that] this case does not turn on whether the claims are actually invalid."). In other words,

---

[2] In its Counterclaims, Kingston cites *Handgards Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993 (9th Cir. 1979) as support for its proposition that the knowing assertion of invalid claims can rise to the level of an antitrust violation. Dkt. No. 178 ¶ 37. As an initial matter, "*Handgards* predates [*Professional Real Estate Investor's*] division of the sham exception inquiry into objective and subjective prongs." *In re Wellbutrin XL Antitrust Litig.*, No. CIV.A. 08-2431, 2012 WL 1657734, at \*5 (E.D. Pa. May 11, 2012). Further, contrary to Kingston's position, *Handgards* does not support finding an antitrust violation based solely on subjective intent. In a later appeal in that case, the Ninth Circuit recognized that objective invalidity had to be determined ***before*** subjective intent was relevant. *Handgards Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1298 (9th Cir. 1984) ("The district court instructed the jury that ***first*** it had to determine the invalidity of the patent on the basis of a particular defense and ***only then*** could it determine whether Ethicon knew the patent was invalid on the basis of that defense.") (emphasis added)).

11

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

Kingston admits, as the Court has acknowledged, that it does not allege objective invalidity, and that its Counterclaim as pled focuses only on SPEX's purported subjective belief.

Because Kingston pleads only subjective invalidity, Kingston's Counterclaim fails to state claims on which relief can be granted. This is because the objective invalidity of claims 55 and 57 of the '135 patent is a threshold requirement. *Nobelpharma AB*, 141 F.3d at 1072 (a sham suit "must be ... based on a theory of either infringement or invalidity that is objectively baseless"); *Duke Univ. v. Akorn, Inc.*, Case No. 3:18-cv-14035-BRM-TJB, *slip. op.* at 16 (D.N.J. Sept. 16, 2019) ("[t]he assertion of claims in a patent ***whose validity has not yet been litigated*** cannot be said to be 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits'" (emphasis added)).

Indeed, Judge Posner, sitting by designation, dismissed a defendant's antitrust claims based on similar deficient allegations. *Asahi Glass Co. v. Pentech Pharmaceutical Inc.*, 89 F. Supp. 2d 986 (2003). Judge Posner afforded no weight to allegations in the complaint that the patent owner knew its patent was likely not infringed and settled with a prior defendant solely to avoid that finding. *Id.* at 992 (2003) (noting "it is true that Asahi *alleges* that the defendants knew when they settled [that the accused product would not infringe]"). Judge Posner rejected the allegations because "***a suit charging sham litigation as a method of monopolization must fail unless the litigation is objectively baseless*** ...." *Id.* at 993 (quoting *In re Independent Service Organizations Antitrust Litigation*, 203 F.3d 1322, 1327 (Fed. Cir. 2007)) (emphasis added). As recognized by Judge Posner, "'if a [patent] suit is not objectively baseless, an antitrust defendant's subjective motivation is immaterial.'" *Id.*

While the Court's Order granting Kingston leave to amend found that "a fair reading of paragraphs 29 and 49 of the Counterclaims would cause one to draw the

12

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

conclusion that Kingston is asserting invalidity in fact,"[3] Dkt. No. 177 at 5, any such reading of paragraphs 29 and 49 was expressly abandoned by Kingston. In Kingston's own words, it wanted "to be clear" that it is "***not*** affirmatively seeking to prove that claims 55 and 57 are invalid over Harari and Anderson." Dkt. No. 175, at 8; *id.* at 9 ("Kingston ***will not*** be seeking to prove that claims 55 and 57 are invalid based on the [sic] Harari and Anderson." (emphasis added); *id.* ("[T]his case does not turn on whether the claims are actually invalid. Rather, the case turns on SPEX's knowledge and actions.").

Because of Kingston's express abandonment of any assertion of objective invalidity, judicial estoppel precludes Kingston from proving the threshold requirement of a sham litigation, namely objective invalidity. *See Wagner v. Professional Engineers in California Government*, 354 F.3d 1036, 1044 (9th Cir.2004) ("Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts'") (*quoting Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1163 (C.D. Cal. 2008), *aff'd sub nom. Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012). Having made these statements to convince the Court provide Kingston with leave to file this Counterclaim, Kingston is bound by these admissions.

[3] The Court's finding "that Kingston is asserting invalidity in fact" sufficient to allege objective invalidity contradicts the later finding that Kingston's claim "does not turn on whether the claims are actually invalid" such that Section 315's provision estopping a party from re-challenging the validity of a patent is inapplicable. Dkt No. 177 at 4. Kingston cannot have it both ways. It cannot allege the claims of the '135 patent are objectively invalid in order to meet the threshold objective requirement of *Professional Real Estate Investors*, only to turn around and allege that Section 315 estoppel is inapplicable because it does not seek to prove actual invalidity of the claims. The two assertions are simply incompatible. Kingston must allege objective invalidity, but in doing so it runs headlong into Section 315 that precludes it from actually proving invalidity. Kingston's claim therefore must fail.

13

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

By Kingston's own admissions, Kingston has not (and cannot, for the reasons below) alleged objective invalidity of claims 55 and 57 of the '135 patent, and its Sherman Act Counterclaim must be dismissed.

## C.     Even If Kingston Had Pled Objective Invalidity, Kingston Is Estopped Under Section 315 (Separate And Apart From Judicial Estoppel) From Proving It

Kingston's Sherman Act Counterclaim must also be dismissed because, even assuming it pled objective invalidity, Kingston is estopped by statute from proving objective invalidity of the asserted claims of the '135 patent as a result of losing its '135 IPR petition.

In order to prove objective invalidity as required by its Sherman Act Counterclaim, Kingston must show that the combination of the Harari and Anderson prior art references invalidates claims 55 and 57 of the '135 patent. However, 35 U.S.C. § 315 estops a party from relitigating in the District Court prior art that was raised or reasonably could have been raised in an IPR. Specifically, Section 315 provides that:

> The petitioner in an *inter partes* review of a claim in a patent under this chapter that results in a final written decision under section 318(a) ... **may not assert either in a civil action arising in whole or in part under section 1338 of title 28 ... that the claim is invalid on any ground that the petitioner raised or reasonably could have raised** during that *inter partes* review.

35 U.S.C. § 315(e)(2) (emphasis added).

Estoppel is intended to broadly apply to ***all*** validity challenges to the same patent. As Judge Wu explained in *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714 GW (AGRX), 2018 WL 7456042, at *8 n.8 (C.D. Cal. Dec. 28, 2018), "§ 315(e)(2) was intended to provide ***broad estoppel coverage***." (emphasis added). *See also id.* ("'Those estoppel provisions mean that your patent is ***largely unchallengeable by the same party***.'" (emphasis added) (quoting America Invents Act: *Hearing on H.R. 1249 Before the House Comm. on the Judiciary*, 112th Cong.

14

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

52-53 (2011) (statement of Director David Kappos)); *Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-CV-886-JDP, 2017 WL 1382556, at *4 (W.D. Wis. Apr. 18, 2017) ("Congress intended IPR to serve as a ***complete substitute for litigating validity in the district court*.*" (emphasis added)); 157 Cong. Rec. S1360-94 (daily ed. Mar. 8, 2011) (statement of Sen. Grassley) (describing purpose of IPR estoppel provision as "ensur[ing] that if an *inter partes* review is instituted while litigation is pending, that review will ***completely substitute*** for at least the patents-and-printed-publications portion of the civil litigation" (emphasis added)); *Novartis Pharm. Corp. v. Par Pharm. Inc.,* No. 14-1289, 2019 U.S. Dist. LEXIS 62489, at *6 (D. Del. Apr. 11, 2019) ("Allowing an IPR petitioner to have two bites at the apple by holding back certain obviousness combinations runs counter to both the clear language and purpose behind § 315." (citation omitted)); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21, 2017 WL 2605977, at *3 (E.D. Va. June 5, 2017) (stating that it would "eviscerat[e] the advantages of staying litigation for an IPR petition" and "waste this Court's time to allow a stay for a year during IPR proceedings and then review invalidity arguments that Defendants could (and perhaps should) have raised in their IPR petition").

Section 315 estops Kingston from proving objective invalidity because Kingston knew about Harari and Anderson at least by the time of its '135 IPR petition, which resulted in a Final Written Decision finding claims 55 and 57 not unpatentable. Indeed, Kingston admitted it has long since been aware of Harari and Anderson, and as a result, the PTAB has already held that Kingston is estopped under Section 315(e)(1).[4] Ex. 3 at 8-9; *see also* Ex. 5 at 2-3 (noting that Kingston "admitted that it was aware of" these references when it filed its '135 IPR petition).

---

[4] 35 U.S.C. § 315(e)(1) applies to PTAB proceedings. 35 U.S.C. § 315(e)(2) applies to civil litigations. This section includes the same "raised or reasonably could have raised" trigger language.

15

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

Accordingly, even if Kingston is found to have facially pled objective invalidity and is not judicially estopped from asserting that theory based on its express abandonment of such a theory, it is separately estopped from arguing that claims 55 and 57 of the '135 patent are invalid based on the Harari and Anderson prior art references. The inability of Kingston to prove objective invalidity is fatal to its Counterclaim, and it therefore must be dismissed with prejudice.[5]

### D. Kingston's Sherman Act Counterclaim Also Fails Because It Cannot Allege An Actionable "Reverse-Payment" Settlement

In addition to proving objective invalidity, Kingston's Counterclaim for a Sherman Act Section 1 Violation must also prove "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047 (9th Cir. 2008).

Kingston attempts to allege the "contract" requirement based on SPEX's settlement agreement with the Western Digital defendants and Toshiba and Apricorn, which resulted in the dismissal of the Western Digital '135 IPR. Dkt. No 178 at 31-32 ¶¶ 36-38. Kingston alleges that the settlement agreement "constitute[s] illegal 'reverse payment settlements'" as discussed in the Supreme Court's decision *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013).

Kingston's contention is untenable for two reasons: (1) under *Actavis*, a "reverse-payment" settlement is limited to the inapplicable context of Hatch-

[5] To the extent the Court's prior Order held that Kingston could prove objective invalidity based solely on "the similarity to invalid claims in the '802 patent," Dkt. No. 177 at 5, Section 315 estoppel also applies bars this argument. Claims 55 and 57 of the '135 patent contain the "operably connecting" limitation not found in claims 38 and 39 of the '802 patent. Dkt. No. 178 at 26-27, ¶25. Kingston seeks to prove these limitations of the '135 patent based on the same Harari and Anderson art to which estoppel applies. *See id.* ¶26 ("SPEX knows that the Patent Trial and Appeal Board already determined that **the same references** over which the Board found claims 38 and 29 of the '802 [patent] unpatentable (**Harari and Anderson**) teach the 'operably connecting' limitation . . .") (emphasis added).

16

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

1   Waxman pharmaceutical cases; and (2) Kingston does not allege that the settling
2   defendants agreed to stay out of the market or received any payment from SPEX, let
3   alone a "large and unjustified" payment of money, as is required for an improper,
4   antitrust-invoking "reverse-payment" agreement.

### 1.   *Actavis* "Reverse-Payment" Settlements Are Limited To Inapplicable Watch-Haxman Pharmaceutical Actions

7        The *Actavis* decision was limited solely to reverse payment settlement
8   agreements "in the context of pharmaceutical drug regulation, and specifically in the
9   context of suits brought under statutory provisions allowing a generic drug
10  manufacturer . . . to challenge the validity of a patent owned by an already-approved
11  brand named drug owner. . . commonly known as the Hatch-Waxman Act." *Actavis*,
12  570 U.S. at 141. In other words, *Actavis* is limited solely to Hatch-Waxman
13  pharmaceutical patent disputes. *See Industrial Models, Inc. v. SNF, Inc.*, 716 Fed.
14  Appx. 949, 957 (Fed. Cir. 2017) ("*Actavis* ... ***limited its holding to particular types***
15  ***of settlement agreements in the context of the Hatch-Waxman drug-regulatory***
16  ***framework***.") (emphasis added).[6]

17       Anti-competitive "reverse-payment" settlements exist only in the Hatch-
18  Waxman context because pharmaceutical patent cases are unique. Such cases
19  involve a potential generic drug manufacturer challenging the validity of a patent of
20  a brand-name drug manufacturer as part of the process of seeking speedy approval
21  of the generic manufacturer's generic version of the drug. *Actavis*, 570 U.S. at 143-
22  44. If the challenging party successfully invalidates the patent during litigation, it
23  receives the additional benefit of a 180-day period in which it can exclusively sell
24  the generic drug, which can be "worth several hundred million dollars." *Id.* at 144.

26  [6] During the meet and confer that preceded this Motion, counsel for SPEX inquired
27  of counsel for Kingston were aware of any authority extending reverse-payment
    settlements outside of the Hatch-Waxman context. Counsel for Kingston stated
28  they were not aware of any such authority. Kroeger Decl. ¶3.

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

The 180-day period is not available to a subsequent challenger, even if the first litigation is settled. *Id.* Thus, unlike standard patent litigations, there is an incentive for the patent holder to pay the challenger a large sum of money to keep the generic drug off the market, thereby benefitting both companies at the expense of the market. *Id.* at 141-144.

In *Actavis*, the Court decided the following narrow issue:

> Company A sues Company B for patent infringement. The two companies settle under terms that require (1) Company B, the claimed infringer, not to produce the patented product until the patent's term expires, and (2) Company A, the patentee, to pay B many millions of dollars. Because the settlement requires the patentee to pay the alleged infringer, rather than the other way around, this kind of settlement agreement is often called a "reverse payment" settlement agreement. And the basic question here is whether such an agreement can sometimes unreasonably diminish competition in violation of the antitrust laws.

*Id.* at 140. The Court expressly declined to find that "reverse payment settlement agreements are presumptively unlawful." *Id.* at 158-59. Instead, the Court concluded that "a reverse payment, where large and unjustified, can bring with it significant anticompetitive effects" and "the size of the payment" must be examined to determine these anticompetitive effects. *Id.* at 158. The Court found such agreements possibly anticompetitive because "payment in return for staying out of the market—simply keeps prices at patentee-set levels . . . The patentee and the challenger gain; the consumer loses." *Id.* at 154.

Kingston's attempt to claim that SPEX's settlement with Western Digital, Toshiba and Apricorn concerning the '135 patent is an anticompetitive "reverse-payment" settlement fails as this action is plainly not a Hatch-Waxman pharmaceutical patent dispute. As a matter of law, the settlement is not a "reverse-payment" settlement. *See Industrial Models, Inc.*, 716 Fed. Appx. at 957 ("w[e] see no reason to apply *Actavis* to routine unsuccessful offers to settle that are clearly acts

18

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

'attendant upon' litigation"). This Court should decline to extend *Actavis*, and dismiss Kingston's Sherman Act counterclaim.

### 2.   Kingston Fails To Plead A Reverse-Payment Settlement

Even if "reverse-payment" settlements were extended beyond the Hatch-Waxman context, contrary to controlling precedent, Kingston fails to plead sufficient facts to establish that SPEX's settlement agreement is a "reverse-payment." Kingston's conclusory allegation that "these agreements constitute illegal 'reverse payment settlements'" is insufficient to state a claim. Dkt. No. 178 at 32, ¶38. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions.") (internal quotation marks omitted).

First, Kingston does not plead, because it cannot, that Western Digital, Toshiba or Apricorn agreed to stay out of the market, by entering into the settlement agreement with SPEX, as is required for a reverse-payment settlement. *Actavis*, 570 U.S. at 154 ("payment in return for staying out of the market" is an essential element of a reverse-payment settlement). Kingston's Counterclaim contains no allegation that the settlement agreement keeps competitors out of the market. *See* Dkt. No. 177 at ¶¶30-33 (not mentioning removing competition from the market as a result of the agreement). Indeed, the terms of the settlement allow the related defendants to **continue to sell** their products in the market. Kroeger Decl., Ex. A. The settlement agreement, unlike a "reverse-payment" settlement agreement, in fact encourages growth of the market by allowing Western Digital, Toshiba and Apricorn to sell their licensed products on the market. *Id.*.

Second, Kingston does not plead, as required by *Actavis*, that SPEX paid any money to Western Digital, Toshiba or Apricorn, let alone a "large and unjustified sum." Indeed, Kingston acknowledges that "SPEX received no monetary payment" supports its argument that the settlement was a "reverse-payment" settlement

19

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

agreement. Dkt. No. 178, 29 ¶30. The absence of any monetary payment is inconsistent with a finding of a reverse-payment settlement agreement, which requires a large payment to the defendant. *Actavis*, 570 U.S. at 157 ("[T]he 'size of the payment from branded drug manufacturer to a prospective generic is itself a strong indicator of power'—namely, the power to charge prices higher than the competitive level.").

Nor is Kingston's allegation that Western Digital, Toshiba and Apricorn received "free licenses . . . to the '135 patent" that "SPEX previously valued (on information and belief) at over $10 million collectively" sufficient to establish a cognizable reverse-payment. Dkt No. 178 at 20-21, ¶3. First, such a license accompanies every patent settlement, and is expressly something the Supreme Court stated did not amount to a reverse-payment. *Actavis*, 570 U.S. at 156 ("Where a reverse payment reflects traditional settlement considerations, such as avoided litigation costs or fair value for services, there is not the same concern that a patentee is using its monopoly profits to avoid the risk of patent invalidation or a finding of noninfringement."). Additionally, even if Kingston's allegation were a payment from SPEX to the related defendants, "reverse-payment" agreements require not just the exchange of something for value, as Kingston alleges (Dkt. No. 178, at 32, ¶38), but "a desire to maintain and to share patent-generated monopoly profits." *Actavis*, 570 U.S. at 158. Kingston does not allege any such sharing.

Finally, the grant of a license is the antithesis of a reverse-payment settlement. Instead of paying an entity to refrain from making its product and stay out of the market, SPEX is instead allowing these companies to practice the invention and sell in the market. Unlike reverse-payment settlements, no plausible anticompetitive conduct arises from this situation. *Id*. at 154 ("[P]ayment in return for staying out of the market—simply keeps prices at patentee-set levels . . . The patentee and the challenger gain; the consumer loses.").

20

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

RUSS, AUGUST & KABAT

1    Instructive, once again, is Judge Posner's decision in *Asahi*. In a

2 pharmaceutical case, Judge Posner rejected the argument that a settlement agreement

3 containing no restriction on entering the market was an actionable reverse

4 settlement. He noted:

6        [A]ny settlement agreement can be characterized as involving
         "compensation" to the defendant, who would not settle unless he had
7        something to show for the settlement. If any settlement agreement is
         thus to be classified as involving a forbidden "reverse payment," we
8        shall have no more patent settlements. ***In fact there is a difference
         between the reverse-payment case and other forms of settlement. In a***
9        ***reverse-payment case, the settlement leaves the competitive situation***
10       ***unchanged from before the defendant tried to enter the market.***

11   *Asahi*, 289 F. Supp. 2d at 994 (italics in original, bold added).

12   As in *Asahi*, Kingston has simply accused a standard settlement agreement,

13 not a reverse-payment settlement. Kingston's failure to allege that the settling

14 defendants received anything of value and stayed out of the market precludes a

15 finding that the settlement agreement was anticompetitive. It is also fatal to its

16 Counterclaim of a Sherman Act Violation. For this additional reason, Kingston's

17 Sherman Act Counterclaim should be dismissed.

18   **V.    KINGSTON FAILS TO STATE A CLAIM FOR VIOLATION OF**
19   **THE CARTWRIGHT ACT**

20   Kingston's Cartwright Act allegations are based on the same conduct as its

21 Sherman Act Counterclaim. Dkt. No. 178 at 33, ¶ 43. Kingston concedes that "[t]his

22 statute is the California counterpart to section 1 of the Sherman Antitrust Act, and

23 California courts have looked to federal law when interpreting the provisions of this

24 act." *Id.* Accordingly, this cause of action should be dismissed for the same reasons

25 as Kingston's Sherman Act Counterclaim. *See Stanislaus Food Prod. Co. v. USS-*

26 *POSCO Indus.*, 782 F. Supp. 2d 1059, 1079 (E.D. Cal. 2011) ("the analysis under

27

28

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND
AFFIRMATIVE DEFENSE OF PATENT MISUSE**

California's antitrust law mirrors the analysis under federal law because the Cartwright was modeled after the Sherman Act").

## VI.   KINGSTON FAILS TO STATE A CLAIM FOR PATENT MISUSE

A patent misuse claim may not be predicated solely on the assertion of a patent that is purportedly known to be invalid. *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998). In *C.R. Bard*, the Federal Circuit reversed a jury verdict of patent misuse, finding that the jury received the following improper instruction: "[t]he patent is also unenforceable for misuse when a patent owner attempts to use the patent to exclude competitors from their marketplace knowing that the patent was invalid or unenforceable." *Id.* The Federal Circuit found the instruction erroneous, because "[t]he conduct to which the jury instruction on misuse generally refers, that is 'wrongful' enforcement of patents, is activity protected under *Noerr* and *California Motor*, and is not subject to collateral attack as a new ground of 'misuse.'" *Id.* The Federal Circuit held that "M3 Systems adduced no evidence of patent misuse other than what was presented for its antitrust claims*. It is not patent misuse to bring suit to enforce patent rights not fraudulently obtained,* nor is otherwise legal competition such behavior as to warrant creation of a new class of prohibited commercial conduct when patents are involved." *Id.* (emphasis added). *See also Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1580 (Fed. Cir. 1986) (affirming denial of accused infringer's motion for JMOL on patent misuse based on alleged bad faith enforcement, where patentee prevailed, and stating "[b]ecause no prior art anticipated the claims of the '586 patent, Safety's assertion that Orthokinetics is guilty of patent misuse for asserting a patent, the '586 patent, that it knew was invalid under § 102(b), is without merit.").

Following *C.R. Bard*, district courts routinely dismiss claims of patent misuse predicated solely on an assertion that the patent owner purportedly knows its asserted patent is invalid. *Advanced Magnetic Closures, Inc. v. Romag Fastener, Inc.*, Case

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

No. 98 Civ. 7766 (PAC), 2006 WL 3342655, at *3 (S.D.N.Y. Jun. 6, 2016) ("Romag argues, in essence, that AMC's enforcement of the patent constitutes misuse because AMC is aware . . . that the '773 patent is invalid . . . . This argument clearly mistakes the purpose of the patent misuse defense. . . . Romag's affirmative defense and counterclaim based on patent misuse must be dismissed."); *Junker v. Medical Components, Inc.*, Civil Action No. 13-4606, 2019 WL 109385, at *15 (E.D. Penn. Jan. 4, 2019) (patent misuse claims cannot be based on allegations that "patent holder has brought an action for patent infringement that he knows to be meritless").

Kingston's Affirmative Defense and Counterclaim of Patent Misuse allege no other purported patent misuse than SPEX continuing to prosecute this action after allegedly knowing that the '135 patent is invalid. For instance, its Affirmative Defense of Patent Misuse alleges:

> Plaintiff is barred from asserting claims 55 and 57 of the '135 patent against Kingston because, as more fully set forth below in Kingston's counterclaims, ***Plaintiff has maintained its allegations of patent infringement of these claims where Plaintiff knows that these claims are invalid.*** Kingston incorporates is [sic] the facts and assertions in its counterclaims below as at least partially the basis for this defense.

Dkt. No. 178 at 17 (emphasis added). Likewise, its Counterclaim for Patent Misuse alleges: "SPEX has engaged in patent misuses [sic] by, inter alia, ***maintaining its allegations of infringement of claims 55 and 57 of the '135 patent, knowing these claims to be invalid.*** . . . . As SPEX has continued to seek exclusivity ***based on claims its knows are invalid*** . . . SPEX has committed patent misuse." *Id.* at 34-35 ¶ 49 (emphasis added).

Because Kingston's allegations are based solely SPEX's purported knowledge of invalidity these allegations are insufficient as a matter of law to state a claim for patent misuse. *Orthokinetics*, 806 F.2d at 1580 ("Safety's assertion that Orthokinetics is guilty of patent misuse for asserting a patent, the '586 patent, that it knew was invalid under § 102(b), is without merit."); *Advanced Magnetic Closures,*

23

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

*Inc.*, *2006* WL 3342655, at *3 ("Romag argues, in essence, that AMC's enforcement of the patent constitutes misuse because AMC is aware . . . that the '773 patent is invalid . . . . This argument clearly mistakes the purpose of the patent misuse defense.").  A patent misuse claim may not be predicated solely on the knowing assertion of an invalid patent, yet this is all the conduct Kingston alleges. For this reason, Kingston's Affirmative Defense and Counterclaim of Patent Misuse must be dismissed.

## VII.   KINGSTON FAILS TO PLEAD A COUNTERCLAIM UNDER §17200

Kingston admits that its Counterclaim under Section 17200 of the California Business and Professions Code rises and falls with its other counterclaims. Dkt. No. 172-1 at 15 ("Here, as described above, Kingston's complaint properly states a violation of section 1 of the Sherman Antitrust Act, a violation of the Cartwright Act, and violation of the federal Patent Laws."). Accordingly, as it has failed to properly state a cause of action for any of its other counterclaims for the reasons described above, this claim should likewise be dismissed. *See, e.g.*, *Rubio v. Capital One Back*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) ("To state a claim for an 'unlawful' business practice under the UCL [Section 17200], a plaintiff must assert a violation of any other law…. Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either.").

## VIII.  CONCLUSION

For all of the foregoing reasons Kingston's Counterclaims and Affirmative Defense and Counterclaim of Patent Misuse should be dismissed. Further, as any amendment would be futile, no leave to amend should be permitted.

Dated:   October 16, 2019          Respectfully submitted,

**RUSS AUGUST & KABAT**

By:    /s/ Paul A. Kroeger

24

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

Marc A. Fenster, SBN 181067
Benjamin T. Wang, SBN 228712
Andrew D. Weiss, SBN 232974
Paul A. Kroeger, SBN 229074
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California  90025
Tel:   (310) 826-7474
Fax:  (310) 826-6991
Email:  mfenster@raklaw.com
Email:  bwang@raklaw.com
Email:  aweiss@raklaw.com
Email:  pkroeger@raklaw.com

*Attorneys for Plaintiff*
SPEX Technologies, Inc.

RUSS, AUGUST & KABAT

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on October 16, 2019.  As such, this document was served on all counsel who have consented to electronic service.

*/s/ Paul A. Kroeger*
Paul A. Kroeger

Russ, August & Kabat

**RULE 12(B)(6) MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**