1   *[SEE SIGNATURE BLOCK FOR COUNSEL INFORMATION]*

2

3

4

5

6

7

8

9   **UNITED STATES DISTRICT COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA**
     **SOUTHERN DIVISION**

11

12   SPEX TECHNOLOGIES, INC.,

13        Plaintiff,

14       v.

15

16   KINGSTON TECHNOLOGY
     CORPORATION, KINGSTON
17   DIGITAL, INC., KINGSTON
     TECHNOLOGY COMPANY, INC.,
18   IMATION CORPORATION,
     DATALOCKER INC., DATA LOCKER
19   INTERNATIONAL, LLC,

20

21        Defendants.

Case No. 8:16-CV-01790-JVS-AGR

**KINGSTON TECHNOLOGY CORPORATION, KINGSTON DIGITAL, INC., AND KINGSTON TECHNOLOGY COMPANY, INC.'S OPPOSITION TO SPEX TECHNOLOGIES, INC.'S MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF PATENT MISUSE PURSUANT TO RULE 12(B)(6)**

HONORABLE JAMES SELNA

DATE: November 25, 2019
TIME: 1:30 P.M.
COURTROOM: Santa Ana, 10C

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 5

    I.    SPEX Is Not Immune from Anti-Trust Liability Under the
        *Noerr-Pennington* Doctrine ......................................................... 5

        A.    The *Noerr-Pennington* Affirmative Defense Does Not
             Apply to Non-Petitioning Activity ................................. 5

        B.    The *Noerr-Pennington* Doctrine Does Not Immunize
             SPEX From Liability For Entering Into an Illegal
             Reverse Settlement ....................................................... 8

        C.    Kingston Has Adequately Plead That SPEX's Belief
             That the Claims Are Invalid is Objectively Reasonable ........... 10

    II.    Kingston's Complaint Adequately Pleads that SPEX Entered
        Into an Illegal Reverse Settlement ........................................... 15

    III.    Kingston Adequately Pleads Patent Misuse Based on Far More
         Than an Ordinary Assertion of Infringement ......................... 19

CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Actavis—Asahi Glass Co. v. Pentech Pharm, Inc.*,
  289 F.Supp.2d 986 (N.D. Ill. 2003) ................................................*passim*

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
  No. 98 CIV. 7766 (PAC), 2006 WL 3342655 (S.D.N.Y. Nov. 16,
  2006) ...................................................................................................20, 21

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
  92 F.3d 781 (9th Cir. 1996) ...................................................................5

*In re Androgel Antitrust Litig. (No. II)*,
  No. 1:09-CV-955-TWT, 2014 WL 1600331 (N.D. Ga. Apr. 21,
  2014) .......................................................................................................9

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  186 F.3d 781 (7th Cir. 1999) .................................................................9

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998) .......................................................20, 21

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000) ................................................6

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  807 F.3d 1283 (Fed. Cir. 2015) ...........................................................13

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*,
  159 F.3d 412 (9th Cir. 1998) ...............................................................11

*Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*,
  111 F.3d 1427 (9th Cir. 1996) ...............................................................7

*F.T.C. v. Watson Pharm., Inc.*,
  677 F.3d 1298 (11th Cir. 2012), *rev'd and remanded sub nom.*
  *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013) ..................................16, 17

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
  No. SACV0901148CJCMLGX, 2010 WL 11518555 (C.D. Cal.
  Nov. 10, 2010) .......................................................................................7

ii

Kingston's Opposition to
SPEX's Motion to Dismiss
8:16-cv-01790-JVS-AGR

*Gen. Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.*,
  126 F.3d 1131 (9th Cir. 1997), *as amended on denial of reh'g and
  reh'g en banc* (9th Cir. Sept. 16, 1997) ................................................. 15

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
  45 F.3d 1550 (Fed. Cir. 1995) ................................................. 21

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) ................................................. 13

*Handgards, Inc. v. Ethicon, Inc. .,*
  601 F.2d 986 (9th Cir.1979) ................................................. 15

*Handgards, Inc. v. Ethicon, Inc.*,
  743 F.2d 1282 (9th Cir. 1984) ................................................. 7, 8, 15

*Industrial Models, Inc. v. SNF, Inc.*,
  716 F. App'x 949, 956 (Fed. Cir. 2017) ................................................. 17, 18

*Junker v. Med. Components, Inc.*,
  No. CV 13-4606, 2019 WL 109385 (E.D. Pa. Jan. 4, 2019) ................................................. 21

*Kearney v. Foley & Lardner, LLP*,
  590 F.3d 638 (9th Cir. 2009) ................................................. 6

*King Drug Co. of Florence v. Smithkline Beecham Corp.*,
  791 F.3d 388 (3d Cir. 2015) ................................................. 18

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017), *cert. denied sub nom. Pfizer Inc. v.
  Rite Aid Corp.*, 138 S. Ct. 983 (2018), and *cert. denied sub nom.
  Wyeth LLC v. Rite Aid Corp.*, 138 S. Ct. 984 (2018) ................................................. 10

*Mallinckrodt Inc. v. Medipart, Inc.*,
  976 F.2d 700 (Fed. Cir. 1992) ................................................. 20

*MedImmune, Inc. v. Genentech, Inc.*,
  No. CV 03-2567MRP, 2003 WL 25550611 (C.D. Cal. Dec. 23,
  2003) ................................................. 9

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011) ................................................. 12

*Nalco Co. v. Turner Designs, Inc.*,
   No. 13-CV-02727 NC, 2014 WL 645365 (N.D. Cal. Feb. 19, 2014) .................21

*In re Nexium*,
   968 F. Supp. 2d (D. Mass. 2013) ......................................................................9, 18

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
   806 F.2d 1565 (Fed. Cir. 1986) ...............................................................................21

*Primetime 24 Joint Venture v. Nat'l Broadcasting Co., Inc.*,
   219 F.3d 92 (2d Cir. 2000) ......................................................................................6

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ............................................................................................6, 12

*Rivers v. Roadway Express, Inc.*,
   511 U.S. 298 (1994) ...............................................................................................17

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ...................................................................................7

*State Oil Co. v. Khan*,
   522 U.S. 3 (1997) ....................................................................................................15

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*,
   460 U.S. 533 (1983) (per curiam) ..........................................................................17

*Toyo Tire & Rubber Co. v. Atturo Tire Corp.*,
   No. 14 C 0206, 2017 WL 1178224 (N.D. Ill. Mar. 30, 2017) ..........................7, 9

*United Food & Commercial Workers Local 1776 & Participating*
   *Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*,
   74 F. Supp. 3d 1052 (N.D. Cal. 2014) ..............................................................18, 19

*Virginia Panel Corp. v. MAC Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997) ................................................................................20

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   837 F.3d 1358 (Fed. Cir. 2016), *rev'd sub nom. WesternGeco LLC*
   *v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018), *and opinion*
   *reinstated in part*, 913 F.3d 1067 (Fed. Cir. 2019) ...............................................13

Kingston's Opposition to
SPEX's Motion to Dismiss
8:16-cv-01790-JVS-AGR

*Windsurfing Int'l Inc. v. AMF, Inc.*,
   782 F.2d. 995, 1001 (Fed. Cir. 1986) ...................................................... 20

**Statutes**

28 U.S.C. § 1337 ............................................................................................ 12

28 U.S.C. § 1338 ............................................................................................ 12

35 U.S.C. § 311(b) ........................................................................................... 3

35 U.S.C. § 315(e) ............................................................................ 11, 12, 14

Richard A. Posner, Antitrust Law 27 (1976) ............................................. 16

**Other Authorities**

157 Cong. Rec. S1360-94 (daily ed. Mar. 8, 2011) (statement of Sen.
   Grassley) .................................................................................................. 14

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1422 (3d ed.) .................... 12

v

Kingston's Opposition to
SPEX's Motion to Dismiss
8:16-cv-01790-JVS-AGR

# INTRODUCTION

The Court has already considered, and rejected, SPEX's arguments to dismiss Kingston's anti-trust and patent misuse.  In August, SPEX opposed Kingston's motion to add these claims, because, according to SPEX, Kingston's claims were futile.  Applying the very same 12(b)(6) standard that governs SPEX's present motion, this Court determined that they were not futile, rejecting both the arguments SPEX made in its briefs and SPEX's attempt to raise new arguments at the hearing on the motion.

SPEX now moves to dismiss Kingston's anti-trust and patent misuse claims, making nearly the same arguments this Court has already rejected.  As it did in its previous motion, SPEX argues that Kingston is barred from bringing its anti-trust counterclaims because Kingston is estopped from asserting that SPEX's claims are invalid.  As Kingston explained (and as this Court held), Kingston need not prove SPEX's patent claims are invalid in order to succeed in proving its anti-trust or patent misuse claims.  Having failed in its argument the first time, SPEX now asserts that Kingston must prove, but is barred from proving, that SPEX's claims are invalid in order to overcome an affirmative defense—immunity under the *Noerr-Pennington* doctrine.  SPEX, though, fails to explain why *Noerr-Pennington* would apply to these claims at all.  Kingston's claims are not predicated on protected First Amendment activity (which is what *Noerr-Pennington* immunity is designed to protect), and even if they were, Kingston's counterclaim complaint contains more than sufficient allegations to overcome the *Noerr-Pennington* defense.

SPEX's present motion also re-raises its previous failed argument that Kingston fails to state a claim under the Supreme Court's *Actavis* decision.  As Kingston explained previously (and as this Court held), SPEX reads the Supreme Court's *Actavis* decision too narrowly.  *Actavis* was not limited solely to settlement agreements arising in Hatch-Waxman pharmaceutical lawsuits, nor is it limited to monetary payments in exchange for a party staying out of the market.  Rather, *Actavis* broadly held that patent

KINGSTON'S OPPOSITION TO
SPEX'S MOTION TO DISMISS
8:16-cv-01790-JVS-AGR

settlements are not immune from anti-trust scrutiny, and explained that where such settlement agreements involve a patent owner unjustifiably giving something of value to an alleged infringer (as here), those agreements may unreasonably restrain trade in violation of the anti-trust laws.

Lastly, SPEX argues that Kingston cannot maintain its patent misuse claim based on Federal Circuit law holding that actions reasonably within the patent grant cannot constitute misuse. SPEX's argument ignores, however, that Kingston's misuse claim arises out of far more than an ordinary assertion of a patent. As Kingston's counterclaim complaint alleges, SPEX entered into a settlement agreement where it gave away free licenses to its patent in order to avoid an adjudication SPEX knew would have resulted in its claims being found invalid. SPEX licensed these patent claims knowing they were invalid. SPEX then continued to allege infringement against Kingston knowing the claims to be invalid. Licensing invalid claims to avoid a certain adjudication of invalidity and asserting known-invalid patents expand on the rights conferred by a patent are outside the patent grant, and thus Kingston can and should be able to maintain its claim of misuse.

## BACKGROUND

A full recitation of the legal and factual background underlying Kingston's counterclaims is provided in Kingston's motion for leave to amend (D.I. 172) and in Kingston's counterclaim complaint (D.I. 178). This Court is undoubtedly familiar with this background, having just ordered that Kingston be given leave to add these counterclaims over opposition from SPEX (D.I. 177). However, we briefly summarize the allegations supporting Kingston's claims as SPEX's motion misconstrues both the factual and legal bases for them.

Kingston's claims arise out of a settlement agreement SPEX entered into with parties who sought to invalidate SPEX's '135 patent in *inter partes* review. As this Court is aware, *inter partes* review is a Patent Office proceeding where parties can challenge the

KINGSTON'S OPPOSITION TO
SPEX'S MOTION TO DISMISS

8:16-cv-01790-JVS-AGR

validity of a patent based on prior art patents and printed publications.  *See generally* 35 U.S.C. § 311(b).  In the *inter partes* review in question, other defendants who have also been sued by SPEX asserted that claims 55 and 57 of the '135 patent were invalid over two prior art references—Harari and Anderson.  (*See* D.I. 178 at 25 ¶ 21.)

During the course of that proceeding, SPEX came to know that claims 55 and 57 were invalid.  In particular, claims 55 and 57 of the '135 patent are nearly identical to claims 38 and 39 of another patent owned and asserted by SPEX—the '802 patent. (*See* D.I. 178 at 26–27 ¶¶ 22–25.)  In an *inter partes* review of the '802 patent, the Patent Office preliminarily determined that those nearly-identical claims were likely invalid. SPEX did not argue against that preliminary determination, and indeed did not file any brief at all trying to save those claims.  Unsurprisingly, then, the Patent Office entered a Final Written Decision determining that claims 38 and 39 of the '802 patent were invalid.  (*See* D.I. 178 at 25 ¶ 22.)

The only substantively non-identical limitation present in claims 55 and 57 of the '135 patent recites the step of "operably connecting the security module and/or the target module to the host computing device in response to an instruction from the host computing device."  (*See* D.I. 178 at 26–27 ¶ 25.)  SPEX knew, however, that this limitation was also taught by the same prior art which rendered the nearly-identical claims of the '802 patent invalid.  Indeed, the Board had already preliminarily determined that this limitation was taught by that same prior art (*see* D.I. 178 at 27 ¶ 26); and SPEX's expert didn't even dispute that the limitation was taught by any PCMCIA device (such as the devices taught by Harari and Anderson) in this litigation (*see* D.I. 178 at 27–28 ¶ 27).  Thus SPEX knew that the *inter partes* review of the '135 patent would have resulted in those claims being found invalid.  As Kingston's complaint specifically alleges, SPEX's belief that these claims are invalid over Harari and Jones is objectively reasonable, based both on the Patent Office's determinations and on the content of the prior art references themselves.  (*See* D.I. 178 at 28–29 ¶ 29.)

In order to avoid a certain adjudication of invalidity, SPEX entered into a settlement agreement with the petitioners in the *inter partes* review brought against the '135 patent.  Unlike a typical settlement agreement, though, the accused infringer did not pay anything to the patent owner.  To the contrary, SPEX gave away something that it had previously claimed was worth $10 million—a retroactive license to the '135 patent—in exchange for the challengers to the '135 patent dropping their invalidity claims.  (*See* D.I. 178 at 30 ¶ 30.)  And then, SPEX chose to continue to assert these claims against Kingston in this case—simply because Kingston was not allowed to join the *inter partes* review of the '135 patent because Kingston had previously brought a challenge to the '135 patent based on other prior art.  (*See* D.I. 178 at ¶ 31.)  The result of SPEX's brazen gamesmanship is that Kingston faces allegations that it infringes claims that SPEX and everybody else knows would have and should have been found invalid absent SPEX preventing the adjudication of the validity of its claims from going forward.

Because of this clear abuse of SPEX's patent monopoly, Kingston sought to amend its answer to add claims that SPEX's settlement agreement violated both Federal and state anti-trust laws and constituted misuse of a patent.  (*See generally* D.I. 172.)  SPEX opposed, arguing that Kingston's counterclaim complaint failed to adequately state any claim under the Rule 12(b)(6) standard, and thus Kingston's attempt to amend would be futile.  (*See generally* D.I. 174.)  This Court disagreed, holding that Kingston's complaint satisfied the Rule 12(b)(6) standard and granting Kingston leave to amend.  (*See* D.I. 177.)

Now, SPEX brings this motion to dismiss, again arguing that Kingston's counterclaim complaint fails to state any claim under Rule 12(b)(6) based on nearly the same arguments this Court already rejected.

# ARGUMENT

## I.   SPEX Is Not Immune from Anti-Trust Liability Under the *Noerr-Pennington* Doctrine

SPEX's motion begins by arguing that Kingston cannot state a claim under the anti-trust laws because Kingston is barred from asserting that SPEX's claims are invalid.  Notably, SPEX previously argued this same thing in its opposition to Kingston's motion to amend.  (*See* D.I. 174 at 7–11.)  SPEX's argument is just as wrong now as it was when this Court previously rejected it.

### A.   The *Noerr-Pennington* Affirmative Defense Does Not Apply to Non-Petitioning Activity

Because SPEX's motion confuses the elements for an anti-trust claim with an affirmative defense it appears SPEX is now asserting, we begin with a brief overview of the law.  A prime facie case of section 1 of the Sherman Act[1] consists of three elements: "(1) an agreement, conspiracy, or combination between two or more entities; (2) an unreasonable restraint of trade under either a per se or rule of reason analysis; and (3) the restraint affected interstate commerce."  *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996).

As this Court previously recognized, Kingston's counterclaim complaint successfully pleads each of these elements.  As to the first contract element, Kingston alleges that SPEX entered into a settlement agreement with defendants in other actions brought by SPEX whereby SPEX agreed to drop claims against these defendants in exchange for the defendants dropping invalidity challenges that SPEX knew would result in a finding that the claims at issue were invalid.  (*See, e.g.*, D.I. 177 at 29 ¶¶ 30.)  As to the second element, Kingston's complaint alleges that this contract constituted an unreasonable restraint on trade because SPEX knew the claims were invalid and gave substantial consideration for avoiding an adjudication of validity, allowing SPEX to

---

[1]   SPEX's motion does not distinguish between the various Federal and state anti-trust causes of action, so we (as SPEX does) address this argument in the context of section 1 of the Sherman Act.

1   continue seeking damages for alleged infringement of these known-invalid claims.  (*See,*
2   *e.g.,* D.I. 178 at 29 ¶¶ 30–31; *id.* at 31–32 ¶¶ 37–38.)  And Kingston's complaint alleges
3   that this unreasonable restraint of trade will affect interstate commerce because, among
4   other harms, consumers will have to pay higher prices.  (*See* D.I. 178 at 32–33 ¶¶ 39–
5   40.)

6          SPEX's first and primary argument here does not challenge the sufficiency of
7   Kingston's complaint as to any of the elements needed for Kingston to make out a
8   prime facie case under section 1 of the Sherman Act.  Instead, SPEX's argument is
9   based on an affirmative defense to an anti-trust claim—immunity under the *Noerr-*
10  *Pennington* doctrine.  Of course, *Noerr-Pennington* does not immunize every claimed
11  violation of anti-trust laws.  Rather, *Noerr-Pennington* only gives immunity against anti-
12  trust claims premised on activity protected under the First Amendment to the
13  Constitution "in the context of concerted petitions for anti-competitive legislation."
14  *See, e.g., Primetime 24 Joint Venture v. Nat'l Broadcasting Co., Inc.*, 219 F.3d 92, 99 (2d Cir.
15  2000).  As the Supreme Court has explained, the doctrine provides that "[t]hose who
16  petition government for redress are generally immune from antitrust liability."  *Prof'l*
17  *Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("*PRE*"); *see*
18  *also Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643–44 (9th Cir. 2009) (explaining
19  that "[t]he *Noerr–Pennington* doctrine derives from the Petition Clause of the First
20  Amendment and provides that those who petition any department of the government
21  for redress are generally immune from statutory liability for their petitioning conduct"
22  (quotation marks omitted)).

23         The *Noerr-Pennington* doctrine, however, does not apply where an anti-trust claim
24  is premised on non-petitioning activity, such as entering into a private contract.  *See, e.g.,*
25  *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 635 (E.D. Mich. 2000) (finding
26  that *Noerr-Pennington* did not immunize party for entering into a private agreement).
27  This is true even where follow up to the contract may involve some sort of petitioning

28

to the government.  *See, e.g., Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1446 (9th Cir. 1996) (finding *Noerr-Pennington* doctrine inapplicable to anti-trust claim where liability was predicated on an agreement rather than follow up activity relating to submitting an application to the government).  "This principle follows in part from basic notions of causation: namely, when the government acts based on petitioning, any purportedly unlawful result is most proximately caused by government action, not by the private petitioning."  *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14 C 0206, 2017 WL 1178224, at *3 (N.D. Ill. Mar. 30, 2017).  "Conversely, where private parties take unlawful action merely hoping the government will later ratify it, government action is not an intervening cause, and *Noerr-Pennington* immunity does not arise."  *Id.*  Thus, the "doctrine applies when [anti-competitive] action is the consequence of legislation or other governmental action, not when it is the means for obtaining such action."  *Id.* at *6 (quotation marks omitted).

The *Noerr-Pennington* doctrine also does not apply to "sham" legal claims.  *E.g., Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, No. SACV0901148CJCMLGX, 2010 WL 11518555, at *6 (C.D. Cal. Nov. 10, 2010) (citing *PRE*, 508 U.S. at 56).  Thus, even if an anti-trust suit arises out of activity that would otherwise be immune from liability under the *Noerr-Pennington* doctrine, immunity does not attach if the legal claim at issue is both subjectively and objectively baseless.  *See id.*  In the patent context, legal claims are subjectively baseless if brought in bad faith (i.e. for a purpose other than to succeed on the merits), and legal claims are objectively baseless if no reasonable litigant would expect them to succeed.  *E.g., Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).  As applied in the context of the *Handgards* case—cited by Kingston in its counterclaim complaint (*see* D.I. 178 at 32 ¶ 37)—the standard set forth in *Handgards* itself "embodies both the *Noerr-Pennington* immunity and the sham exception," by requiring clear and convincing evidence of bad faith in order to overcome a

presumption of good faith enforcement of patents.  *Handgards, Inc. v. Ethicon, Inc.*, 743
F.2d 1282, 1294 (9th Cir. 1984).

As will be explained further below, the *Noerr-Pennington* doctrine does not shield
SPEX's settlement agreement from anti-trust scrutiny both because the *Noerr-Pennington*
doctrine does not immunize settlement agreements and because Kingston has
adequately plead that SPEX's continued assertion of its invalid claims is a sham.

### B.   The *Noerr-Pennington* Doctrine Does Not Immunize SPEX From Liability For Entering Into an Illegal Reverse Settlement

The first problem with SPEX's argument that it should be immunized from
liability by the *Noerr-Pennington* doctrine is that SPEX fails to explain why it believes the
doctrine should apply to Kingston's claims at all.  SPEX's argument acknowledges that
*Noerr-Pennington* only protects petitioning activity.  (*See* Mot. at 9 (correctly quoting *PRE*
as explaining that "[t]hose who **petition government for redress** are generally
immune from antitrust liability" (emphasis added))).  SPEX's argument then quickly
moves to discussing and arguing the sham exception to *Noerr-Pennington* immunity.  (*See*
*id.*).  Nowhere does SPEX explain why it believes Kingston's anti-trust counterclaims
are attempting to impose liability for any kind of petitioning activity.  (*See id.*)  SPEX
simply skips over this important initial determination.

Contrary to SPEX's assumption, Kingston's anti-trust counterclaims do not
allege liability for petitioning activity.  Kingston alleges that SPEX violated section 1 of
the Sherman Anti-Trust Act—which makes illegal "[e]very contract . . . in restraint of
commerce," *see* 15 U.S.C. § 1—by entering into an illegal reverse settlement with parties
who had challenged the validity of its patent claims in order to avoid an almost certain
finding that the claims are invalid.  (*See* D.I. 178 at 31 ¶ 36 (alleging a violation of
section 1 of the Sherman Act because "SPEX entered into contracts with the PTAB
Petitioners"); *id.* at 33–34 ¶ 45 (alleging a violation of the Cartwright Act because
"SPEX's 'reverse settlements' with the PTAB Petitioners constitute agreements that
unreasonably restrain trade in the relevant market in the United States and in

KINGSTON'S OPPOSITION TO
SPEX'S MOTION TO DISMISS

8:16-cv-01790-JVS-AGR

California"); *id.* at 35 ¶ 52 (alleging a violation of California Business & Professions Code because "SPEX has engaged in actions made unlawful . . . by entering into settlement agreements designed to further an antitrust harm").

Because Kingston's claims are predicated on a settlement agreement, and not any petitioning activity, SPEX cannot hide behind the shield of *Noerr-Pennington* immunity. "Courts are largely uniform in their view that private settlement agreements entered into during the pendency of litigation that are neither presented to nor approved by the judge presiding over the dispute fall outside the ambit of *Noerr–Pennington* immunity." *In re Nexium*, 968 F. Supp. 2d at 395 (D. Mass. 2013); *see also, e.g., MedImmune, Inc. v. Genentech, Inc.*, No. CV 03-2567MRP, 2003 WL 25550611, at *6 (C.D. Cal. Dec. 23, 2003) (noting without disagreement that the party seeking to assert *Noerr-Pennington* immunity conceded that "settlements that merely require compulsory filings, ministerial agency actions, or inconsequential court orders such as Rule 41(a) dismissals do not raise a *Noerr-Pennington* defense"). Indeed, in the *Actavis* decision itself—cited by Kingston in its counterclaim complaint—the Supreme Court found that an anti-trust suit **can** arise from a settlement agreement—a result that could not happen if settlement agreements were immune from anti-trust scrutiny. *See In re Androgel Antitrust Litig. (No. II)*, No. 1:09-CV-955-TWT, 2014 WL 1600331, at *9 (N.D. Ga. Apr. 21, 2014) (noting that "[a]llowing the Defendants to shield themselves from antitrust scrutiny simply by obtaining a consent judgment would largely eliminate the application of the Supreme Court's decision in *Actavis*").

As courts have also found, the fact that SPEX later sought dismissal of the IPRs pursuant to the settlement agreement does not change this result. For example, in *Toyo Tire & Rubber Co.*, the Northern District of Illinois found a party was not immune under the *Noerr-Pennington* doctrine for entering into a settlement in an ITC action even where the settlement was later submitted to the ITC. 2017 WL 1178224, at *6; *see also, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 789 (7th Cir. 1999)

KINGSTON'S OPPOSITION TO
SPEX'S MOTION TO DISMISS

8:16-cv-01790-JVS-AGR

(explaining that the *Noerr-Pennington* "doctrine does not authorize anticompetitive action in advance of government's adopting the industry's anticompetitive proposal"). And numerous courts have found *Noerr-Pennington* inapplicable even where parties enter into a consent judgment that requires Court monitoring and enforcement. *See, e.g., In re Lipitor Antitrust Litig.*, 868 F.3d 231, 266 (3d Cir. 2017), *cert. denied sub nom. Pfizer Inc. v. Rite Aid Corp.*, 138 S. Ct. 983, 200 L. Ed. 2d 300 (2018), and *cert. denied sub nom. Wyeth LLC v. Rite Aid Corp.*, 138 S. Ct. 984, 200 L. Ed. 2d 300 (2018) (finding consent judgment not immune from anti-trust scrutiny otherwise "no third party harmed by a collusive agreement could bring an antitrust lawsuit").

SPEX cites no case and indeed makes no argument explaining how entering into an illegal and anti-competitive contract to **end** litigation constitutes petitioning activity. That is because it does not, and thus *Noerr-Pennington* does not immunize SPEX from liability for entering into an illegal reverse settlement agreement.

### C. Kingston Has Adequately Plead That SPEX's Belief That the Claims Are Invalid is Objectively Reasonable

The second fundamental problem with SPEX's *Noerr-Pennington* argument is that Kingston has adequately plead that SPEX's belief that its claims are invalid is objectively reasonable so as to show that SPEX's continued litigation of its known-invalid claims is a sham. As this Court correctly noted in its earlier order after SPEX attempted to raise *Noerr-Pennington* at oral argument having not included anything about it in its briefs, Kingston's counterclaim complaint contains specific allegations to this effect. (D.I. 177 at 5.) Paragraph 29 of the Counterclaim complaint, for example, details with specificity why "SPEX's belief that these claims are invalid is objectively reasonable," including referencing the fact that the Board had preliminarily found the claims invalid and referencing the prior art underlying that determination. (*See* D.I. 178 at 28–29 ¶ 29).

SPEX does not (and indeed cannot) argue that this allegation is insufficient to overcome *Noerr-Pennington*. Rather, SPEX argues that this Court should ignore this

KINGSTON'S OPPOSITION TO
SPEX'S MOTION TO DISMISS

8:16-cv-01790-JVS-AGR

specific allegation in Kingston's counterclaim complaint because, according to SPEX, Kingston is barred from making it. In support, SPEX points to judicial estoppel and re-hashes its earlier failed arguments with respect to 35 U.S.C. § 315. SPEX's argument fails on both counts.

As to judicial estoppel, SPEX is wrong to assert that Kingston's statement in its reply in support of its motion to amend (D.I. 175) that it need not prove invalidity to prove its claim prevents rebutting a *Noerr-Pennington* defense. SPEX confuses what Kingston must prove to make out a prime facie case under section 1 of the Sherman Act with what Kingston must show to overcome a *Noerr-Pennington* immunity affirmative defense. There is no dispute that the elements of a Sherman section 1 claim are: (1) a contract or conspiracy; (2) in restraint of trade; (3) that affects interstate commerce. (*E.g.* Mot., at 16 (reciting these elements).) Plainly, proving that the claims of SPEX's patent are invalid is not one of the elements required for Kingston to make its case. Therefore, Kingston's statement in its reply that it "is not affirmatively seeking to prove that claims 55 and 57 are invalid over Harari and Anderson" is just as true today as it was when Kingston made that statement in its reply because Kingston need not prove invalidity to make out its prime facie case. Kingston's statement in no way expressly abandoned an argument of objective reasonableness by correctly arguing that invalidity was not an element of a Sherman section 1 claim. *See Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 419 (9th Cir. 1998) (finding that because a party "did not take inconsistent positions, judicial estoppel is inapplicable").

SPEX is also wrong that section 315(e) prevents Kingston from rebutting a *Noerr-Pennington* defense. For one, estoppel under section 315(e) is simply inapplicable to claims arising under the anti-trust laws. Section 315(e) provides:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either **in a civil action arising in whole or in part under section 1338 of title 28** or in a proceeding before the International Trade Commission under

section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

35 U.S.C. § 315(e) (emphasis added).  As Kingston previously explained (*see* D.I. 174), Kingston's anti-trust claims do not arise "in whole or in part" under 28 U.S.C. § 1338, which provides for original jurisdiction in the district courts of "any civil action arising under any Act of Congress relating to patents" or other intellectual property claims. Kingston's anti-trust claims instead arise under 28 U.S.C. § 1337, which provides for jurisdiction in suits arising from "any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."  Thus, by the explicit language of the statute, section 315(e) cannot bar Kingston from asserting that *Noerr-Pennington* immunity does not apply against claims brought under the anti-trust laws.[2]

Importantly, rebutting a *Noerr-Pennington* defense is not the same as asserting "that the claim is invalid." 35 U.S.C. § 315(e).  Proof of invalidity requires, for example, showing by clear and convincing evidence that every element of the claim is taught by a prior art reference or would have been obvious to one of skill in the art.  *See generally Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011) (holding that invalidity defenses must be proved by clear and convincing evidence).  To rebut the *Noerr-Pennington* defense, Kingston need only prove that a reasonable person could expect that the claims would be found invalid before the PTAB with its lower burden of proof.  *See, e.g., PRE*, 508 U.S. at 60 (explaining that an objectively meritless claim is on

---

[2]   Despite Kingston raising this argument in its previous briefing before this Court, SPEX's motion fails to address it at all.  To the extent SPEX contends that the estoppel provision applies because its own claims arise under the Patent Laws, SPEX would be wrong. Kingston's anti-trust counterclaims are clearly "permissive" (as opposed to "compulsory"), and thus there must be an independent basis for jurisdiction over these claims.  *See, e.g.,* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1422 (3d ed.) (explaining that courts have uniformly held "that permissive counterclaims must be supported by independent grounds of federal jurisdiction").  Thus, in no way does Kingston's counter-suit "arise" out of the Patent Laws.

1   which "no reasonable litigant could realistically expect success on the merits").  These

2   are different inquiries, with different standards.

3       Indeed, the Federal Circuit has held that proving a **belief** regarding validity is not

4   the same thing as proving that the claims are actually invalid.  As part of the inquiry as

5   to whether a litigant infringed willfully, the Federal Circuit considers[3] whether a

6   defendant had an objectively reasonable belief that the claims alleged to be infringed

7   are invalid.  *See, e.g., Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1301

8   (Fed. Cir. 2015).  The Federal Circuit has explained that this is a different inquiry than

9   whether the claims are actually invalid; and indeed has explicitly held that a belief the

10  claims are invalid may be objectively reasonable even where there is an ultimate

11  determination that the claims are not invalid.  *See id.* at 1301–02 (finding that a belief of

12  invalidity was objectively reasonable despite losing on that defense at summary

13  judgment).

14      The two inquiries also involve different proof.  For example, as to objective

15  reasonableness, a reasonable litigant would certainly consider the Patent Office's

16  institution in the IPR brought by Western Digital, where the Patent Office found

17  (albeit preliminarily) that the claims would likely be found invalid.  (*See* D.I. 178 at 27

18  ¶ 26.)  A reasonable litigant would consider the Board's institution of an IPR finding

19  nearly identical claims of the related '802 patent also likely invalid.  *See Western Digital

20  Corp. et al v. SPEX Technologies, Inc.*, Paper 11, IPR2018-00082 (PTAB Apr. 25, 2018.)  A

21  reasonable litigant would consider the fact that SPEX made no argument for the

22  _____

23      There may be some dispute about the extent to which objective reasonableness remains relevant to willfulness following the Supreme Court's decision in *Halo Elecs., Inc. v. Pulse*

24  *Elecs., Inc.*, 136 S. Ct. 1923 (2016).  *See, e.g., WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1363 (Fed. Cir. 2016), *rev'd sub nom. WesternGeco LLC v. ION Geophysical Corp.*,

25  138 S. Ct. 2129, 201 L. Ed. 2d 584 (2018), *and opinion reinstated in part*, 913 F.3d 1067 (Fed. Cir. 2019) (explaining that "[a]fter Halo, the objective reasonableness of the accused

26  infringer's positions can still be relevant for the district court to consider when exercising its discretion").  However, that is irrelevant for our purposes here.  What matters, as

27  explained above, is that when the Federal Circuit has considered the objective reasonableness of an invalidity defense, it has done so as a separate inquiry as to whether

28  the claims are actually invalid.

1    patentability of these nearly-identical claims after institution, choosing not to file a

2    response at all.  And a reasonable litigant would consider the Board's Final Written

3    Decision ultimately finding those nearly-identical claims invalid.  (*See* D.I. 178 at 25–27

4    ¶¶ 21–25.)  This type of evidence might be irrelevant to a determination as to whether

5    the claims are actually invalid, but is extremely relevant to how an reasonable litigant

6    would objectively view the likelihood of success as to these claims.

7          And lastly, the result of the two different inquiries is different.  The result of a

8    successful invalidity assertion is a determination that a patent claim is invalid.  A result

9    of a successful rebuttal of a *Noerr-Pennington* defense is that the jury is able to consider

10   SPEX's subjective belief and make a determination regarding an affirmative defense

11   SPEX may raise to Kingston's assertion of an anti-trust violation.  What Congress was

12   concerned about when writing section 315(e) was a party getting two bites at the apple

13   to prove invalidity over the same prior art and potentially conflicting results from two

14   different determinations on the same question.  *See, e.g.,* 157 Cong. Rec. S1360-94 (daily

15   ed. Mar. 8, 2011) (statement of Sen. Grassley) (purpose is to "ensure that if an inter

16   partes review is instituted while litigation is pending, that review will completely

17   substitute for at least the patents-and-printed-publications portion of the civil

18   litigation").  There is no indication that Congress intended to allow parties who enter

19   into illegal and anti-competitive agreements to get away scot free simply because the

20   anti-competitive nature of the agreement relates in some way to the validity of a patent.

21         SPEX cites no authority—no case, no text from the statute, and no legislative

22   history—suggesting otherwise.  All SPEX cites are generic statements from Congress

23   and cases that having nothing to do with *Noerr-Pennington* or anti-trust.  Because

24   Kingston has made a specific allegation to meet the shame litigation exception to *Noerr-*

25   *Pennington* immunity and is not barred from doing so, SPEX is not entitled to dismissal

26   of Kingston's anti-trust claims under the *Noerr-Pennington* doctrine even if that doctrine

27   is applicable.

28

14

## II.   Kingston's Complaint Adequately Pleads that SPEX Entered Into an Illegal Reverse Settlement

SPEX next argues that Kingston has not adequately pled an illegal reverse settlement, based on an overly-narrow reading of the Supreme Court's decision in *Actavis*. Notably, though, SPEX's argument only touches one of **two** legal theories underlying Kingston's claims. Kingston's counterclaim complaint additionally alleges the IPR settlement agreement is illegal under the Ninth Circuit's *Handgards* case, which recognized bad-faith enforcement of patents as an anti-trust harm. *See Handgards, Inc. v. Ethicon, Inc.* ., 601 F.2d 986, 993 (9th Cir.1979). As Kingston's counterclaim complaint alleges, the IPR settlement agreement is an unreasonable restraint of trade because it is designed to facilitate an anti-trust harm, namely SPEX's continued assertion of claims SPEX knows are invalid and would have been found invalid absent the settlement agreement. (*See, e.g.,* D.I. 178 at 31–32 ¶ 37.) SPEX's argument here does not address this theory at all, and thus dismissal would be inappropriate.

To be sure, though, SPEX **is** wrong about *Actavis*. SPEX claims that *Actavis* was a "narrow" decision limited to one specific type of agreement and even then only in the context of pharmaceutical suits. Not so. The Supreme Court has long eschewed any sort of strict, inflexible analysis to determine the economic consequences of an allegedly anti-competitive agreement. *E.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (explaining that the Court has "expressed reluctance to adopt per se rules with regard to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious" (quotation marks omitted)). To the contrary, the Court has instructed the lower courts to use a flexible "rule of reason" approach which "compares the costs and benefits of a restraint of trade, and permits even significant restrictions if the benefits outweigh the costs." *Gen. Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.*, 126 F.3d 1131, 1133 (9th Cir. 1997), *as amended on denial of reh'g and reh'g en banc* (9th Cir. Sept. 16, 1997). The rule of reason approach allows "a fuller and more flexible inquiry into the economic consequences of a

1    challenged agreement," without resort to inflexible rules.  Richard A. Posner, Antitrust

2    Law 27 (1976).

3           Yet SPEX now suggests that what the Court did in *Actavis* is exactly opposite of

4    what the Court has spent decades saying it wouldn't do—set up an inflexible rule for a

5    specific industry.  To the contrary, *Actavis* was yet another rejection of inflexible rules in

6    favor of a flexible rule of reason approach.  In *Actavis*, the Supreme Court reviewed a

7    judgment of the Eleventh Circuit, which held that a settlement agreement involving a

8    patent "is immune from antitrust attack so long as its anticompetitive effects fall within

9    the scope of the exclusionary potential of the patent."  *F.T.C. v. Watson Pharm., Inc.*, 677

10   F.3d 1298, 1312 (11th Cir. 2012), *rev'd and remanded sub nom. F.T.C. v. Actavis, Inc.*, 570

11   U.S. 136 (2013).  In other words, the Eleventh Circuit attempted to create a per se rule

12   immunizing patent settlement agreements from anti-trust scrutiny.  *See id.* at 1315.

13          On review, the Supreme Court rejected the Eleventh Circuit's inflexible rule.

14   The Supreme Court held that even if the anticompetitive effects fall within the

15   exclusionary potential of a patent, "that fact, or characterization," cannot "immunize

16   the agreement from antitrust attack."  *Actavis*, 570 U.S. at 147.  As the Court explained,

17   "to refer . . .. simply to what the holder of a valid patent could do does not by itself

18   answer the antitrust question."  *Id.*  For example, the Court noted that the right to

19   exclude granted by a patent "may permit the patent owner to charge a higher-than-

20   competitive price for the patented product" but "an invalidated patent carries with it no

21   such right."  *Id.*  Thus the Court concluded that "it would be incongruous to determine

22   antitrust legality by measuring the settlement's anticompetitive effects solely against

23   patent law policy, rather than by measuring them against procompetitive antitrust

24   policies as well."  *Id.* at 148.  Thus, contrary to SPEX's characterization, the Supreme

25   Court broadly held in *Actavis* that patent settlement agreements are not immune from

26   anti-trust scrutiny simply because the nature of a patent allows a patent owner to

27   exclude others from the marketplace.  *See id.*

28

16

SPEX is thus wrong to suggest that *Actavis* is limited to Hatch-Waxman pharmaceutical cases.  (*See* Mot. at 17-19.)  None of the Court's broad-reaching analysis regarding the potential for patent settlement agreements to violate the anti-trust laws was so limited.  Rather, the Court spoke about patent agreements in general, and cited numerous cases involving many different kinds of technology for the proposition that "patent-related settlement agreements can sometimes violate the antitrust laws."  *Id.* at 149-151 (discussing cases relating to, for example, sewing machines, electricity, and oil).  And emphasizing that its holding was not solely limited Hatch-Waxman cases, the Court only discussed Hatch-Waxman at the end of its discussion rejecting the Eleventh Circuit's strict rule, concluding that "[f]inally, the Hatch–Waxman Act itself does not embody a statutory policy that supports the Eleventh Circuit's view."  *Id.* at 152.  SPEX is correct that the particular dispute at issue in *Activis* did arise in the context of a Hatch-Waxman case, but this Court must not "confus[e] the factual contours of [a Supreme Court decision] for its unmistakable holding."  *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 534–35 (1983) (per curiam).  "[O]nce the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law."  *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994).  That governing rule of law, as discussed above, does not immunize patent settlement agreements from anti-trust scrutiny.

The Federal Circuit's non-precedential *Industrial Models, Inc. v. SNF, Inc.* decision—the only cited by SPEX for this proposition—does not hold otherwise.  In *Industrial Models*, the Federal Circuit considered allegations that a party violated section 2 of the Sherman Act by, among other things, sending a pre-suit cease and desist letter and by bringing patent-infringement claims.  *See* 716 F. App'x 949, 956 (Fed. Cir. 2017).  The district court below dismissed these claims, holding the claims to be barred by the *Noerr-Pennington* doctrine (discussed above) because they were based on petitioning activity.  *See id.*  On appeal, the anti-trust plaintiff argued that "invitations to collude

does not fall within the scope of the *Noerr-Pennington* doctrine because 'offers to settle' are excluded from immunity following the Supreme Court's decision" in *Actavis*.  *See id.* at 957.  The portion of the opinion from which SPEX selectively quotes[4] was a rejection of this argument, not any sort of broad holding that only settlement offers in the context of Hatch-Waxman litigation can be the subject of anti-trust scrutiny. Indeed, it is preposterous to imagine that the Federal Circuit would pronounce a significant limitation on a recent Supreme Court case in a non-precedential decision, particularly when such an argument was never made to the Court.

SPEX's argument that *Actavis* is limited to only settlement agreements where there is a payment of money in exchange for staying out of the market again confuses the factual contours of the *Actavis* decision with its holding.  (*See* Mot. at 19-21.)  As courts have explained in rejecting this very argument, "*Actavis* only involved a brand manufacturer's bargain with three generic manufacturers 'to pay millions of dollars to each generic,'" thus the fact that the Court discussed these facts in its opinion "hardly seems surprising."  *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 392 (D. Mass. 2013).  However, "[n]owhere in *Actavis* did the Supreme Court explicitly require some sort of monetary transaction to take place for an agreement between a brand and generic manufacturer to constitute a reverse payment."  *Id.*  Thus, courts should not "read into the opinion a strict limitation of its principles to monetary-based arrangements alone."  *Id.*; *see also, e.g., King Drug Co. of Florence v. Smithkline Beecham Corp.*, 791 F.3d 388, 406 (3d Cir. 2015) (holding that *Actavis* did not "limit its reasoning or holding to cash payments only"); *United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d

---

4   The full quote is as follows: "While *Actavis* stated that settlements do not, as a blanket rule, always fall under *Noerr-Pennington*, 133 S. Ct. at 2230−31, it limited its holding to particular types of settlement agreements in the context of the Hatch-Waxman drug-regulatory framework, *see id.* at 2230, a situation entirely separate from the settlement discussions unsuccessfully attempted in this case.  We see no reason to apply *Actavis* to routine unsuccessful offers to settle that are clearly acts 'attendant upon' litigation."  *Indus. Models*, 716 F. App'x at 957.

KINGSTON'S OPPOSITION TO
SPEX'S MOTION TO DISMISS

8:16-cv-01790-JVS-AGR

1052, 1069 (N.D. Cal. 2014) (rejecting an argument that *Actavis* is limited to monetary payments).

The only case SPEX cites to support its argument (other than reciting the facts of *Actavis*) is a decision made more than a decade before the Supreme Court decided *Actavis*—*Asahi Glass Co. v. Pentech Pharm, Inc.*, 289 F.Supp.2d 986 (N.D. Ill. 2003).  As other Courts have found in rejecting the argument made by SPEX here, *Asahi* "was decided ten years before *Actavis*, and no longer applies current antitrust law." *United Food & Commercial Workers Local 1776*, 74 F. Supp. 3d at 1068.  *Asahi*, therefore, provides no help for SPEX in understanding *Actavis* nor can it serve as a basis to dismiss Kingston's claims.

When considered against the actual holding and guidance provided by *Actavis*, Kingston's allegations are more than sufficient.  Kingston has alleged that SPEX gave something that SPEX had previously valued over $10 million in exchange for avoiding an adjudication that would have resulted in their claims being found invalid.  (*See* D.I. 178 at 20-21 ¶ 3.)  Kingston has alleged that there was no real reason for this consideration, other than to prevent adjudication by the PTAB of claims SPEX knows are invalid.[5]  Thus, Kingston has successfully alleged that the "rationale behind" the substantial consideration given by SPEX is not "supported by traditional settlement considerations," and thus constitute an unreasonable restraint of trade by allowing SPEX to keep and continue to assert claims it knows are invalid.  *See Actavis*, 570 U.S. at 154.

## III.   Kingston Adequately Pleads Patent Misuse Based on Far More Than an Ordinary Assertion of Infringement

Finally, SPEX argues that Kingston cannot state a claim for patent misuse because, according to SPEX, Kingston's complaint alleges nothing more than a normal lawsuit for patent infringement.  This argument too should be rejected.

---

[5]   Contrary to SPEX's assertion, its grant of a license does not increase competition in the marketplace as SPEX continues to assert the '802 patent against the other defendants who settled and dismissed the IPR against the '135 patent.

KINGSTON'S OPPOSITION TO SPEX'S MOTION TO DISMISS

1    As the Federal Circuit has explained, to state a claim for patent misuse, a party

2    must allege facts that pass a two-part inquiry.  First, a party must allege activity that

3    goes beyond what is "reasonably within the patent grant," i.e. that the patentee is

4    attempting to broaden the "physical or temporal" scope of the patent grant.

5    *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) (citation omitted);

6    .*Mallinckrodt Inc. v. Medipart, Inc.*, 976 F.2d 700, 703-704 (Fed. Cir. 1992).  Second, a

7    party must allege a showing under a "rule of reason" approach that the activity at issue

8    "imposes an unreasonable restraint on competition, taking into account a variety of

9    factors, including specific information about the relevant business, its condition before

10   and after the restraint was imposed, and the restraint's history, nature, and effect."

11   *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) (quotation

12   marks omitted).

13   SPEX's motion addresses only the first prong of this inquiry.  SPEX asserts that

14   the activity Kingston accuses of patent misuse falls "reasonably within the patent

15   grant" because, according to SPEX, all Kingston asserts is that SPEX has asserted

16   claims with a subjective belief that the claims are invalid.  SPEX is only half right.

17   SPEX is correct that a bare assertion that a party brings a case alleging infringement of

18   a claim that it subjectively believes to be invalid is insufficient to state a claim for patent

19   misuse.  *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998); *see also*

20   *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, No. 98 CIV. 7766 (PAC), 2006 WL

21   3342655, at *3 (S.D.N.Y. Nov. 16, 2006) (holding that ordinary assertion of a patent

22   insufficient to state a claim for patent misuses because the purpose of patent misuses

23   "is to prevent a patentee from using its patent to gain a competitive advantage beyond

24   that which the patent rightfully confers, not to bar actions enforcing a patent against

25   allegedly infringing products").  This is because ordinary enforcement of patents, even

26   with a subjective belief of invalidity, is "activity protected under *Noerr* [i.e. the *Noerr-*

27

28

KINGSTON'S OPPOSITION TO
SPEX'S MOTION TO DISMISS

8:16-cv-01790-JVS-AGR

*Pennington* doctrine] and *California Motor* [a case appealing *Noerr-Pennington* to seeking redress in the Courts]." *Id.*[6]

SPEX is wrong, though, that this law means Kingston's misuse claim must be dismissed. For one, Kingston's counterclaim complaint contains a specific allegation that SPEX's belief in invalidity was objectively reasonable. As discussed above, this allegation is sufficient allegations to overcome a *Noerr-Pennington* defense, and thus escape the reasoning provided by the Federal Circuit in *C.R. Bard.*

For another thing, Kingston's complaint alleges far more than a bare allegation that SPEX has asserted a claim that it subjectively knows is invalid. Kingston's counterclaim complaint details extensive gamesmanship by SPEX, including entering into a settlement agreement which gave licenses to claims SPEX knows are invalid in order to assert these claims against Kingston and potentially others. (*See* D.I. 178 at 29 ¶¶ 30–31.) As courts have held, even after *C.R. Bard* a claim for patent misuse predicated on bringing a suit must not be dismissed "so long as the defendant can allege facts to plead "bad faith and improper purpose." *Nalco Co. v. Turner Designs, Inc.*, No. 13-CV-02727 NC, 2014 WL 645365, at *10 (N.D. Cal. Feb. 19, 2014); *see also, e.g.*, *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995) (explaining that "[t]he bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade"). The laundry-list of bad acts undertaken by SPEX in order to continue to assert

---

[6] Almost all of the cases cited by SPEX follow from this principle. *See Junker v. Med. Components, Inc.*, No. CV 13-4606, 2019 WL 109385, at *15 (E.D. Pa. Jan. 4, 2019) (citing *C.R. Bard* and dismissing claim for patent misuse based on an allegation that "the patent holder [] brought an action for patent infringement that he knows to be meritless"); *Advanced Magnetic Closures*, 2006 WL 3342655, at *3 (dismissing patent misuse claim based on *C.R. Bard*). The only case cited by SPEX is simply an affirmance of a dismissal of a patent misuse claim that appears to have been totally unsupported—far different from Kingston's claim which is supported by significant allegations. *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1581 (Fed. Cir. 1986)

claims SPEX knows are invalid against Kingston is certainly more than sufficient to show both.

## **CONCLUSION**

For the reasons above, SPEX's motion to dismiss should be denied.

Respectfully Submitted,

Dated: November 4, 2019                FISH & RICHARDSON P.C.

By:   /s/ David M. Hoffman
      David M. Hoffman (*pro hac vice*)
      hoffman@fr.com
      David Morris (*pro hac vice*)
      dmorris@fr.com
      One Congress Plaza
      111 Congress Ave., Suite 810
      Austin, TX 78701
      Tel: (512) 472-5070
      Fax: (512) 320-8935

      Joanna M. Fuller (SBN 266406)
      jfuller@fr.com
      633 W. 5th Street, 26th Floor
      Los Angeles, CA 90071
      Tel: (213) 533-4240
      Fax: (858) 678-5099

      Oliver J. Richards (SBN 310972)
      orichards@fr.com
      12390 El Camino Real
      San Diego, CA 92130
      Tel: 858-678-4715
      Fax: 858-678-5099

LAW OFFICE OF S.J. CHRISTINE YANG

      Christine Yang (SBN 102048)
      chrisyang@sjclawpc.com
      Victoria Hao (*pro hac vice*)
      vhao@sjclawpc.com
      17220 Newhope Street, Suite 101-102
      Fountain Valley, CA 92708
      Tel.: (714) 641-4022
      Fax: (714) 641-2082

***Attorneys for Defendants***
Kingston Technology Corporation, Kingston Digital, Inc., and Kingston Technology Company, Inc.

KINGSTON'S OPPOSITION TO SPEX'S MOTION TO DISMISS
8:16-cv-01790-JVS-AGR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 4, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail and regular mail.

*/s/ David M. Hoffman*
David M. Hoffman
hoffman@fr.com

**Attorneys for Defendants**
Kingston Technology Corporation,
Kingston Digital, Inc., and
Kingston Technology Company, Inc.

KINGSTON'S OPPOSITION TO
SPEX'S MOTION TO DISMISS
8:16-cv-01790-JVS-AGR