RUSS AUGUST & KABAT
Marc A. Fenster (SBN 181067)
*mfenster@raklaw.com*
Benjamin T. Wang (SBN 228712)
*bwang@raklaw.com*
Andrew D. Weiss (SBN 232974)
*aweiss@raklaw.com*
Paul A. Kroeger (SBN 229074)
*pkroeger@raklaw.com*
Jacob R. Buczko (SBN 269408)
*jbuczko@raklaw.com*
Justin E. Maio (SBN 304428)
*jmaio@raklaw.com*
12424 Wilshire Boulevard, 12FL
Los Angeles, California 90025
310/826-7474 – Telephone
310/826-6991 – Facsimile

*Attorneys for Plaintiff*
SPEX TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPEX TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> KINGSTON TECHNOLOGY CORPORATION, KINGSTON DIGITAL, INC., KINGSTON TECHNOLOGY COMPANY, INC., IMATION CORPORATION, DATALOCKER INC., DATA LOCKER INTERNATIONAL, LLC, <br><br> Defendants. | Case No. 8:16-CV-01790-JVS-AGR <br><br> **PLAINTIFF SPEX TECHNOLOGIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY** <br><br> **Hearing:** <br> Date:   April 6, 2020 <br> Time:   1:30 p.m. <br> Place:  Courtroom 10C <br> Judge:  Hon. James V. Selna |

RUSS, AUGUST & KABAT

TABLE OF CONTENTS

PAGE

I.     STATEMENT OF THE ISSUES TO BE DECIDED ...................1

II.    INTRODUCTION ................................................................1

III.   LEGAL STANDARDS...........................................................3
       A.    Summary Judgment Standard ....................................3
       B.    Invalidity Standard ....................................................4

IV.    THE PRIOR ART AT ISSUE IN THIS MOTION ...................5

V.     ARGUMENT ..........................................................................6
       A.    The Fortezza Crypto Card, The Fortezza "Interface Control" Document, And The Lynks System Do Not Invalidate The Asserted Claims ..........................................................................6
             1.    Kingston Admits The Fortezza Crypto Card Does Not Anticipate Claims 1, 2, 11 And 12 Of The '802 Patent, And Kingston's Obviousness Arguments Are Conclusory ..............7
             2.    Kingston Cannot Show By Clear And Convincing Evidence That Claims 1, 2, 11 And 12 Are Obvious............................. 10
             3.    Kingston Has Not Shown That The Fortezza Crypto Card Discloses Elements (A) And (C) Of Claim 55 Of The '135 Patent ........................................................................ 12
             4.    Kingston Has Not Shown That The Fortezza Crypto Card Discloses Element (B) Of Claim 55 ........................... 14
             5.    Kingston Has Not Shown That The Fortezza Crypto Card Invalidates Claim 57 Of The '135 Patent............. 15
       B.    Kingston Has Failed To Produce Evidence That The Fortezza Multi-Function Card Is Prior Art........................ 19
       C.    SPEX Is Entitled To Summary Judgment As To The Fortezza Plus Interface Control Document Because It Does Not Describe The Fortezza Crypto Card ........................ 20
       D.    Kingston Cannot Show By Clear And Convincing Evidence That The Asserted Claims Are Invalid Due to Derivation ....................... 21
       E.    SPEX Is Entitled To Summary Judgment Concerning Kingston's Improper "Admitted Prior Art" ................................ 22
             1.    Kingston Misapplies The Doctrine of "Admitted Prior Art" ... 22
             2.    If Admitted Prior Art Is The PCMCIA Standard, Kingston Fails To Provide An Appropriate Invalidity Analysis For The Admitted Prior Art. ................. 23

VI.    CONCLUSION............................................................. 25

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

TABLE OF AUTHORITIES                                          PAGE

**Cases**

*Advanced Display Systems, Inc. v. Kent State University*,
  212 F.3d 1272 (Fed. Cir. 2000) ...................................................... 4

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ....................................................................... 4

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  692 F. Supp. 2d 487 (M.D. Pa. 2010) ............................................ 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ....................................................................... 3

*Cumberland Pharm. Inc. v. Mylan Institutional LLC*,
  846 F.3d 1213 (Fed. Cir. 2017) .................................................... 21

*Fenner Inv., Ltd. v. Microsoft Corp.*,
  632 F. Supp. 2d 627 (E.D. Tex. 2009) ............................................ 9

*Helifix, Ltd. v. Blok–Lok, Ltd.*,
  208 F.3d 1339 (Fed. Cir. 2000) ...................................................... 9

*In re Nomiya*,
  509 F.2d 566 (CCPA 1975) .......................................................... 22

*Microsoft Corp. v. i4i Ltd. Partnership*,
  131 S.Ct. 2238 (2011) .................................................................... 4

*Odetics, Inc. v. Storage Tech. Corp.*,
  185 F.3d 1259 (Fed. Cir. 1999) .................................................... 10

*Pfaff v. Wells Elecs., Inc.*,
  525 U.S. 55 (1998) ....................................................................... 19

*Pfizer Inc. v. Sandoz Inc.*,
  C.A. No. 13-1110-GMS, 2015 WL 6755211 (D. Del. Nov. 4, 2015) .......... 23

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
  324 F.3d 1346 (Fed. Cir. 2003) ......................................... 3, 22, 23

*SPEX Tech., Inc. v. Apricorn*,
  Case No. 2:16-cv-07349, D.I. 142 (2019) ................................. 2, 10

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
  516 F.3d 1290 (Fed. Cir. 2008) ...................................................... 9

**Statutes**

35 U.S.C. § 102 ............................................................... 3, 4, 19, 21

35 U.S.C. § 103 ............................................................................... 4

35 U.S.C. § 282 ............................................................................... 4

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

**Rules**

FED. R. CIV. P. 56 ................................................................................................ 3, 4

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

## I.     STATEMENT OF THE ISSUES TO BE DECIDED

1.     Whether SPEX is entitled to partial summary judgment that the Fortezza card, the Fortezza "Interface Control" document, the Fortezza Multi-Function Card, the Fortezza Plus Interface Control Document, and the "Lynks System" do not invalidate the Asserted Claims.

2.     Whether SPEX is entitled to partial summary judgment that the Asserted Claims are not invalid due to derivation.

3.     Whether SPEX is entitled to partial summary judgment of no invalidity as to the purported "Admitted Prior Art."

## II.     INTRODUCTION

Plaintiff SPEX Technologies, Inc. ("SPEX") accuses Defendants Kingston Technology Corporation, Kingston Digital, Inc., Kingston Technology Company, Inc. (collectively, "Kingston") of infringing U.S. Patent No. 6,088,802 (the "'802 patent") and U.S. Patent No. 6,003,135 (the "'135 patent") (collectively, the "patents-in-suit"). SPEX asserts that certain of Kingston's products infringe claims 1, 2, 11 and 12 of the '802 patent, and claims 55 and 57 of the '135 patent (the "Asserted Claims"). Kingston argues that a number of references anticipate or render obvious the Asserted Claims: the "Fortezza Crypto Card," the Fortezza "Interface Control" document, the Fortezza Multi-Function Card, the Fortezza Plus Interface Control Document, and the "Lynks System." Kingston further contends that certain "Admitted Prior Art" anticipates or renders obvious claims 55 and 57 of the '135 patent.

With respect to the device claims (claims 1, 2, 11 and 12 of the '802 patent), Kingston admits the prior art does not disclose the "means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means" requirement as construed by the Court. Kingston's argument regarding potential obviousness combinations are conclusory, unsupported by any evidence, and are not sufficient to

RUSS, AUGUST & KABAT

create a triable issue of fact as to whether its proposed combinations render the "means for mediating" claim limitation obvious. Indeed, the Court has already rejected similar argument made by defendant Apricorn. D.I. 142 from *SPEX Tech., Inc. v. Apricorn*, Case No. 2:16-cv-07349 (C.D. Cal.) (2019) (hereinafter, "Apricorn MSJ Order") at 16-18 (rejecting argument that conclusory expert opinion is sufficient to raise triable issue of fact as to invalidity of the device claims).

SPEX is also entitled to summary judgment of no invalidity of claims 55 and 57 of the '135 patent because Kingston fails to show that any prior art reference teaches all the elements of the claims. For example, element (a) of claim 55 requires "receiving ***a request*** from the host computing device for information regarding the type of the modular device" and element (c) requires "operably connecting the security module and/or the target module to the host computing device in response to ***an instruction*** from the host computing device." (emphasis added). The claim requires that the instruction in element (c) be different than the request claimed in element (a) yet Kingston points to the same disclosure for both limitations. Similarly, in element (a), claim 55 requires a request for the "type of the modular device" and element (b) requires responding with different information ("the ***type of the target module***"). In other words, this limitation requires showing a request for information about the device (*e.g.*, a secure storage device), and that that the prior art device instead returns information only about the target module (*e.g.*, user data storage). Kingston, however, ignores this requirement and instead argued element (b) is invalidated because the prior art (a Fortezza Crypto Card) returns information to the host computer device indicating it is a Fortezza Crypto Card. In yet another example, element (b) of claim 57 requires the method of "performing one or more security operations and the defined interaction on the exchanged data." "The defined interaction" is an antecedent reference to the preamble, which claims "a target module that is adapted to enable a defined interaction with the host computing device." Kingston applies these claim limitations in an inconsistent and conflicting

2

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

manner making the grant of summary judgment appropriate.

With respect to the Fortezza Multi-Function Card, Kingston failed to show that it is prior art. The only evidence Kingston identified that describes the functionality of the product is from less than one year before the Asserted Patents were filed. It does not qualify as prior art under 35 U.S.C. § 102(b). Kingston's argument with respect to the Fortezza Plus Interface Control Document is even worse. Kingston simply assumes that it is a Fortezza Crypto Card, ignoring unrebutted evidence to the contrary.

SPEX is further entitled to summary judgment as to Kingston's derivation claim. Kingston brings this claim only under Kingston's interpretation of SPEX's infringement theories. Kingston does not argue that any of the Asserted Claims are invalid due to derivation under the Court's claim construction.

Finally, SPEX is entitled to summary judgment on Kingston's claims regarding the "Admitted Prior Art." "Admitted Prior Art" is a specific doctrine that refers to statements made about the prior art in the specification of a patent or during patent prosecution. *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003). It does not apply to purported litigation admissions as Kingston argues. Furthermore, Kingston claims that the specification of the '802 patent is prior art to the '135 patent in manner expressly precluded by law. Second, even if the Court were to consider the "Admitted Prior Art," Kingston has failed to perform the necessary invalidity analysis to state a claim for either anticipation or obviousness.

## III.  LEGAL STANDARDS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

RUSS, AUGUST & KABAT

there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."). A fact is "material" only if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Likewise, a dispute as to a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* The question is "whether a jury could reasonably find *either* that the [moving party] proved his case by the quality and quantity of evidence required by the governing law *or that* he did not." *Id.* at 254. Accordingly, once the moving party establishes a prima facie case, the burden shifts to the nonmoving party to set forth specific facts by "citing to particular parts of materials in the record" showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c)(1)(A); *see also Anderson*, 477 U.S. at 250.

**B.    Invalidity Standard**

Patent claims are presumed valid. 35 U.S.C. § 282. A defendant must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2242 (2011).

Invalidity under 35 U.S.C. § 102(a)[1] requires a showing that "the invention was known or used by another in this county, or . . . described in a printed publication in this or a foreign country, before the invention of the patent thereof." Invalidity for anticipation based on a printed publication "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). Invalidity under 35 U.S.C. § 103(a) applies only "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have

_____

[1] Because of the priority date of the patent-in-suit, this case is governed by the pre-AIA versions of 35 U.S.C. §§ 102 and 103.

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

been obvious at the time the invention was made to a person having ordinary skill in the art."

## IV.    THE PRIOR ART AT ISSUE IN THIS MOTION

Kingston's invalidity arguments are based on the following prior art:[2]

Fortezza Crypto Card: The Fortezza Crypto Card refers to a collection of products that resulted from a government program in the first half of the 1990s. Weiss Decl.[3] Ex. 2 at 76:8-22. The Fortezza Card Products were designed to provide encryption and authentication support for the government's new electronic message system called the "Defense Messaging System." *Id.* The Fortezza Card Products were designed to provide security for unclassified data. *E.g.*, Weiss Decl. Ex. 1 at ¶ 180. Though there are multiple different versions of the Fortezza Crypto Card, with different hardware features, Kingston and Dr. Villasenor rely on testimony and documentation regardless of which version of the Fortezza Crypto Card the documentation is describing.

Fortezza "Interface Control" Document: Though listed as a purported separate reference, Dr. Villasenor's analysis solely refers back to his Fortezza Crypto Card analysis. Weiss Decl. Ex. 1 at 198, ¶5.[4]

Lynks System: This refers to the EES LYNKS Privacy Card sold by SPEX's sister company, Spyrus, Inc. *Id.* at ¶ 22.

Fortezza Multi-Function Card: The Fortezza Multi-Function Card was a proposal given to the NSA to build a new version of a Fortezza card with removable functionality. *Id.* at ¶ 191.

---

[2] Professor Villasenor also gave an opinion as to the Jones patent (U.S. Patent No. 5,623,637). Kingston has informed SPEX that it is no longer asserted the Jones patent as invalidating prior art.
[3] "Weiss Decl." refers to the Declaration of Andrew D. Weiss in support of this brief.
[4] There appears to have been an error in Dr. Villasenor's paragraph numbering. SPEX has therefore cited to both the page and paragraph.

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

Fortezza Plus Interface Control Document: The Fortezza Plus Interface Control Document is a document that Kingston argues describes the Fortezza Crypto Card. *E.g.*, *id.* at ¶ 290 (citing SPEX00001744 (the Fortezza Plus Interface Control Document) to describe the Fortezza Crypto Card). As the document itself acknowledges, though, it is a different system than the Fortezza Crypto Card. *E.g.*, Weiss Decl. Ex. 3 at SPEX00001756 (describing the "Fortezza Plus" and "Fortezza" as different products). While the Fortezza Crypto Card was designed to handle sensitive Type 2 (sensitive but not classified) information, Fortezza Plus was designed to handle Type 1 (classified) information. *Id.*; *see also* Weiss Decl. Ex. 2 at 73:18-74:15, 84:13-86:12, 151:23-152:13 (testimony that the Fortezza Plus, sometimes referred to as the "Fortezza II," was different than the Fortezza Crypto Card); *see also* Weiss Decl. Ex. 4 at 119:21-120:12 (Fortezza Plus was an experiment that was never deployed). Spyrus did not produce a Fortezza Plus card. Weiss Decl. Ex. 2 at 157:24-25.

"Admitted Prior Art": Dr. Villasenor's January 20, 2020 renders invalidity opinions based on purported "admitted prior art." Weiss Decl. Ex. 5 at ¶¶ 96-110. However, Dr. Villasenor's report does not identify any specific "art," but instead relies on a series purported admissions by SPEX's designated witness, Tom Hakel, SPEX's expert, Dr. Tom Rhyne, and statements by SPEX in its appeal brief. *Id.* At deposition, Dr. Villasenor changed his opinion to identify the PCMCIA standard as the "admitted prior art." Weiss Decl. Ex. 6 at 109:10-18. Both versions of the purported "admitted prior art" are addressed below.

## V.   ARGUMENT

### A.   The Fortezza Crypto Card, The Fortezza "Interface Control" Document, And The Lynks System Do Not Invalidate The Asserted Claims

Kingston and Dr. Villasenor only compare the Fortezza Crypto Card to the Asserted Claims. Weiss Decl. Ex. 1 at ¶¶ 284-401. For the Fortezza "Interface

Control" Document, Kingston and Dr. Villasenor offer a single paragraph opinion that refers back to the analysis of the Fortezza Crypto Card. *Id.* at 198, ¶ 5[5] ("For the reasons described above with respect to my discussion of the Fortezza Crypto Card, this document additionally anticipates the Asserted Claims"). Kingston's and Dr. Villasenor's analysis as to the Lynks System also does not include a claim-by-claim analysis. *Id.* at ¶¶ 408-411. Though Kingston and Dr. Villasenor refer to some claim limitations (*id.* at ¶ 410), they do not refer to others (such as the "means for mediating" limitation that is the subject of this motion) and they do not provide a complete analysis of any of the claim terms. Instead, Kingston and Dr. Villasenor argue that "the Lynks System and the Fortezza Crypto Card were essentially the same product under different branding" and the Lynks System therefore invalidates "for the reasons discussed above with respect to Fortezza Crypto Card." *Id.* at ¶ 411. Accordingly, if the Court finds that Kingston failed to show a genuine dispute of material fact regarding the Fortezza Crypto Card system, the same result is compelled for the Fortezza "Interface Control" Document and Lynks System.

1. **Kingston Admits The Fortezza Crypto Card Does Not Anticipate Claims 1, 2, 11 And 12 Of The '802 Patent, And Kingston's Obviousness Arguments Are Conclusory**

The device claims of the '802 patent (claims 1, 2, 11 and 12) contain the limitation "means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means." The Court construed this term as a means-plus-function claim element with the following construction:

---

[5] There is a paragraph numbering issue in the First Villasenor report. This cite refers to the page number and paragraph number on that page.

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

Recited Function: mediating communication of data between the host computer device and the target means so that the communicated data must first pass through the security means.

Corresponding Structure: Interface control device 910 (as shown in Fig. 9B) Figure 9B is reproduced below. Interface control device 910 is shown by the dashed line.



FIG. 9B

D.I. 122.

### a. Kingston Admits The Device Claims Are Not Anticipated

The lack of anticipation by the Fortezza Crypto Card should be undisputed: Kingston and Dr. Villasenor admit that the Fortezza Crypto Card does not anticipate this claim limitation. Weiss Decl. Ex. 1 at ¶ 353 ("Under this proper construction, the Fortezza Crypto Card … does not teach the structures associated with the 'Compact Flash Interface'"). Accordingly, SPEX is entitled to summary judgment of no anticipation of claims 1, 2, 11 and 12.

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

Kingston advances an alternative theory that, despite its admission, the Fortezza Crypto Card anticipates the "means for mediating" claim element "as SPEX has applied the claim in its infringement contentions." Weiss Decl. Ex. 1 at ¶¶ 354, 241. This argument is contrary to Federal Circuit precedent; an invalidity analysis must compare the prior art to the claims as construed, not Kingston's characterization of an infringement theory. *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1311-12 (Fed. Cir. 2008) ("An expert must '[compare] the construed claims to the prior art.'" (*citing Helifix, Ltd. v. Blok–Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000))); *see also Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 692 F. Supp. 2d 487, 520 (M.D. Pa. 2010), *citing Fenner Inv., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 638 (E.D. Tex. 2009) ("no party should be allowed to argue to the jury claim constructions that are contrary to the court's claim constructions…"). For example, in *TiVo*, the defendant sought to have their expert testify that plaintiff's "infringement analysis … would compel a finding of invalidity." *TiVo*, 516 F.3d at 1311. The Federal Circuit upheld the exclusion of this testimony because the exclusion ruling "ensur[ed] that the invalidity inquiry focused on the relationship between the prior art and the claims, as construed by the court." *Id.* at 1312.

Kingston's alternative anticipation argument also fails factually. Kingston does not explain how it interprets SPEX's infringement theory, what construction of this claim requirement it is applying, or how it differs from the Court's construction. Weiss Decl. Ex. 1 at ¶¶ 354, 241; *see also id.* at ¶ 154 (referring to "implicit constructions," again without identifying what these "implicit constructions" are). Second, to the extent that Kingston and Dr. Villasenor have tried to show how Interface Control Device 910 is purportedly disclosed in the Fortezza Crypto Card, Kingston makes no argument as to how the Fortezza Crypto Card discloses the "Card Enable DCDR," "Compact Flash I/O Control," "Compact Flash Sector CNTR" or "PCMCIA I/O Controller" blocks. *See* Weiss Decl. Ex. 1 at ¶¶ 353-358. Even where it does endeavor to compare the blocks of Interface Control Device 910 with the

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

1   Fortezza Crypto Card, it identifies the same functionality as being different blocks

2   Interface Control Device 910. For example, with the respect to the State Controller,

3   Kingston argues that this is disclosed by a notification of a command to execute by

4   the memory section called the "System Control Block (Mailbox)." Weiss Decl. Ex.

5   1 at ¶ 358. This is the same module and functionality that Kingston also argues

6   anticipates the Command Detector block of interface control device 910. *Id.*

7   Kingston provides no evidence or argument as to how detection of a command

8   anticipates the State Controller portion of interface control device 910. Further, to

9   the extent that Kingston is arguing that these blocks are standard PCMCIA interface

10  blocks, other than Dr. Villasenor's conclusory opinion, Kingston has not cited to any

11  evidence supporting this opinion, such as the portions of the applicable PCMCIA

12  specification disclosing these blocks (and confirming that the blocks must be used

13  by the Fortezza Crypto Card).

14      To the extent Kingston argues the Fortezza Crypto Card discloses structural

15  equivalents of Interface Control Device 910 under 35 U.S.C. § 112(6), it did not

16  engage in the required analysis. For example Kingston did not show that any

17  structures in the Fortezza Crypto Card preformed the same function, in substantially

18  the same way, for substantially the same result. *See, e.g.*, *Odetics, Inc. v. Storage*

19  *Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).

20      SPEX is therefore entitled to summary judgment of no anticipation of claims

21  1, 2, 11 and 12 of the '802 patent.

22      **2.   Kingston Cannot Show By Clear And Convincing**

23          **Evidence That Claims 1, 2, 11 And 12 Are Obvious**

24      Kingston and Dr. Villasenor make a number of obviousness arguments. Weiss

25  Decl. Ex. 1 at ¶¶ 412-425. None of their arguments are sufficient to raise a triable

26  issue of fact as to whether the "means for mediating" claim element, or the claims

27  as a whole, were obvious. Indeed, there is very little difference between Kingston's

28  obviousness arguments and Apricorn's arguments that the Court has previously

rejected. In the previous *Apricorn* case, the Court rejected Apricorn's argument because Apricorn's expert did "not establish in more than a conclusory fashion that 'CompactFlash interfaces' including in combination with 'PCMCIA cards' are always, or even sometimes, equivalent to the overall structure of interface control device 910." Apricorn MSJ Order at 17. In finding that Apricorn's expert testimony did not create a genuine dispute of material fact, the Court held that the expert's "tenuous and somewhat conclusory assumptions fail to show that a person of skill could have found the overall structure of interface control device 910 obvious." *Id.* at 17-18. Kingston's tenuous and conclusory arguments must be rejected for the same reason.

Second, Kingston argues that combining the Fortezza Crypto Card (or "Lynks Card"[6]) with "knowledge of a skilled artisan" would disclose "portable storage of data." Weiss Decl. Ex. 1 at ¶ 418. Further, Kingston provides no analysis or evidence as to how this combination would render Interface Control Device 910 obvious. *See id.* at ¶¶ 419-422.

Finally, Kingston argues that the Fortezza Crypto Card or "Lynks" could be modified to "Accommodate CF Cards." *Id.* at ¶ 423. But, like the previous obviousness argument, Kingston again fails to identify which claim element the modification of the Fortezza Crypto Card with CompactFlash is relevant to. *See id.* at ¶¶ 423-425. Because it does not identify the relevant claim elements, it also does not provide any analysis as to how this purportedly obvious modification would practice the requirements of the claim element. Even if Kingston were to assert that this argument was directed to the "means for mediating" claim requirement, it should be rejected. Kingston's analysis, like Apricorn's analysis addressed in the Apricorn MSJ Order, is "tenuous and conclusory" based only on hindsight.

Kingston may argue that it discussed the combination of a Fortezza card and

---

[6] Kingston appears to use Lynks System, "Lynks Card," and "Lynks" synonymously.

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

a Compact Flash interface in connection with the Fortezza Multi-Function Card. *See* Weiss Decl. Ex. 1 at ¶ 404. This portion of Dr. Villasenor's report, however, discusses the Fortezza Multi-Function Card (*see* title above paragraph 402), not the Fortezza Crypto Card. It does not render an opinion as to obviousness for either of those references. Even if this section were an obviousness opinion as the Fortezza Crypto Card patent, it would insufficient to create a genuine dispute of fact. Kingston simply asserts the conclusion, without evidentiary support, that the combination of the Fortezza Crypto Card and CompactFlash would result in Interface Control Device 910. Weiss Decl. Ex. 1 at ¶ 404. Kingston does not, for example, show evidence that the use of CompactFlash requires any blocks of Interface Control Device 910. This argument also does not address the other missing block of Interface Control Device 910 (such as the PCMCIA labeled blocks). Like Apricorn's expert's opinion, this unsupported, conclusory opinion argument is not sufficient to show a genuine dispute of material fact.

Accordingly, SPEX is entitled to summary judgment of no obviousness as to claims 1, 2, 11 and 12 of the '802 patent.

### 3. Kingston Has Not Shown That The Fortezza Crypto Card Discloses Elements (A) And (C) Of Claim 55 Of The '135 Patent

Element (a) of claim 55 of the '135 patent requires "receiving *a request* from the host computing device for information regarding the type of the modular device." (emphasis added). Element (c) of requires "operably connecting the security module and/or the target module to the host computing device in response to *an instruction* from the host computing device." (emphasis added). The plain and ordinary meaning of this claim element requires that the instruction of element (c) be different than the request claimed in element (a). This is why element (c) refers to an instruction, rather than including an antecedent reference to element (a), and why element (a) refers to a request (for information) rather than an instruction. Kingston ignores this plain

meaning and instead points at the same evidence to show both element (c)'s instruction and element (a)'s request for information. Kingston provides no opinion or analysis as to how the same commands can satisfy both claim elements, and such a position is inconsistent with the plain and ordinary meaning of the claim language.

With respect to the Fortezza Crypto Card, Kingston also does not actually identify any specific commands disclosed by the card, or how those commands cause the operably connection of the security module and/or target module to the host computing device. For element (a) of claim 55, Kingston refers to back to its analysis of claim element (e) of the '802 patent, without including any analysis specific to this claim element. Weiss Decl. Ex. 1 at ¶¶ 389, 372. Kingston refers back to the same section of its report in its "analysis" for element (c) of claim 55. *Id.* at ¶ 391.[7] This section identifies a number of commands, but provides no analysis of how these commands meet the claim requirements, let alone how the same command can satisfy both the request requirement of element (a) and the instruction requirement of element (c). *Id.* at 171-73, ¶ 4 (referring to "Callback," "GetFirst/NextTuple," "GetTupleData," and "RequestConfiguration" commands). Kingston cannot therefore show that the Fortezza Crypto Card anticipates elements (a) and (c) of claim 55.

Kingston's obviousness arguments do not remedy this deficiency. Indeed, as discussed above, Kingston's obviousness arguments are general arguments that do not analyze specific claim elements, including elements (a) and (c) of claim 55 of the '135 patent.

---

[7] Kingston and Dr. Villasenor recently served a supplemental invalidity opinion, which largely cites to and repeats the same analysis. Weiss Decl. 5 at ¶¶ 111-117. This supplemental report still does not explain what claim elements it is purportedly relevant to. SPEX intends to move to strike the opinion as untimely at the appropriate time. To the extent Kingston seeks to use this supplemental invalidity opinion in its response to this Motion, SPEX will seek to strike the opinion as untimely.

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

Accordingly, SPEX is entitled to summary judgment of no invalidity as claim 55.

### 4. Kingston Has Not Shown That The Fortezza Crypto Card Discloses Element (B) Of Claim 55

Element (b) of claim 55 of the '135 patent requires "providing the *type of the target module* to the host computing device in response to the request." (emphasis added). Element (a) of claim 55 requires receiving a request for "information regarding the *type of the modular device*." (emphasis added). Thus, in order to meet element (b), Kingston must show that the Fortezza Crypto Card discloses sending back different information than the information requested; the request must be for information about the device (*e.g.*, a secure storage device) and the information returned must be about the target module (*e.g.*, user data storage). Kingston has not shown that either the Fortezza Crypto Card discloses this claim element.

Kingston and Dr. Villasenor generally refer back to their analysis in "element [1e] and [38a] and [38b]" without specifically identifying what aspects of these claim elements apply here. Weiss Decl. Ex. 1 at ¶ 390.[8] In the analysis of element b of claim 38, Kingston and Dr. Villasenor admit that, in response to a request for information about the modular device (the Fortezza Crypto Card), the Fortezza Crypto Card responds with the requested (not different) information that it is a Fortezza Crypto Card. *Id.* at ¶ 374 (opining the CIS information returned to the host computing device "indicates that the Fortezza Crypto Card is a Fortezza Crypto Card," and that certain additional information is returned "[b]ecause the host computer knows that the card is a Fortezza Crypto Card"). Further, Kingston and

---

[8] Kingston also cites to the "Get User Data Directory" command (Weiss Decl. Ex. 1 at ¶ 390) but that argument must fail for a couple of reasons. First, Kingston does not cite this command in element (a) of claim 55, so it is irrelevant to this element (which requires a response to the command in element (a)). Second, this is a command used by "Fortezza Plus," which is not a Fortezza Crypto Card as discussed below.

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1   Dr. Villasenor have not shown that the Fortezza Crypto Card provides "the type of

2   the target module." Kingston and Dr. Villasenor have argued that the target module

3   is the non-volatile memory on Fortezza Crypto Card. *Id.* at ¶¶ 388, 309-310. But

4   none of the information that Kingston and Dr. Villasenor identified as being returned

5   in response to a request from element (a) identifies the non-volatile memory. *Id.* at

6   ¶¶ 374-75 (referring to identifying security features (such as number of certificates

7   and keys) and RAM (volatile, random access memory)).

8         Kingston and Dr. Villasenor's obviousness arguments do not remedy this

9   deficiency. As discussed above, Kingston and Dr. Villasenor's obviousness

10   arguments are not directed to any particular claim elements, and they do not show

11   any of Kingston and Dr. Villasenor's purported combinations would disclose

12   element (b) of claim 55.

13         Accordingly, SPEX is entitled to summary judgment of no invalidity of claim

14   55 on this basis as well.

15         **5.       Kingston Has Not Shown That The Fortezza Crypto**

16         **Card Invalidates Claim 57 Of The '135 Patent**

17         Element (b) of claim 57 of the '135 patent requires the method of "performing

18   one or more security operations and the defined interaction on the exchanged data."

19   "The defined interaction" is an antecedent reference to the preamble, which claims

20   "a target module that is adapted to enable a defined interaction with the host

21   computing device." Kingston and Dr. Villasenor apply these claim limitations in an

22   inconsistent and conflicting manner such that summary judgment is appropriate.

23         In the preamble, Kingston and Dr. Villasenor ultimately refer back to their

24   analysis of claim 1(b) of the '802 patent. The target means/target module is identified

25   as the "non-volatile memory," and then Kingston and Dr. Villasenor identify a

26   number of security functionalities (encryption, hashing, digital signing) that "may"

27   be enabled by the "non-volatile memory." Weiss Decl. Ex. 1 at ¶ 311. Kingston and

28   Dr. Villasenor effectively combine the security and target claim limitations into a

RUSS, AUGUST & KABAT

1   single limitation; they have identified the same functionalities that are purportedly

2   enabled by the security means/security module. *E.g., id.* at ¶ 300.

3       Claim 57(b), which claims both performing a security operation and the

4   defined interaction, highlights the conflicting nature of Kingston and Dr.

5   Villasenor's argument. For "the defined interaction" limitation, Kingston and Dr.

6   Villasenor change their argument to identify only "send[ing] the encrypted data back

7   to the PC." *Id.* at ¶¶ 396 (referring to claim 39(b) of the '802 patent), 382. The

8   sending of data is not the "defined interaction" identified by Kingston and Dr.

9   Villasenor in the preamble, and they do not provide any argument or evidence as to

10  how the target module ("non-volatile memory") enables this interaction.

11      In addition to being inconsistent, Kingston's and Dr. Villasenor's argument is

12  contradictory with the teachings of the '802 and '135 patents. In the claims, the

13  defined interaction (enabled by the target means/target module) is ***in addition to*** the

14  security functionality (enabled by the security means/security module). *E.g.*, '802

15  patent at claims 1, 11, 39; '135 patent at claims 55, 57. The specifications of the

16  patents-in-suit also emphasize the difference between the defined interaction and

17  security functionality. The abstracts disclose that one of the benefits of the invention

18  is that it allows for the performance of in-line security operations ***as well as*** defined

19  interactions that provide a variety of functionalities such as "data storage, data

20  communication, data input and output, user identification." '802 patent at Abstract;

21  '135 patent at Abstract. The specifications further detail this feature of the invention:

22  "[t]he peripheral device can also be implemented so that the security operations are

23  performed in-line, i.e., the security operations are performed between the

24  communication of data to and from the host computing device and the performance

25  of the defined interaction. Moreover, the peripheral device can be implemented so

26  that the security functionality of the peripheral device is transparent to the host

27  computing device." '802 patent at 3:40-48; '135 patent at 3:39-47 (containing a

28  similar disclosure). Figure 8 of the patents-in-suit and its accompanying description

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

provide further detail regarding this aspect of the invention. In Figure 8, the means for mediating (discussed above) is shown in box 802, labeled "FPGA." As shown in more detail in Figure 9B, the means for mediating has an interface for the host computing (to the left of box 802), an interface for the security functionality (above box 802) and an interface for the target functionality (to the right of box 802). The security functionality includes, among other things, the security processor (box 801) and non-volatile flash memory (box 803). The non-volatile flash memory stores the computer instructions (*e.g.*, firmware) and other persistent data (*e.g.*, encryption keys) that are necessary for the basic and security functionality of the device. '802 patent at 16:10-12; '135 patent at 19:39-41. The target functionality is in addition to the flash storage containing basic operational data such as firmware and security operation-related data. *E.g.*, '802 patent at 4:62-5:4 ("As explained in more detail below, the peripheral device 302 also provides ***additional functionality*** (referred to herein as 'target functionality') to the system 300, such as, for example, the capability to store data in a solid-state disk storage device, the capability to enable communications from the host computing device 301 to another device, the capability to accept biometric input to enable user authentication to the host computing device 301, and the capability to receive and read a smart card inserted into the peripheral device 302." (emphasis added));'135 patent at 6:53-62 (similar language).

The necessity for storage of basic functionality data, such as software and security functionality-related data, to be unrelated to the defined interaction is further emphasized by other disclosures in the specifications. As the specifications make clear, the defined interactions can provide different types of functionality. '802 patent at 13:5-15:37; 16:17-18:63. Not all of the defined interactions are related to data storage, such as wireless communications or biometric readers. *Id.* A person of ordinary skill in the art would understand that, even in instances where the defined interaction was not related to data storage, the claimed device would still require

non-volatile storage for computer instructions and security functionality-related data. This is taught by flash memory 803 in Figure 8. The defined interaction is in addition to this basic storage of data.

Kingston's argument, however, ignores the plain meaning of the claims as construed by the Court. Despite the plain meaning requiring that the defined interaction be ***in addition to*** the security operation, Kingston argues that the defined interaction is the security functionality (such as storing firmware and keys, or sending encrypted data back to the host). *E.g.*, Weiss Decl. Ex. 1 at ¶¶ 311-17 ("this non-volatile memory 'enables' the Fortezza Crypto Card to interact with the host computer to provide functions because the non-volatile memory stores data necessary for the Fortezza Crypto Card to carry out those functionalities" such as firmware and encryption keys); 382 (designating returning encrypted data to a host during an encrypt command as the defined interaction). But the use of a peripheral/modular device to encrypt and return information to the host is precisely the type of prior art the invention improved upon. '802 patent at 2:33-3:14; '135 patent at 2:33-3:14. Kingston cannot therefore show that the Fortezza Crypto Card discloses a defined interaction additional to the security functionality, such as mass user data storage or wireless communication with a different host.

Further, Kingston's argument that the defined interaction is the return of data to the host computing device also renders claim 57(a) repetitive. Claim 57(a) requires a communication of data between the host and peripheral/modular device. According to Kingston, the defined interaction is no different; it is the communication of data from the device to the host. The lack of distinguishing features between these two claim elements is emphasized by the overlap in Kingston's arguments with respect to claim elements 39a and 39b. *Compare* Weiss Decl. Ex. 1 at ¶¶ 378-79 *with* ¶¶ 381-82. Kingston's argument should also therefore fail because it effectively eliminates claim element 57(a) as a meaningful limitation.

Accordingly, because Kingston and Dr. Villasenor's arguments as to claim

18

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

element 57(b) contradict the plain meaning of this claim element, Kingston cannot show that the Fortezza Crypto Card art anticipates claim 57. Kingston and Dr. Villasenor have presented no arguments that claim element 57 (b) is rendered obvious. SPEX is therefore entitled to summary judgment of no invalidity of claim 57 as to the Fortezza Crypto Card.

## B.    Kingston Has Failed To Produce Evidence That The Fortezza Multi-Function Card Is Prior Art

The Fortezza Multi-Function Card is not prior art. It was a proposal from Spyrus (the original assignee of the Asserted Patent) to the NSA. *E.g.*, Weiss Decl. Ex. 7 at SPEX00008838. Kingston and Dr. Villasenor do not disclose why they argue it was prior art under section of 35 U.S.C. § 102. *See* Weiss Decl. Ex. 1 at ¶¶ 190-194, 402-407.[9]

Presumably, Kingston and Dr. Villasenor are arguing that the Fortezza Multi-Function Card was a prior art publication under 35 U.S.C. § 102(b): "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than ***one year prior to the date of the application*** for patent in the United States." (emphasis added). Kingston cannot prove that the Fortezza Multi-Function Card was on sale one year prior to the applications for the Asserted Patents (June 4, 1996). The only document Kingston and Dr. Villasenor cite that is dated prior to the priority date is a high level request for firm pricing from the NSA. Weiss Decl. Ex. 9. This document, however, does not provide any indication that the product on sale practiced the claimed invention, and Kingston and Dr. Villasenor do not offer any argument to the contrary. *See* Weiss Decl. Ex. 1 at ¶¶ 402-407; *see also Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55,

---

[9] Kingston did not include the Fortezza Multi-Function Card in its invalidity contentions. Weiss Decl. Ex. 8 at 10. If SPEX's summary judgment effort is not successful, SPEX intends to move to exclude undisclosed invalidity arguments raised by Kingston, including Kingston's argument regarding the Fortezza Multi-Function Card.

SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY

RUSS, AUGUST & KABAT

66-67 (1998) (for the on-sale bar to attach, Kingston must show that the claimed invention was "ready for patenting"; "invention" in Section 102(b) "must refer to a concept that is complete"). And Kingston and Dr. Villasenor cannot prove otherwise because the only other evidence they rely on is dated after the priority date. Weiss Decl. Ex. 7, 10.

Accordingly, the Court should grant summary judgment that the Fortezza Multi-Function Card is not prior art.

## C. SPEX Is Entitled To Summary Judgment As To The Fortezza Plus Interface Control Document Because It Does Not Describe The Fortezza Crypto Card

The Fortezza Plus Interface Control Document is a document that Kingston and Dr. Villasenor use to describe the functionality of the Fortezza Crypto Card. *E.g.*, Weiss Decl. Ex. 1 at ¶¶ 290, 323 (citing SPEX00001744 (the Fortezza Plus Interface Control Document) to describe the Fortezza Crypto Card). As the document itself acknowledges, though, it is a different system than the Fortezza Crypto Card. *E.g.*, Weiss Decl. Ex. 3 at SPEX00001756 (describing the "Fortezza Plus" and "Fortezza" as different products). While the Fortezza Crypto Card was designed to handle sensitive Type 2 (sensitive but not classified) information, Fortezza Plus was designed to handle Type 1 (classified) information. *Id.*; *see also* Weiss Decl. Ex. 2 at 73:18-74:15, 84:13-86:12, 151:23-152:13 (testimony that the Fortezza Plus, sometimes referred to as the "Fortezza II," was different than the Fortezza Crypto Card). Kingston and Dr. Villasenor offer no evidence or analysis supporting their argument that the Fortezza Plus document describes the Fortezza Crypto Card. Because the Fortezza Plus card does not describe the Fortezza Crypto Card, and Kingston has provided no argument that the Fortezza Plus Interface

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

1  Control Document is itself prior art, SPEX is entitled to summary judgment of no

2  invalidity as to this document.[10]

3       To the extent Kingston and Dr. Villasenor also use the Fortezza Plus

4  document to support their derivation argument (addressed below), SPEX is entitled

5  to summary judgment as to this document on that issue as well because it is

6  undisputed that Spyrus did not produce a Fortezza Plus card. *Id.* at 157:24-25.

### D.   Kingston Cannot Show By Clear And Convincing Evidence That The Asserted Claims Are Invalid Due to Derivation

9       In addition to anticipation and obviousness, Kingston asserts that these claims

10 are invalid due to derivation. Derivation arises under section (f) of the pre-AIA

11 version of 35 U.S.C. § 102. It requires a showing of the complete conception of the

12 invention in the prior art. *Cumberland Pharm. Inc. v. Mylan Institutional LLC*, 846

13 F.3d 1213, 1217 (Fed. Cir. 2017) (derivation requires prior conception and

14 communication of the conception). Kingston argues that the Asserted Claims are

15 invalid due to derivation "as SPEX has applied the claims to the accused products."

16 Weiss Decl. Ex. 1 at ¶ 439. Kingston has made no argument that derivation applies

17 when the Court's claim construction is applied. Because Kingston has presented no

18 evidence as to how the Asserted Claims are invalid due to derivation when the

19 Court's claim construction is applied, SPEX is entitled to summary judgment of no

20 invalidity due to derivation.

21      Even if Kingston can point to evidence supporting its claim, for the reasons

22 discussed above, the Fortezza Crypto Card does not anticipate (or otherwise

23 invalidate) any of the Asserted Claims. Accordingly, because Kingston cannot show

24 that the Fortezza card is a complete conception of the invention,[11] SPEX is entitled

25

26 [10] Like the Fortezza Mutli-Fuction Card, this document is also not mentioned in Kingston's invalidity contentions. Weiss Decl. Ex. 8 at 10

27 [11] As to derivation, although outside the scope of this brief, there is also significant evidence that Spyrus (the original owner of the patents-in-suit) was actually

28

RUSS, AUGUST & KABAT

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

to summary judgment as to Defendants' conception, on-sale bar and public use invalidity arguments.

### E.   SPEX Is Entitled To Summary Judgment Concerning Kingston's Improper "Admitted Prior Art"

#### 1.   Kingston Misapplies The Doctrine of "Admitted Prior Art"

In the Supplemental Expert Report of John Villasenor, Kingston and Dr. Villasenor argue that certain testimony given by SPEX's corporate representative, Tom Hakel, during a recent deposition are "admitted prior art" that renders claims 55 and 57 invalid. Weiss Decl. Ex. 5 at ¶¶ 98-99, 105 (arguing that purported admissions by SPEX's representative that claims 38 and 39 of the '802 patent are invalid means that "each and every element of [claims 38 and 39] is admitted prior art") (citing Weiss Decl. Ex. 11 at 31:3-5 ("Q. So I'll ask again, does SPEX believe claims 38 and 29 of the '802 patent are invalid? A. Yes.")).

As an initial matter, Kingston and Dr. Villasenor misstate Mr. Hakel's testimony in making this argument. At the time of his deposition, December 2019, Mr. Hakel was just stating the fact that claims 38 and 39 were invalid as a result of a Final Written Decision. Weiss Decl. Ex. 11 at 30:13-31:11. Mr. Hakel did not testify about particular prior art, and he was not asked to give (nor was he qualified to give) opinion testimony as to whether the prior art in fact disclosed clear and convincing evidence of the invalidity of claims 38 and 39. Kingston has also failed to establish that Mr. Hakel is one of skill in the art such that his testimony is relevant to the state of the art.

Even setting aside the lack of the factual basis for Kingston's argument, Kingston misapplies the doctrine of admitted prior art. This doctrine "concerns a statement by **_an applicant during prosecution_** identifying certain matter not the

---

heavily involved in the development of the Fortezza card. It was not given in its complete form to Spyrus.

RUSS, AUGUST & KABAT

work of the inventor as 'prior art' is an admission that the matter is prior art." *Riverwood,* 324 F.3d at 1354 (emphasis added). *See also In re Nomiya,* 509 F.2d 566, 571 (CCPA 1975) (applicant's labeling of two figures in the application drawings as prior art to be an admission that what was pictured was prior art relative to applicant's improvement). Importantly, the doctrine of admitted prior art "is inapplicable when the subject matter at issue is the inventor's own work." *Riverwood,* 324 F.3d at 1354. *See also Pfizer Inc. v. Sandoz Inc.*, C.A. No. 13-1110-GMS, 2015 WL 6755211, at *2 (D. Del. Nov. 4, 2015) (work of same "common inventive entity" is not admitted prior art).

Here, Kingston does not point to a single representation made by an applicant during the prosecution as admitted prior art. Instead, it points to deposition testimony of a corporate representative decades after prosecution. Moreover, the purported "admitted prior art" is disclosure in the specification of the '802 patent supporting claims 38 and 39. As the same inventors worked on the '802 and '135 patents, and indeed filed the application on the same date, the patents are the work on the "same inventive entity" and thus cannot be "admitted prior art." Indeed, there is no evidence that the '802 patent was filed before the '135 patent and thus qualifies as *prior* art.

Kingston's contention as to the subject matter of the admitted prior art is legally erroneous. For this reason alone SPEX is entitled to summary judgment.

### 2.   If Admitted Prior Art Is The PCMCIA Standard, Kingston Fails To Provide An Appropriate Invalidity Analysis For The Admitted Prior Art.

While Dr. Villasenor's report does not identify what art the "admitted prior art" includes, and whether "admitted prior art" refers to one or multiple references, Dr. Villasenor testified at deposition that "admitted prior art" means the PCMCIA standard.  Weiss Decl. Ex. 6 at 109:10-18.  SPEX is entitled to summary judgment of no invalidity even if the "admitted prior art" is the PCMCIA standard. Dr. Villasenor confirmed that the PCMCIA standard was not a single document, but

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

RUSS, AUGUST & KABAT

multiple documents. *Id.* at 108:3-14 ("I also talk about the PCMCIA specification. So to the extent that there's other documents that describe it, that is also relevant for an invalidity opinion."), 107:22-108:7 ("one of the documents that describes the PCMICIA standard"). At no point in his report does Dr. Villasenor identify a single document that discloses all limitations of either claims 55 or 57. *See* Weiss Decl. 5 at ¶¶ 98-110. Instead, he intermixes references to the PCMCIA, deposition testimony of SPEX's corporate representative and its expert, and other purported admissions. *Id.* For this reason SPEX is entitled to summary judgment of no anticipation by the admitted prior art.

Kingston's and Dr. Villasenor's purported obviousness arguments as to the admitted prior art fare no better. Dr. Villasenor's report fails to set forth any obviousness type analysis relative to "admitted prior art." *See* Weiss Decl. 5 at ¶¶ 98-110. Dr. Villasenor confirmed at deposition that he did not "provide any motivation to combine any . . . admitted prior art references," "identify any deficiencies in any single prior art reference," "provide any analysis of expectation of success in combining various admitted prior art references," "identify any secondary indicia of obviousness or nonobviousness," "address the feasibility of combining any particular admitted prior art references," or "provide any analysis of excepted success from combining different admitted prior art references." Weiss Decl. Ex. 6 at 121:13-122:17.

More fundamentally, Kingston and Dr. Villasenor do not identify what teaching in the PCMICA standard meets the preamble of claim 55, or limitations 55(a) and 55(b). Weiss Decl. Ex. 5 at ¶¶ 101-103. Similarly, Kingston and Dr. Villasenor fail to identify what teaching in the PCMICA standard meets the preamble of claim 57, or limitations 57(a) or 57(b). *Id.* at ¶¶ 105-108. Instead, all Kingston and Dr. Villasenor argue is that each of these limitations are similar to a corresponding limitation of '802 Patent claims 38 and 39 and therefore must be

RUSS, AUGUST & KABAT

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

1   invalid because of Mr. Hakel's testimony. Such testimony is insufficient to show
2   invalidity by clear and convincing evidence.

3          An example of Kingston and Dr. Villasenor's flawed and conclusory analysis
4   is shown with his treatment of the preamble of claim 55: "For use in a modular
5   device adapted for communication with a host computing device, the modular device
6   comprising a *security module that is adapted to enable one or more security*
7   *operations to he performed on data* and a target module that is adapted to enable a
8   defined interaction with the host computing device, a method comprising the steps
9   of." Although the Court construed the bold language as a means-plus-function term
10  (D.I. 122 at 23), Kingston and Dr. Villasenor fail to address this construction.
11  Instead, Dr. Villasenor asserts only that the "preamble of claim 55 of the '135 patent
12  is substantively identical to the preamble of claim 38 of the '802 patent—which has
13  been admitted by SPEX to be in the prior art." Weiss Decl. Ex. 5 at ¶ 101. However,
14  the preamble of claim 38 does not include the "security module that is adapted to . .
15  ." limitation. Accordingly, the mere similarity of claim 55 to claim 38 (if claim 38
16  is "admitted prior art") does not show that the "admitted prior art" includes the
17  structure or function required by the Court.

18         Accordingly, SPEX is entitled to summary judgment of no invalidity as to the
19  admitted prior art.

20  **VI.    CONCLUSION.**

21         SPEX is entitled to summary judgment of no invalidity as to the Asserted
22  Claims because Kingston has failed to show a genuine dispute of material fact that
23  the Fortezza Crypto Card discloses all of the limitations of the Asserted Claims. The
24  Fortezza Multi-Function Device is not prior art, and summary judgment is therefore
25  appropriate with respect to that argument. Because Kingston does not bring its
26  argument when the claims are construed as ordered by the Court, SPEX is also
27  entitled to summary judgment as to Kingston's derivation claim. Finally, SPEX is
28  entitled to summary judgment on Kingston's erroneous admitted prior art claims.

RUSS, AUGUST & KABAT

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

1

2       Dated:   March 13, 2020                    Respectfully submitted,

3                                                  **RUSS AUGUST & KABAT**

4                                                  By:___/s/ Marc A. Fenster_____

5                                                  Marc A. Fenster, SBN 181067
                                                   Benjamin T. Wang, SBN 228712
6                                                  Andrew D. Weiss, SBN 232974
                                                   Paul A. Kroeger, SBN 229074
7                                                  12424 Wilshire Boulevard, 12th Floor
                                                   Los Angeles, California  90025
8                                                  Tel:   (310) 826-7474
                                                   Fax:  (310) 826-6991
9                                                  Email:  mfenster@raklaw.com
                                                   Email:  bwang@raklaw.com
10                                                 Email:  aweiss@raklaw.com
                                                   Email:  pkroeger@raklaw.com
11

12                                                 *Attorneys for Plaintiff*
                                                   SPEX Technologies, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT

**SPEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on March 13, 2020. As such, this document was served on all counsel who have consented to electronic service.

_/s/ Marc A. Fenster_
Marc A. Fenster

RUSS, AUGUST & KABAT