# EXHIBIT 6

```
 1                 UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3


 4   SPEX TECHNOLOGIES, INC.,

 5              Plaintiff,
                                    Case No.:
 6              v.                  8:16-CV-01790-JVS-AGR

 7   KINGSTON TECHNOLOGY COMPANY,
     INC., ET AL.,
 8
                Defendants.
 9   _____

10


11          30(b)(6) DEPOSITION OF EXPERT

12             JOHN VILLASENOR, Ph.D.

13                    VOLUME I

14


15                 March 9, 2020

16                   10:10 a.m.

17


18


19       201 Montgomery Street, Suite 375

20            San Francisco, California

21


22


23   REPORTED BY:
     Siew G. Ung
24   CSR No. 13994, RPR, CSR

25
```

```
 1  right?
 2       A.  Yes, I mean, if you look at paragraph 97,
 3  I say, "It is my opinion that Claims 55 and 57 are
 4  invalid on" -- "based on what SPEX has admitted to
 5  be in the prior art and the admitted prior art from
 6  the specification of the '135 patent."
 7       Q.  Okay.  So I asked you a minute ago what
 8  you claim anticipates Claims 55 and 57, and you said
 9  the PCMCIA standard, right?
10           MR. RICHARDS:  Objection.
11  Mischaracterizes testimony.
12           THE WITNESS:  Yeah, the -- the PCMCIA
13  standard as -- as used and described in the -- in
14  the specification.
15  BY MR. FENSTER:
16       Q.  Is there a particular document that you
17  assert in paragraphs 98 through 110?
18           MR. RICHARDS:  Objection.  Asked and
19  answered.  The document speaks for itself.
20  BY MR. FENSTER:
21       Q.  Okay.  So in 98 through 110, that's where
22  you state your opinion of invalidity over the
23  admitted prior art, right?
24       A.  Um, yes.
25       Q.  Okay.  In paragraphs 98 to 110 of your
```

```
 1   report, do you identify any document describing or
 2   embodying or encompassing the PCMCIA standard that
 3   you rely on for anticipation?
 4         A.   So I address -- I mention -- in paragraph
 5   104, I mention the PCMCIA specification.
 6         Q.   Okay.  Where is that?
 7         A.   It's five lines from the bottom of
 8   paragraph 104.
 9         Q.   Okay.  And when you refer to "the PCMCIA
10   specification," what's -- what document are you
11   referring to?  As of what date, what version?
12         A.   That's cited later on.  I have a reference
13   to it later on in par- -- on page 46, for example.
14         Q.   Where is that?
15         A.   At the bot- -- very bottom of the page.
16         Q.   Okay.  So you're talking about the PC card
17   standard and the last line that's got the Bates
18   number DEF --
19         A.   Yes.
20         Q.   -- underlined, INV1770?
21         A.   For example, yes.
22         Q.   Okay.  So the PCMCIA standard, when you
23   referred to the "PCMCIA standard," that is the
24   document you are referring to, the PC card standard
25   with that Bates number?
```

```
 1       A.   That is one of the documents that
 2  describes the PCMCIA standard, yes.
 3       Q.   Okay.  Are you referring to -- for
 4  anticipation, for your new anticipation argument,
 5  are you relying on other documents describing the
 6  PCMCIA standard or just that one?
 7       A.   I think, you know, that document plus the
 8  knowledge of one of skill in the art, when used to
 9  perform security operations, would anticipate these
10  claims.
11            But I -- you know, I also talk about the
12  PCMCIA specification.  So to the extent that there's
13  other documents that describe it, that is also
14  relevant for an invalidity opinion.
15       Q.   Is it relevant to your anticipate- -- I
16  want to know -- I think I'm entitled to, whether you
17  think I'm entitled to or not, I don't know -- but I
18  would like to know, Dr. Villasenor, for your new
19  invalidity opinion expressed in Exhibit 2 with
20  respect to invalidity over the admitted prior art,
21  what documents are you saying anticipate Claims 55
22  and 57?
23            MR. RICHARDS:  Objection.  Asked and
24  answered numerous times.
25            THE WITNESS:  And -- and it's not
```

```
 1  necessarily limited to documents, right?  So it can
 2  be a system, the PCMCIA system as described by the
 3  documents.
 4          MR. RICHARDS:  Are you asserting that
 5  there is no doctrine of admitted prior art?
 6          MR. FENSTER:  Not in the way -- not in the
 7  way you guys are using it.  I have no -- no
 8  knowledge of that.  That's for sure.
 9  BY MR. FENSTER:
10      Q.  Okay.  So in your new expert report, are
11  you asserting anticipation by a document?  And, if
12  so, which documents?
13      A.  So I'm asserting anticipation -- or
14  invalidity in relation to the PCMCIA standard as
15  described with -- in -- in the PCMCIA documents when
16  that standard is applied in, you know, using
17  security operations as described, for example, in --
18  in the specification as admitted prior art.
19      Q.  Okay.  Are you asserting invalidity by
20  anticipation, by obviousness, or something else?
21      A.  Both.
22      Q.  Okay.  Are you asserting anticipation by a
23  particular document?  And, if so, which one?
24      A.  I'm asserting anticipation.  I was
25  informed that if everything is un- -- is in the
```

```
 1  admitted prior art, then that can be a basis for an
 2  anticipation argument because -- under 102F.
 3       Q.  So let me get your understanding of the
 4  admitted prior art doctrine.  Okay?
 5           If a patentee admits that three different
 6  references are all prior art, okay?
 7       A.  Yes.
 8       Q.  Are those all admitted prior art now, that
 9  can now be treated as one reference in your opinion
10  for anticipation?
11       A.  If it's three different references, I
12  think you would have an obviousness.  I -- I'm most
13  familiar with that as in -- in the context of an
14  obviousness analysis.
15       Q.  Okay.  Based on your understanding, you
16  have no belief that three different prior art
17  references, just because they are admitted to be
18  prior art, can be treated as one for anticipation;
19  is that fair?
20       A.  I don't specifically recall that, that's
21  right.
22           THE REPORTER:  "I don't specifically
23  recall" --
24           THE WITNESS:  Specifically recall that,
25  that's right.
```

1  intending -- I was hoping to keep it self -- you
2  know, self -- I don't know what -- I was hoping to
3  address it in a single portion of the report,
4  although I -- I make some references to other
5  portions of the report.
6      Q.  Do you have any obviousness analysis for
7  your inval- -- invalidity over admitted prior art
8  opinion other than in paragraphs 98 through 110?
9      A.  Again, there are multiple references to
10 other paragraphs within those paragraphs.  So if you
11 include those, then -- then that's -- that's the
12 analysis.
13     Q.  All right.  Can you point me to your
14 obviousness analysis in your expert re- -- report?
15 You can start at paragraph 1 if you want to.  We can
16 spend the whole time, I don't care.
17         So can you show me where in your expert
18 report you have obviousness analysis for your
19 invalidity over admitted prior art section?
20     A.  So, in paragraph 98, for example.
21     Q.  Are you done?
22     A.  Yeah.
23     Q.  You misunderstood my question:  I'd like
24 you to identify all of the obviousness analysis in
25 your opinion that supports your invalidity over

120

JOHN VILLASENOR, Ph.D., 30(b)(6)-VOL. I

BARKLEY Court Reporters

```
 1  admitted prior art.
 2       A.  Well, I think that's the section that
 3  starts on page 98 -- I'm sorry, paragraph 98 and
 4  goes through paragraph 110, I guess.
 5       Q.  Okay.  So can you point me to the
 6  obviousness analysis as distinct from anticipation?
 7           MR. RICHARDS:  Objection.  Asked and
 8  answered.  The document speaks for itself.
 9           THE WITNESS:  So I don't call it out
10  separately.  I just provide opinions here that are
11  the basis for my invalidity opinions.
12  BY MR. FENSTER:
13       Q.  In paragraphs 98 through 110, do you
14  provide any motivation to combine any prior art --
15  admitted prior art references?
16       A.  I don't have an explicit discussion of
17  that.
18       Q.  In paragraphs 98 through 110, do you
19  identify any deficiencies in any single prior art
20  reference?
21       A.  Not that I recall.
22       Q.  In paragraphs 98 through 110, do you
23  provide any analysis of expectations of success of
24  combining various admitted prior art references?
25           MR. RICHARDS:  Objection.  Document speaks
```

```
 1  for itself.
 2              THE WITNESS:  I -- I don't specifically
 3  recall having addressed that.
 4  BY MR. FENSTER:
 5       Q.  In paragraphs 98 through 110, do you
 6  identify any secondary indicia of obviousness or
 7  nonobviousness?
 8       A.  Not in those paragraphs, no.
 9       Q.  In paragraphs 98 through 110, do you
10  address the feasibility of combining any particular
11  admitted prior art references?
12       A.  Not that I recall.
13       Q.  In paragraphs 98 through 110, do you
14  provide any analysis of expected success from
15  combining different admitted prior art references?
16       A.  Not that -- I don't have an explicit
17  section on expected success, no.
18       Q.  And in terms of anticipation by a
19  document, the only document that you referred to in
20  the invalidity over admitted prior art section,
21  paragraphs 98 through 110, is the PC card
22  specification you identified earlier that's cited at
23  page 46?
24       A.  As I recall right now, that's correct.
25  I'd have to look again, but that's what I recall.
```

1        Q.   Okay.  In each section, you -- so let's
2   start with page -- or paragraph 100.
3        A.   Yes.
4        Q.   Okay.  So you say that these -- actually
5   let's go to 101, please.
6             So at the end of paragraph 101, you say,
7   "To the extent the preamble is limiting, the
8   preamble to Claim 55 is admitted to be in the prior
9   art."  Do you see that?
10       A.   Yes.
11       Q.   What prior art are you referring to?
12       A.   Well, it refers back to -- to my earlier
13  discussion of Claim 38, which, as I have already
14  explained, has a substantively identical preamble
15  and which was admitted by SPEX to be in the prior
16  art.
17       Q.   What prior art specifically?
18       A.   I think it was the PCMCIA standard.
19  That's my recollection.
20       Q.   Can you show me support for that in your
21  report?
22       A.   I think that's in the Hakkel testimony.
23       Q.   Where do you cite that?
24       A.   In paragraph 101.
25       Q.   All right.  I'm sorry, Dr. Villasenor, you

123